Not Reported in A.2d
(Cite as: 2001 WL 837717 (Conn.Super.))

disputed issue ... Such assertions are insufficient regardless of whether they are contained in a complaint or a brief ... Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact ... (Internal citations omitted)." *New Milford Savings Bank v. Roina,* 38 Conn.App. 240, 244-45, 659 A.2d 1226 (1995).

**\*2** Ambrogio has met his burden of demonstrating the absence of a genuine issue of material fact and Forsythe has failed to provide an evidentiary foundation demonstrating the existence of a genuine issue of fact. The pertinent facts are as follows: Forsythe was an officer of and Ambrogio was the chief of the Hamden Police Department during all relevant times. On April 1, 1997, while he was out of work on injury leave for which he was receiving workers' compensation benefits, Forsythe suffered burns on his back at home and placed two telephone calls to the dispatcher at central communications at the Hamden Police Department to request an outside line for Hamden Fire Station 2. (Exs. D, J, M p. 22.) Outside lines are not recorded. (Ex. N.) In a separate recorded call on the same date between the fire dispatcher and an unidentified firefighter, the latter stated that Forsythe "was moving a hot water heater and he, I don't know if he dropped some water on his back or something and he may have burned ..." (Ex. D.) Captain Gustav Gertz subsequently advised Ambrogio of this information and Ambrogio referred the matter to the Internal Affairs Division of the Hamden Police Department for an investigation of possible violations of departmental rules and policies. (Ex. N.) An investigation was conducted between April 9 and 23, 1997. (Ex. A, B, C, E, F.) On April 28, 1997, Ambrogio wrote a letter to Forsythe advising that formal charges against him were being forwarded to the Hamden Board of Police Commissioners ("board") based on the incident of April 1, 1997. (Ex. G.) This was a few weeks before Forsythe was scheduled for shoulder surgery on May 12, 1997, and notice of the charges "kind of weighed on [him] mentally." (Ex. M, p. 50.)

Further investigation of the April 1, 1997 incident occurred after the referral to the board, including the taking of Forsythe's statement on June 3, 1997. (Ex. I, J, K.) On June 11, 1997, Deputy Chief Riccitelli reported to the board that, due to additional information, the complaint against Forsythe had been withdrawn. (Ex. L.) Forsythe was

never brought before the board on these charges and no actions were taken against him. (Ex. M, p. 49.) When the charges were dropped, the initial stress on Forsythe was lifted. (Ex. M, p. 51.) Forsythe returned to work full-time after he recovered from his shoulder surgery. (Ex. M, p. 52.) In October 1997, just before he was scheduled to return to work, Forsythe talked with JoAnn Donegan, who is a psychologist or psychiatrist for the town-run EAP about "stress, being a police officer having a family, being worried about providing for them" and also about the "anxiety of going back to work." (Ex. M, pp. 52-55.) Forsythe has not taken medications for any psychological issues and has not suffered from any distress which affected his ability to perform his job, do chores around the house or take care of his children. (Ex. M, p. 56, 58, 59-60.)

I. Intentional Infliction of Emotional Distress

**\*3** There are four elements which a plaintiff must establish to prevail on a claim of intentional infliction of emotional distress. "It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986) . Liability requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Emphasis in original; internal quotation marks omitted.) *Id.,* 200 Conn. 254 n. 5, quoting W. Prosser & W. Keeton, Torts (5th ed.1984) § 12, p. 60. "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy ... these elements is a question, in the first instance, for [the] court." (Internal quotation marks omitted.) *Ancona v. Manafort Bros., Inc.,* 56 Conn.App. 701, 712, 746 A.2d 184 (2000).

As a matter of law, Ambrogio's conduct was not extreme and outrageous. The undisputed facts establish that Ambrogio acted in a reasonable manner in seeking to conduct an investigation regarding the facts of the April 1, 1997 incident after he learned that Forsythe sought an unrecorded outside line to the fire department and that at least

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 2001 WL 837717 (Conn.Super.))

one person had reported that Forsythe, who was out with a work-related injury and was awaiting shoulder surgery, had moved a hot water heater. Ambrogio did not forward formal charges to the Hamden Board of Police Commissioners until these allegations were investigated. Further, the charges were withdrawn from the board's consideration shortly after the police department had an opportunity to interview Forsythe to learn his version of the events.

Forsythe, however, has argued that there was a pattern of acts taken against him by Ambrogio that amount to extreme and outrageous conduct and he relies on certain pages of his deposition to support this argument. (Ex. M, pp. 39-40, 50-51, 62.) This evidence does not demonstrate any pattern of extreme and outrageous conduct. At pages 39-40, Forsythe testified that he was told in 1989, when he was still in the police academy, that the chief was trying to fire him and two others. At pages 50-51, Forsythe asserted that he felt he was working for "someone that's looking to get me and had been ... from the date I was hired in 1989," and he made a similar assertion at page 62. Such conclusory assertions do not rise to the level of substantial evidence to raise a genuine issue of material fact regarding the allegation of a pattern and practice of extreme and outrageous actions. [FN2] Moreover, even if these assertions provided a sufficient evidential basis of a pattern and practice, as a matter of law they do not amount to extreme and outrageous conduct. Compare *Anacona v. Manafort Bros., Inc., supra,* 56 Conn.App. 712-13 (finding insufficient a course of conduct including failure to abide by an oral promise, shadowy procurement of a check, issuance of exorbitant demand letter, pursuance of prejudgment remedy on a false application and pursuance of a breach of contract action) with *Bell v. Board of Education,* 55 Conn.App. 400, 410-11, 739 A.2d 321 (1999) (finding sufficient allegations of an atmosphere of chaos, disruptiveness, physical and verbal violence and a school as a "place of fear" with conduct occurring for two years). Generally, "an employment dispute between an allegedly harsh supervisor and an employee does not form the basis for a claim of intentional infliction of emotional distress." *DeLeon v. Little,* 981 F.Sup. 728, 738 (D.Conn.1997). [FN3]

FN2. In the first count of his complaint,

Forsythe has alleged that Ambrogio intentionally inflicted emotional distress on him by engaging "in a pattern and practice of extreme and outrageous actions designed to cause the plaintiff to suffer emotional distress and leave his job. As a part of the said pattern of wrongful conduct, Ambrogio caused disciplinary actions to be brought against the plaintiff under circumstances where no such action would have been taken against any other similarly situated officer and has refused commendations and awards to the plaintiff under circumstances where such commendations and awards would have been given to any other similarly situated officer." (¶ 4). He has not brought forward evidence that supports this allegation.

FN3. Forsythe also claims, in paragraph 10 of his complaint, that in June 1997, Ambrogio caused him to be denied an annual 4% bonus to which he was entitled as a certified Emergency Medical Technician and claims that the defendants have failed to come forward with facts to refute this allegation. Taking this allegation as true, it does not rise to the level of intentional infliction of emotional distress. Moreover, Forsythe's deposition testimony, submitted by Ambrogio in support of his motion for summary judgment, reveals that Forsythe did not have an up-to-date certificate in July 1997, when the bonuses were paid, because he had been unable to take the re-certification test while he was recovering from his shoulder surgery. (Ex. M, pp. 65-67.) Further, Forsythe had no idea whether Ambrogio was involved in a subsequent refusal to award him a pro-rated bonus, although Forsythe did file a union grievance about the refusal that was denied as untimely (pp. 68-70).

*4 Additionally, as a matter of law any emotional distress that Forsythe may have suffered as a result of Ambrogio's conduct does not rise to the level of severity required for this tort. "[E]motional distress is severe where it reaches a level which no

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
**(Cite as: 2001 WL 837717 (Conn.Super.))**

reasonable person could be expected to endure." (Internal quotation marks omitted; internal citation omitted.) *Almonte v. Coca-Cola Bottling Co. of N.Y., Inc.,* 959 F.Supp. 569, 575 (D.Conn.1997). Forsythe testified that the referral of the charges weighed on him mentally, however, he also testified that the initial stress was lifted when the charges were dropped. This is insufficient. See *Barry v. Posi Seal International, Inc.,* 36 Conn.App. 1, 19-20, 647 A.2d 1031 (1994) (testimony that discharge was embarrassing and humiliating insufficient). Forsythe has not come forward with an evidential basis to demonstrate that he suffered any symptoms of emotional distress to the "extraordinary degree" required to defeat the motion for summary judgment. See *Almonte v. Coca-Cola Bottling Co. of N.Y., Inc., supra,* 959 F.Supp. 576.

**II. Retaliation**

"General Statutes 31-290a was designed to protect plaintiffs who file for workers' compensation benefits and is in essence a statutorily created tort deriv[ed] from the action for wrongful discharge set forth in *Sheets* [v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 427 A.2d 385 (1980) ]." (Internal quotation marks omitted; internal citations omitted.) *Chiaia v. Pepperidge Farm, Inc.,* 24 Conn.App. 362, 365-66, 588 A.2d 652 (1991). To make out a *prima facie* case under § 31-290a, an employee "must present some evidence from which a trier of fact could infer that the employer discharged or discriminated against the employee because he or she had exercised his or her rights under the Workers' Compensation Act." *Id.* 24 Conn.App. 366. This cause of action requires some proof of an improper motive. *Id.* It also requires proof of an adverse employment action causally connected to the exercise of rights under the Act.

Forsythe has failed to come forward with an evidential basis upon which the court could conclude that he would be able to establish a *prima facie* case of a § 31-290a violation. Ambrogio has submitted an affidavit in which he avers that he "did not act with any intent to discriminate or retaliate against Kenneth Forsythe for filing a workers' compensation claim when I referred the matter ... for investigation." (Ex. N.) The other documentation Ambrogio has filed in support of his motion for summary judgment reveal that Ambrogio was aware of sufficient facts, suggesting that

Forsythe had acted in a manner inconsistent with his work-related injury, to undertake an investigation to determine whether Forsythe had violated any rules or regulations of the Hamden Police Department. It was appropriate for Ambrogio to undertake such an investigation in his capacity as chief of police. Forsythe has not filed any opposing documentation which raises a genuine issue of material fact about whether Ambrogio acted with the requisite improper motive. It is appropriate to grant summary judgment on the issue of improper motive in a case like this "in which the documentation filed illuminates the issue involved and reveals the lack of a genuine issue of material fact of intent when viewed in the circumstances of the case." *Nolan v. Borkowski,* 206 Conn. 495, 506, 538 A.2d 1031 (1988).

*5 Furthermore, there is no evidence that Forsythe suffered an adverse employment action. Although Ambrogio forwarded charges to the Hamden Board of Police Commissioners, the charges were withdrawn after the police department had an opportunity to interview Forsythe and obtain his version of the events. Thus, Forsythe was never brought before the board on the charges and no actions were taken against him.

**III. Vicarious Liability**

In his amended complaint dated December 29, 1997 against the Town of Hamden only, Forsythe seeks to hold Hamden responsible for the actions of Ambrogio on a theory of respondeat superior. Although Hamden has moved for summary judgment on a number of grounds, the court's conclusion that Ambrogio, the alleged primarily liable tortfeasor, is entitled to summary judgment on the complaint against him compels the conclusion that Hamden is likewise entitled to summary judgment on the complaint against it because its vicarious liability has been extinguished. See *Alvarez v. New Haven Register, Inc.,* 249 Conn. 709, 720- 24, 735 A.2d 306 (1999).

**IV. Conclusion**

For the foregoing reasons, the defendant Ambrogio's Motion for Summary Judgment (# 124) is granted and judgment shall enter for the defendant Ambrogio and against the plaintiff Forsythe on the complaint dated August 11, 1997. Likewise, the defendant Town of Hamden's Motion

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
**(Cite as: 2001 WL 837717 (Conn.Super.))**

for Summary Judgment (# 127) is granted and judgment shall enter for the defendant Hamden and against the plaintiff Forsythe on the complaint dated December 29, 1997.

2001 WL 837717 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
**(Cite as: 1999 WL 240731 (Conn.Super.))**

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut.

Toni A. ROBERTS,
v.
Myrna KELLEY, et al.

**No. CV 980418904.**

April 9, 1999.

MEMORANDUM OF DECISION RE MOTION
TO STRIKE

SILBERT.

**\*1** The plaintiff alleges that on December 26, 1997, she visited Branford, Connecticut's Wal-Mart Store for the purpose of exchanging allegedly defective computer software which she had previously purchased. She claims that while discussing the intended exchange with the defendant Kelley, an employee of Wal- Mart, Kelley became "rude, belligerent and disrespectful of the plaintiff and suddenly and without justification proclaimed in a tone easily heard by nearby store patrons and members of the plaintiff's community, including plaintiff's father and minor daughter, 'you're a liar!' " Based on this incident, the plaintiff brought the instant ten-count complaint against Kelley and Wal-Mart Stores. The defendants contend that each and every one of the plaintiff's ten counts fails to state a claim upon which relief may be granted as a matter of law, and they have therefore moved to strike the entire complaint.

"The purpose of a motion to strike is to 'contest ... the legal sufficiency of the allegations of any complaint ... to state a claim upon which relief can be granted.' " *Novametrix Medical Systems, Inc. v. BOC Group, Inc.,* 224 Conn. 210, 214-15, 618 A.2d 25 (1992). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." *Id.,* 215, 618 A.2d 25. "The court must construe the facts in the complaint most favorably

to the plaintiff." *Id.* The motion "admits all facts well pleaded." *Ferryman v. Groton,* 212 Conn. 138, 142, 561 A.2d 432 (1989). A motion to strike "does not admit *legal conclusions or the truth or accuracy of opinions* stated in the pleadings." (Emphasis in original.) *Mingachos v. CBS, Inc.,* 196 Conn. 91, 108, 491 A.2d 368 (1985). Further, the court must construe the facts in the pleadings which are the subject of the motion to strike in the light most favorable to the pleader. *Gordon v. Bridgeport Housing Authority,* 208 Conn. 161, 170, 544 A.2d 1185 (1988).

Count one alleges intentional infliction of emotional distress by the defendant Myrna Kelley. Such a claim must include the following elements:
(1) that the actor intended to inflict emotional distress, or that he knew or should have known that the emotional distress would be the likely result of his conduct;
(2) that the conduct was extreme and outrageous;
(3) that the defendant's conduct was the cause of the plaintiff's distress; and
(4) that the emotional distress sustained by the plaintiff was severe.

*Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986), quoting *Murray v. Bridgeport Hospital,* 40 Conn.Supp. 56, 62, 480 A.2d 610 (1984); *Mellaly v. Eastman Kodak* Co., 42 Conn.Supp. 17, 597 A.2d 846 (1991).

**\*2** The defendants argue that as a matter of law, the conduct alleged by the plaintiff does not satisfy the third prong of this test, namely that it was not "extreme and outrageous." "The rule which seems to have emerged is that there is liability for conduct exceeding *all bounds,* usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Lucuk v. Cook,* 21 CONN. L. R PTR. 377, 1998 WL 67412 (Conn.Super.1998), quoting *Murray v. Bridgeport Hospital,* 40 Conn.Supp. 56, 480 A.2d 610 (1984) (emphasis in original). The Restatement (2nd) of Torts, § 46, suggests that liability should only be found "where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." "The liability clearly does not extend to mere insults, indignities, threats, petty oppressions or other trivialities." *Lucuk v. Cook, supra.*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 240731 (Conn.Super.))

Whether conduct alleged by a plaintiff rises to the level of "extreme and outrageous" is, in the first instance, a question for the court. *Petyan v. Ellis, supra.* This is so at least in part to protect courts from being flooded by "suits claiming distress for every kind of threat, indignity or abuse no matter how trivial." *Lucuk, supra.* See, also, *Knierim v. Izzo,* 174 N.E.2d 1957 (Ill.1961).

The plaintiff suggests that, combined with the fact that her father and minor daughter were present and that the event took place on the day after Christmas, the comments made by Kelley were indeed "extreme and outrageous." Although this court does not disagree that the context may well be relevant in determining whether conduct is "extreme and outrageous," the facts in this case fall far short of meeting this standard. However unprofessional Kelley's conduct may have been, and however offended the plaintiff may have been by it, that conduct does not meet the "extreme and outrageous" test, and the first count therefore fails to state a cause of action for intentional infliction of emotional distress.

In her second count, the plaintiff appears to allege negligent infliction of emotional distress, but the count as presently worded does not include an allegation that the defendant should have realized her conduct involved an unreasonable risk of causing emotional distress and that this distress, if it were caused, might result in illness or bodily harm. *Morris v. Hartford Courant Co.,* 200 Conn. 676, 683, 513 A.2d 66 (1986). *Faillace v. Soderholm,* 1997 WL 684900 (Conn.Super.1997).

The plaintiff attempts to defend her pleading by citing *Montinieri v. Southern New England Telephone Co.,* 175 Conn. 337, 345, 398 A.2d 1180 (1978), which notes that "recovery for unintentionally caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact." The plaintiff misses the distinction between physical harm, which may arise from emotional distress, and physical injury or physical impact, which would be the product of some kind of physical trauma. An allegation of negligent infliction of emotional distress must, as a matter of law, include the allegation that the defendant should have realized that its conduct could have caused such distress and that, if caused, that distress could result in some physical symptoms. That the plaintiff is not required

to allege physical injury or physical impact does not relieve her of that responsibility. The second count thus also fails to state a claim upon which relief may be granted as a matter of law, and it is therefore stricken.

**\*3** The defendant has also argued that by failing to specify the duty owed by the defendant to the plaintiff, she has failed even to allege negligence with respect to the second count. The court assumes that if the plaintiff elects to replead this count, she will do so in a manner which specifies the duty allegedly owed to her by the defendant.

As for the third count, which alleges "slander per se," the plaintiff has acknowledged that it fails to state a claim upon relief may be granted, and this count is therefore stricken.

The fourth count incorporates portions of the first and third counts, which have been stricken, and also alleges that the defendant's conduct was "willful, wanton, malicious and in callous disregard of plaintiff's rights and sensibilities." In attempting to defend this count, the plaintiff herself cites *Bordonaro v. Senk,* 109 Conn. 428, 431-432, 147 A. 136, which states:

Wanton misconduct is more than negligence ... Willful misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of willful misconduct. When we say that wanton misconduct is the equivalent of willful misconduct, we do not intend to characterize these terms as equivalents of each other, but equivalents in result. Willful or intentional misconduct and wanton misconduct are different concepts of wrongful or improper misconduct, but in their resultant they are alike in their seriousness and gravity, and the law subjects whoever is guilty of either form of misconduct to like rules and visits upon each a like liability.

It is thus apparent that for purposes of construing this count, the "willful, wanton and malicious" conduct alleged by the plaintiff should be viewed in the same way as an allegation of intentional conduct. Just as the plaintiff has failed to allege facts tending to show that the conduct was "extreme and outrageous" with respect to the first count, so she has failed to do so with respect to this, the fourth count. The fourth count is therefore stricken.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 240731 (Conn.Super.))

The fifth count restates the allegations of the third count (slander per se) and seeks to have the defendant Wal-Mart held responsible on a theory of respondeat superior. As the plaintiff has already conceded that the third count is defective, however, the fifth count also cannot stand. The motion to strike it is therefore granted.

The sixth count appears to be an amalgam of fraudulent and negligent misrepresentation allegations. Although the count arguably sets forth a claim of negligent misrepresentation, the defendant argues that the count is devoid of any allegations that would set forth the claim of fraudulent misrepresentation and that the entire count must therefore be stricken. This count refers to various advertisements and publications through which the defendant Wal-Mart makes representations that its customers will receive "helpful, courteous and efficient service by well trained employees." Although the language of this count arguably sets forth the claim that such statements were made, negligently, in order to state a cause of action for fraudulent misrepresentation, the plaintiff must allege:
*4 (1) a false representation made as a statement of facts;
(2) it was untrue and known to be untrue by the party making it;
(3) it was made to induce the other party to act upon it;
(4) the other party did so act upon the false representation to his injury.

*Barbara Weisman, Trustee v. Kaspar,* 233 Conn. 531, 539, 661 A.2d 530 (1995); *Parker v. Shaker Real Estate, Inc.,* 47 Conn.App. 49 (1998). A review of the sixth count reveals that it does not include the requisite allegations, and it is therefore stricken.

The seventh count incorporates the allegations of several other counts which have now been stricken and goes on to complain that Wal-Mart failed to investigate or respond to the plaintiff's complaints about Kelley or take any meaningful disciplinary action against her. Even after having heard oral argument, it is difficult to discern the legal theory on which this count is based. Because, at a minimum, the count relies on allegations which have already been stricken, this count must also be stricken.

The eighth count appears to allege a breach by Wal-Mart of its obligation of good faith and fair dealing with respect to its contractual obligations with the plaintiff surrounding its return policy. To the extent that this "breach" refers to infliction of emotional distress, it has been dealt with in the other counts of the complaint. To the extent that it relates to any failure by Wal-Mart to abide by its agreements with regard to the return of merchandise, this count is devoid of any allegation as to how it breached the covenant of good faith and fair dealing with respect to such obligations. For all of these reasons, as well as the fact that the count incorporates by reference elements of other counts which have already been stricken, this count must also be stricken.

As to the ninth and tenth counts, the plaintiff has conceded that they fail to state claims upon which relief may be granted, and the court therefore orders them stricken.

For all of the above reasons, the plaintiff's complaint is stricken in its entirety.

1999 WL 240731 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
**(Cite as: 1996 WL 218760 (Conn.Super.))**

Page 1

**c**
Only the Westlaw citation is currently available.


UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.


Superior Court of Connecticut.

Marta VALENCIA
v.
ST. FRANCIS HOSPITAL AND MEDICAL
CENTER.

**No. CV 940538867S.**

April 3, 1996.


HENNESSEY, Judge.

**\*1** The defendants have filed motions for summary
judgment. The first motion seeks summary
judgment as to counts one and two which allege
retaliatory dismissal pursuant to C.G.S. § 290a and
breach of implied contract. The second motion
seeks summary judgment as to counts three and four
which allege negligent infliction of emotional
distress against the employer and intentional
infliction of emotional distress against the
immediate supervisor. We address both motions in
this decision.

This action arises from the plaintiff, Marta
Valencia's [Valencia] termination from her
employment at defendant, St. Francis Hospital and
Medical Center [St. Francis] on April 27, 1993.
[FN1] From September 10, 1990 until her
termination, Valencia was employed as a
receptionist in the Obstetrics and Gynecology Clinic
[OB/GYN]. Valencia alleges in her complaint that
a critical performance evaluation written by her
supervisor, Patricia Kubick [Kubick] spawned a
combative and acrimonious relationship between
the women. This relationship was further
aggravated by Valencia's request for a reevaluation
of her job performance on March 2, 1993. Kubick
declined the request and wrote a memorandum to
the Director of Ambulatory Nursing [Director]
criticizing Valencia's work performance. On

March 31, 1993, Valencia attended a meeting with
the Director and Kubick where a patient's complaint
against Valencia was discussed. Regarding this
complaint, Valencia alleges on April 5, 1993, she
was verbally and physically assaulted by Kubick at
work causing her tremendous physical and
emotional distress. That day, Valencia sought
medical treatment at St. Francis for symptoms of
acute anxiety, insomnia, poor appetite and heart
palpitations and was diagnosed with a diagnosis of
situational anxiety.


> FN1. For the purposes of this motion, both
> parties have agreed to accept all deposition
> testimony as true and accurate without
> certification.


In the aftermath of this confrontation, Valencia was
placed on unpaid suspension from April 6 to April
8, 1993 and ordered to report to work on April 12,
1993. On April 12, 1993, Valencia reported to
work and met with Kubick and a human resources
administrator. After this meeting, Valencia was
hospitalized at the psychiatric unit at St. Francis for
work related stress from April 12 to April 19, 1993
and advised by her physician not to contact Kubick.
On April 13, 1993, Valencia contacted an
employee at OB/GYN and requested that she
inform Kubick of her whereabouts. On April 19,
1993, Valencia was released from St. Francis with a
doctor's certification that she was not able to work
and advised not to have any contact with Kubick.
On April 26, 1993, Valencia, through her attorney,
allegedly advised St. Francis that she was out of
work due to a work related stress condition. On the
same day, St. Francis, through Kubick, terminated
Valencia's employment for absenteeism.

Valencia filed a four-count revised complaint
[FN2] on January 12, 1995 alleging that: (1) she
was terminated by St. Francis in retaliation for filing
a workers' compensation claim in violation of
General Statutes § 31-290a; (2) her termination was
a breach of an implied contract regarding medical
leave; (3) St. Francis was negligent in that they
knew or should have known that their conduct
caused her severe emotional distress and (4) Kubick
intentionally caused her severe emotional distress.


> FN2.  General  Statutes  §  31-290a(b)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

provides two avenues through which an employee may commence a claim of wrongful discharge or discrimination. The employee may either bring an action in the Superior Court or file a complaint with the workers' compensation commission with the right to direct appeal to the appellate court.

**\*2** On February 27, 1995, the defendants filed a Motion for Summary Judgment as to counts one and two of the revised complaint. Attached to this motion, the defendants included a memorandum in support, the affidavit of William G. Walton, the Director of Human Resources at St. Francis and excerpts from Valencia's deposition transcript. Valencia filed a memorandum in opposition on October 13, 1995. On December 26, 1995, the defendants filed a second Motion for Summary Judgment as to counts three and four of the revised complaint. Attached to this motion, the defendants included a memorandum in support and excerpts from Valencia's deposition transcript. On February 14, 1995, Valencia filed a memorandum in opposition.

Practice Book § 384 provides that summary judgment, "shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Suarez v. Dickmont Plastics Corp.,* 229 Conn. 99, 105 (1994). In deciding such a motion, the court must view the evidence in the light most favorable to the nonmoving party. *Connecticut Bank & Trust Co. v. Carriage Lane Associate,* 219 Conn. 772, 780- 81, 595 A.2d 334 (1991). The test to be applied by the court is whether, on the same facts, a party would be entitled to a directed verdict. *Gabrielle v. Hospital of St. Raphael,* 33 Conn.App. 378, 382-83, 635 A.2d 1232, cert. denied, 228 Conn. 928 (1994). The "party seeking summary judgment has the burden of showing the nonexistence of any material fact." (Citation omitted; internal quotation marks omitted.) *Connecticut Bank & Trust Co. v. Carriage Lane Associates, supra* 219 Conn. 781. A material fact is one that will make a difference in the result of a case. *Hammer v. Lumbermen's Mutual Casualty Co.,* 214 Conn. 573, 578, 573 A.2d 699 (1990). "[T]he party opposing [summary judgment] must provide an evidentiary foundation

to demonstrate the existence of a genuine issue of material fact." *Suarez v. Dickmont Plastics Corp., supra,* 229 Conn. 105. A party's motion for summary judgment is "properly granted if it raises at least one legally sufficient defense that would bar the [opposing party's] claim and involves no triable issue of fact." *Perille v. Raybestos-Manhattan-Europe, Inc.,* 196 Conn., 529, 543, 494, A.2d 555 (1985).

COUNT ONE%--RETALIATORY DISCHARGE CLAIM

In her First Count, Valencia claims that St. Francis discharged her in violation of General Statutes § 31-290a which provides; "[n]o employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter."

Valencia alleges that, "[p]rior to her termination, plaintiff's attorney, Richard Zayas, sent notice to defendant that plaintiff intended to file a workers' compensation claim for work stress and that any attempt to terminate her employment will be a violation of General Statutes § [31-290a]. After her termination, plaintiff filed a claim for workers' compensation benefits alleging work stress." Memorandum in Opposition, p. 4. St. Francis argues that on April 21, 1993, "[Valencia] did not contact [Kubick] that day ... [Valencia] never contacted [Kubick] concerning her whereabouts or expected date of return ... Although [Valencia] stated in her deposition that her attorney contacted [St. Francis] concerning her workers' compensation claim, [St. Francis] did [not] receive a correspondence from [Valencia's] attorney until April 28, 1993, two days after the date of [Kubick's] termination letter." Memorandum in Support, p. 5-6.

**\*3** In *Chiaia v. Pepperidge Farm, Inc.,* 24 Conn.App. 362, 588 A.2d 652 (1991), the court held, "[g]eneral statutes § 31-290a was designed to protect plaintiffs who file for workers' compensation benefits ... [t]he great majority of jurisdictions have recognized, either by statute or judicial decision, the tort of retaliatory discharge for the filing of a workers' compensation claim. Few courts, however, have expanded the definition of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1996 WL 218760 (Conn.Super.))

Page 3

discriminatory discharge to include a discharge occasioned by the neutral application of an absence control policy to an employee who was injured and collected workers' compensation benefits." (Citations omitted.) *Id.*, 366- 67.

The Supreme Court has set forth the allocation of burdens of proof and order of presentation of proof in discrimination cases brought pursuant to § 31-290a in *Ford v. Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 578 A.2d 1054 (1990). "The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination ... In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination ... If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions ... 'If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.' ... The plaintiff then must satisfy her burden of persuading the fact finder that she was the victim of discrimination 'either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citations omitted.) *Erisoty v. Merrow Machine Co.*, 34 Conn.App. 708, 711 (1994).

"The plaintiff must present some evidence from which a trier of fact could infer that the employer discharged or discriminated against the employee because he or she had exercised his or her rights under the Worker's Compensation Act ... Without some proof of an improper motive, a plaintiff's case must fail." (Citations omitted.) *Chiaia v. Pepperidge Farm, Inc., supra,* 24 Conn.App. 366.

Valencia concedes that the St. Francis absence control policy at issue applies to any of the defendant's employees who are absent from work for three days without contacting their supervisor or department head. See Memorandum in Opposition, p. 6; Valencia Deposition at p. 76. She further concedes that during her absence which commenced on April 12, 1993, she received the first of two letters from St. Francis regarding this absence. In her revised complaint, Valencia states that she was

released from St. Francis on April 19, 1993. Valencia, who was aware of this policy, made no attempt to contact either Kubick or her Department Head upon her release from the hospital as to the status of her condition or the amount of time she planned to be absent from work. The first letter, dated on April 15, 1993 which was delivered and signed by Valencia on April 21, 1993, inquired as to her whereabouts and requested that she contact Kubick before her termination date of April 21, 1993. While she claims that she did not contact Kubick directly due to admonishments by her physician, she fails to explain why she did not attempt to contact Kubick through voice mail or contact any Department Head regarding her absence or make arrangements to have her attorney contact St. Francis at this time. The second letter, dated April 26, 1993, was delivered and signed by Valencia on April 28, 1993. This letter informed her that she was terminated as of April 26, 1993 for failing to contact Kubick.

*4 In order to support her claim of retaliatory dismissal, Valencia must demonstrate a cause-and-effect relationship between the exercise of her rights under workers' compensation and her subsequent termination. In her memorandum, Valencia claims that, "[p]rior to her termination, [her] attorney ... sent notice to [St. Francis] that [Valencia] intended to file a workers' compensation claim for work stress." Memorandum in Opposition, p. 4. However, a perusal of the record indicates that the termination letter of April 26, 1993 was received by Valencia on April 28, 1993. On the same day, Valencia's letter, through her attorney, reached St. Francis. As Valencia's termination was effective "immediately," Valencia was terminated, at the latest, on the same day the hospital received notice of her claim, not two days earlier. Thus, her statement that St. Francis received notice of her intention to bring a workers' compensation claim *prior* to her termination is unsupported by the evidence.

Even if this court were to accept Valencia's argument that St. Francis received notice of claim prior to mailing her termination letter, the court must still consider the effect of the first letter dated April 21. This letter clearly stated that Valencia would be terminated as of April 21, if she failed to contact Kubick and was received approximately five days before the date of Valencia's letter to St. Francis and seven days before its actual delivery.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1996 WL 218760 (Conn.Super.))

In her deposition, Valencia stated that she did not contact anyone at St. Francis concerning her intent to bring a workers' compensation claim. (See Valencia Deposition at p. 76). In order to prove that St. Francis committed a 'retaliatory' action against her, Valencia must demonstrate that St. Francis had notice of her intention to bring a workers' compensation claim prior to her discharge. The plaintiff's evidence does not support this conclusion.

In *Chiaia v. Pepperidge Farm, Inc., supra,* 24 Conn.App. 362, the court affirmed the decision of the workers' compensation commissioner who found that, "the defendant's absence control policy was neutrally applied to any of the defendants' [employees] who were absent from work ... the plaintiffs had failed to sustain their burden of proving that they had been discharged because of discrimination or any retaliatory motive. The commissioner concluded that the sole reason for the plaintiff's discharge was their absence from employment ... in contravention of the defendant's absence control policy." *Id.,* 363-64. Valencia has failed to demonstrate any evidence to support the inference that she was fired for a reason other than absenteeism. Her alleged acrimonious relationship with Kubick does not, in itself, support her allegation of retaliatory discharge.

Accordingly, the plaintiff's claims under General Statutes § 31-290a must fail. The defendants' motion for summary judgment, as to this count, is granted.

COUNT    TWO--BREACH    OF    IMPLIED CONTRACT

*5 Valencia argues that the St. Francis employee handbook which provides income protection for employees on sick or medical leave created an implied contract between the hospital and its employees. She argues that the manual created an implied contract that St. Francis would not terminate Valencia's employment while she is on medical leave. The section entitled, *Sick Leave,* states in pertinent part: "[t]he purpose of this benefit program is to provide you protection against short term unexpected illness. This program is provided so that you may have income protection during brief periods of illness." Memorandum in Opposition, Exhibit D, p. 13. Valencia suggests that there are issues of fact as to whether an implied

contract was created and whether Valencia violated the sick leave policy when her supervisor had constructive notice of her whereabouts. "In determining the terms of a contract, the intentions of the parties, manifested by their words and actions, are essential ... While we have recognized that, under appropriate circumstances, the terms of an employment manual may give rise to an express and implied contract between employer and employee ... in the absence of definitive contractual language, the question of whether the parties intended the manual to constitute part of the contract is a question of fact to be determined by the trier of fact." (Citations omitted.) *Carbone v. Atlantic Richfield Co.,* 204 Conn. 460, 471-72, 528 A.2d 1137 (1987). "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus, as a general rule, contracts of permanent employment, or for an indefinite term are terminable at will ... Absent a statutory warranty or definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 234 Conn. 1, 14-15 (1995). No 'definitive contractual language' was presented to raise an inference that the plaintiff's termination would be suspended if she was on sick leave. Valencia's argument that she relied to her detriment on this unwritten policy interpretation is also unsupported. By her own admissions, she stated she was never aware of any such policy at St. Francis. (See Valencia Deposition pp. 80-81.) Valencia's failure to contact her supervisor precludes her from raising this defense. There is no evidence to support the inference that her employer was aware that she was on sick leave. The termination letters she received requested that she provide actual, not constructive notice to her supervisor as to her whereabouts. Further, the employee manual clearly states, "[y]our supervisor may request and require at any time a physician's certificate of illness to determine eligibility for sick leave pay." Memorandum in Opposition, Exhibit D, p. 14.

*6 This court finds that the plaintiff's proof is insufficient as a matter of law to support the inference that an implied contract was created in the employee manual precluding her discharge while on

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
**(Cite as: 1996 WL 218760 (Conn.Super.))**

sick leave. Accordingly, the defendants' motion for summary judgment, as to this count, is granted.

## COUNT THREE--NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY ST. FRANCIS

A cause of action for negligent infliction of emotional distress was first recognized by the Connecticut Supreme Court in *Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 398 A.2d 1180 (1978). See also *Morris v. Hartford Courant Co.*, 200 Conn. 676, 683, 513 A.2d 66 (1986). Negligent infliction of emotional distress is applicable when "a defendant should have realized that its conduct involved an unreasonable risk of causing the distress, and from the facts known to it, should have realized that the distress, if it were caused, might result in illness or bodily harm." *Montinieri v. Southern New England Telephone Co., supra*, 341. In addition, contrary to intentional infliction of emotional distress, "recovery for unintentionally-caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact." *Id.*, 345. Therefore, the emotional distress "must be reasonable in light of the conduct of the defendants." *Barrett v. Danbury Hospital*, 232 Conn. 242, 261, 654 A.2d 748 (1995).

Valencia argues that St. Francis negligently inflicted emotional distress on her "as a result of its conduct arising out of [her] termination." Memorandum in Opposition dated February 12, 1996, p. 11. It is her contention that "[a]n employer's act in terminating an employee while the employee is hospitalized certainly satisfies the element of unreasonableness when, as here, the employer through its agents, servants and/or employees had knowledge of the employee's hospitalization." Memorandum in Opposition, dated February 11, 1996, p. 12. In support of this argument, Valencia cites as authority *Fulco v. Norwich Roman Catholic Diocese*, 27 Conn.App. 800, 609 A.2d 1034 (1992), *cert. dismissed*, 226 Conn. 404, 627 A.2d 931 (1993). This reliance is misplaced.

In *Fulco*, the plaintiff, like Valencia, contended that his personal injury (emotional distress) arose out of his discharge, not out of the conditions of his employment. The court analyzed the Workers' Compensation Act and held that, "[The Act] provides the exclusive remedy to employees

seeking compensation for work related injuries or death from such injuries where (1) the plaintiff was an employee of the defendant, (2) the plaintiff suffered a personal injury and (3) the injury arose out of and in the course of the plaintiff's employment." *Id.*, 807. The court further analyzed General Statutes § 31-275(12) which defines, "arising out of and in the course of his employment" as "happening to an employee ... while he has been engaged in the line of his duty in the business or affairs of the employer ... A personal injury shall not be deemed to arise out of the employment unless causally traceable to the employment ..." "To occur in the course of the employment, the injury must take place (a) within the period of the employment, (b) at a place where the employee may reasonably be, and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incident to it." *Id.*, 808. The court concluded that "[t]he allegations of the plaintiff's complaint, if true, demonstrate that the plaintiff was neither within the period of his employment or doing something incidental to it when he sustained his alleged injury ... It is impossible for the injury to have arisen during the period of his employment because his employment necessarily terminated before the alleged injury arose. *It would unduly strain the language of the statute for us to conclude that termination of employment creates a job related injury.*" (Emphasis added.) *Id.*, 808.

*7 Valencia's injury arose from her discharge and is therefore not actionable under Workers' Compensation. Valencia has failed to demonstrate sufficient facts to support her contention that St. Francis knew or should have known its conduct involved an unreasonable risk of causing Valencia distress and would result in illness or bodily harm.

Construing the facts in the plaintiff's favor, they merely demonstrate that St. Francis received information from a third-party that Valencia had been hospitalized on April 13, 1993. Conceding that the hospital had constructive notice of her absence, according to hospital policy requirements, Valencia had a duty to contact her supervisor directly. However, Valencia concedes that she was aware of the policy but chose not to contact her supervisor within the required time period. (See Valencia Deposition pp. 69-74.) In Connecticut, the law is clear that an employment contract is presumed to be terminable at will. *Magnan v.*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1996 WL 218760 (Conn.Super.))

*Anaconda Industries, Inc.,* 193 Conn. 558, 563-69, 479 A.2d 781 (1984). Valencia has offered no evidence to support her claim that St. Francis had any duty to refrain from discharging her for her breach of an established absentee policy or that it acted unreasonably in doing so. As an employee at will there was no 'unreasonable risk' that was or should have been contemplated by St. Francis in connection with Valencia's discharge. Therefore, the defendants' motion for summary judgment, as to this count, is granted.

COUNT FOUR--INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY KUBICK

In *Petyan v. Ellis,* 200 Conn. 234, 510 A.2d 1337 (1986), the court held, "[i]n order for a plaintiff to prevail in a case for liability under [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Id.,* 253.

The sole issue before this court is whether Kubick's conduct was sufficiently "extreme and outrageous." Valencia's reliance on *Settembri v. American Radio Relay League,* Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 393198 (Schaller, J.) (6 Conn. L. Rptr. 701, 7 CSCR 483), is distinguishable and therefore persuasive.

In *Settembri,* the court found conduct to be "extreme and outrageous" when an employer demanded an injured employee to return to work or face termination. In the instant case, Kubick did not order Valencia to return to work. The letters sent to Valencia merely requested that she contact Kubick regarding her absence. Valencia's failure to contact Kubick, not return to work, was the reason for her termination. No evidence was presented by Valencia in support any other inference. "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress ... [T]here is liability for conduct exceeding all bounds usually tolerated by a

decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a serious kind." (Citation omitted; internal quotation marks omitted.) *Mellaly v. Eastman Kodak Company,* 42 Conn.Sup. 17, 19-20, 597 A.2d 373 (1991). "Only where reasonable minds differ does it become an issue for the jury." *Id.,* 18. "The plaintiff must allege and prove conduct considerably more egregious than that experienced in the rough and tumble of everyday life." *Whelan v. Whelan,* 41 Conn.Sup. 519, 522, 588 A.2d 251, 3 Conn. L. Rptr. 135 (1991). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Citations omitted; internal quotation marks omitted.) *Id.,* 523.

*8 In the instant case, Valencia's allegations that Kubick "grabbed plaintiff's arm in front of patients and co-workers, pulled her in a back room and yelled at her," Memorandum in Opposition dated February 12, 1993, is insufficient to support this cause of action. In *Stepney v. Devereux Foundation,* Superior Court, judicial district of Litchfield, Docket No. 065885, 14 Conn. L. Rptr. 483 (July 17, 1995) (Pickett, J.), the court found that allegations which allege "nothing more than verbal abuse ... do not appear to rise to the level of extreme and outrageous conduct under Connecticut law. The defendant's revised complaint simply does not allege conduct which "shocks the conscience." *Id.*

Valencia argues that the embarrassment she suffered from these actions caused her severe emotional distress. This court concludes that the defendant's conduct and the plaintiff's resulting distress are insufficient as a matter of law to satisfy the requisite elements for this claim. Accordingly, the defendants' motion for summary judgment on this count is granted.

1996 WL 218760 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
**(Cite as: 1999 WL 1034611 (Conn.Super.))**

Page 1

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut.

Alan J. ROSENBERG et al.,
v.
MERIDEN HOUSING AUTHORITY.

**No. CV 950377376.**

Oct. 29, 1999.

MEMORANDUM OF DECISION ON
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (# 127)

LICARI.

*1 On March 23, 1998 the plaintiffs, Alan
Rosenberg and his spouse, Lynne Rosenberg, filed a
six-count revised complaint against the defendants.
[FN1] The causes of action asserted in the
complaint arise out of Alan Rosenberg's
employment with the Meriden housing authority
(authority) and the termination of this employment.
The defendants are the authority, an agency
established by the city of Meriden to operate
housing development projects, Lucille C.
Malavenda, a commissioner and chairperson of the
board of commissioners of the authority, W. James
Rice, executive director of the authority, and Hector
Cardona, Carl Lohman, Urseline Boltin and Jennie
T. Roccapriore, commissioners of the authority.

> FN1. The plaintiffs initially filed a
> nine-count complaint on August 14, 1995.
> The defendants filed a motion to strike,
> which was granted as to all counts on
> December 31, 1997. *Rosenberg v. Meriden
> Housing Authority,* Superior Court,
> judicial district of New Haven at New
> Haven, Docket No. 377376 (December 31,
> 1997) (O'Keefe, J.). The plaintiffs filed an
> amended complaint and, in response to the

defendants' request to revise, the revised
complaint, on April 6, 1998. At oral
argument on the defendants' motion for
summary judgment, the court expressed
concern over the defendants' use of a
motion for summary judgment to assert its
arguments, as opposed to a motion to
strike. However, the plaintiffs did not
argue this issue, both parties approached
the matter as a motion for summary
judgment, and neither party has argued to
the contrary. In addition, judges of the
Superior Court have allowed parties to
"use the motion for summary judgment to
contest the legal sufficiency of the
complaint, even though legal sufficiency is
more appropriately tested by a motion to
strike." (Internal quotation marks omitted.)
*Anderson v. City of New London,* Superior
Court, judicial district of New London at
New London, Docket No. 541273 (March
4, 1999) (Hurley, J.). Therefore, this court
determined that it would treat the
defendants' pleading as a motion for
summary judgment. Further, because
neither party argued that the court's ruling
on the defendants' motion to strike is the
law of the case, the court determined that it
would not treat it as such.

In the revised complaint (complaint), which is the
operative pleading, Alan Rosenberg asserts causes
of action for breach of contract, promissory
estoppel, intentional infliction of emotional distress,
negligent infliction of emotional distress,
defamation and discriminatory discharge for
exercise of rights under the Workers' Compensation
Act. Lynne Rosenberg asserts a cause of action for
loss of consortium. The defendants filed their
answer and special defenses on May 22, 1998.
[FN2] On May 20, 1999, the defendants filed a
motion for summary judgment on all counts of the
complaint. In support of their motion, the
defendants filed a memorandum of law, the
affidavits of defendants Rice, Boutin (sued as
Boltin), and Malavenda, uncertified excerpts from
Alan Rosenberg's deposition (Deposition), [FN3]
and a transcript of a tape recording of the executive
session of the commissioners of the authority held
on May 11, 1995 (Transcript). [FN4] The plaintiffs
submitted an objection to the motion for summary
judgment dated July 22, 1999, supported by a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 1034611 (Conn.Super.))

memorandum of law and an affidavit of Alan Rosenberg. The court heard the parties' oral argument on the motion for summary judgment on July 26, 1999.

FN2. The defendants asserted four special defenses to the plaintiffs' causes of action, including the following which are directed to Alan Rosenberg's causes of action: as to his causes of action for intentional and negligent infliction of emotional distress, the defendants claim that his exclusive remedy for any injuries he suffered in the course of his employment is through the Workers' Compensation Act; as to his cause of action for intentional infliction of emotional distress, the defendants contend it does not state a claim upon which relief may be granted; and as to his causes of action for intentional infliction of emotional distress and defamation, the defendants claim that all of the statements allegedly made by the defendants were conditionally privileged.

FN3. At oral argument, the plaintiffs did not object to the defendants' submission of the uncertified deposition transcript and both parties asked the court to consider this document in ruling on the motion for summary judgment. Practice Book § 17-45 provides, in pertinent part, "[a] motion for summary judgment shall be supported by such documents as may be appropriate, including ... certified transcripts of testimony under oath ..."
"Neither the Connecticut Supreme Court nor the Appellate Court have made a definitive statement as to whether certified and/or uncertified deposition testimony may properly be considered when ruling on a motion for summary judgment." *Candido v. Dattco, Inc.* Superior Court, judicial district of New Haven at New Haven, Docket No. 386861 (March 13, 1998) (Hartmere, J.) Without ruling on the issue, the Appellate Court has noted "the Superior Court has been split as to whether deposition testimony, either uncertified or certified, may be considered for the purposes of a motion for summary

judgment pursuant to Practice Book § 384 [now Practice Book (1998 Rev.) § 17-49]. Since our decision in *Esposito,* we have not determined it to be improper for a trial court to consider deposition testimony in ruling on a motion for summary judgment." *Schratwieser v. Hartford Casualty Ins. Co.,* 44 Conn.App. 754, 756 n. 1, 692 A.2d 1283, cert. denied, 241 Conn. 915, 696 A.2d 340 (1997).
"[T]he trend in the Superior Courts is to consider certified, but not uncertified, deposition testimony when ruling on a motion for summary judgment." *Candido v. Dattco, Inc. supra,* Superior Court, Docket No. 386861; see, e.g., *National Grange Mutual Ins. Co. v. Hartford Ins. Co. of the Midwest,* Superior Court, judicial district of New Haven at New Haven, Docket No. 381595 (August 16, 1996) (Licari, J.) (pursuant to Practice Book § 17-45, "deposition testimony submitted in support of a motion for summary judgment must be certified"); but see *Geherty v. Connecticut Yankee Atomic Power Co.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 546860 (April 20, 1998) (Teller, J.) (22 C ONN.L.RPTR. 128, 133 n. 1) (because nonmovant did not object to uncertified deposition transcript supported by affidavit from movant's attorney, court considered these documents in ruling on motion for summary judgment).
Given the plaintiffs' failure to object to the defendants' submission of the uncertified deposition transcript, the court may consider the deposition excerpts in ruling on the motion for summary judgment.

FN4. The defendants claim that this document is a transcript that Alan Rosenberg made from a tape recording he made of the meeting of the executive session of the authority held on May 11, 1995, at which his job performance was discussed. In Alan Rosenberg's deposition, the defendants questioned him as to the accuracy of the transcript. (Deposition, pp. 117- 19, 121.) At oral argument, both parties asked the court to consider this document in ruling on the motion for

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

summary judgment. The court may consider this document in ruling on the defendant's motion for summary judgment.

In the complaint, the plaintiffs make the following allegations regarding Alan Rosenberg's employment with the Meriden housing authority. In November 1992, Alan Rosenberg was hired as director of building and grounds. He began to work for the authority on January 4, 1993. Alan Rosenberg was told by the defendant Rice that as long as he did his job and carried out his duties and responsibilities, he would have a job with the authority for as long as he wanted. The plaintiffs allege that Alan Rosenberg always met and exceeded his obligations. They list numerous achievements that they claim he attained over the course of his employment. They also allege that the defendants acted "extreme[ly], intolerab[ly] and outrageously" toward him during his employment. They allege that on May 8, 1995, Alan Rosenberg suffered a work-related injury while in the course of his employment and that he filed a report of injury and a claim for workers' compensation benefits on May 9, 1995. The plaintiffs allege that on May 11, 1995, the defendants terminated Alan Rosenberg's employment without good cause and without misconduct on his part for the stated reason of "inability to perform job properly." They also allege that the defendants made false and malicious allegations against him. The plaintiffs claim that, as a result of the defendants' conduct, Alan Rosenberg suffered lost income, benefits and job rights, is unable to attain a job with equal income and benefits, and suffered substantial and enduring emotional distress, anguish, embarrassment and humiliation. Finally, Lynne Rosenberg asserts a cause of action for loss of consortium pursuant to her husband's causes of action for breach of implied contract, promissory estoppel and intentional infliction of emotional distress.

*2 "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ... In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party ... Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact ... a

party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue ... It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact ... are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Maffucci v. Royal Park Ltd. Partnership,* 243 Conn. 552, 554-55, 707 A.2d 15 (1998).

*Breach of Contract (First Count)*

*Implied Contract of Employment (First Count)*

In the first count of the complaint, the plaintiffs allege that Alan Rosenberg had an implied contract of employment with the Meriden housing authority pursuant to which he could be discharged only for cause and that the defendants breached this contract when they terminated his employment on May 11, 1995. This cause of action is based on their allegation that Rice told Alan Rosenberg "that as long as the Plaintiff did his job and carried out his duties and responsibilities, he would have a job with the Meriden Housing Authority for as long as he wanted." (Revised Complaint, First Count, § 7.) In his deposition, Alan Rosenberg gave the following account of Rice's statement:

"When I was hired by Mr. Rice, he indicated to me that I had a job there, continuous job there, basically forever. No one gets fired from the Housing Authority and if I completed my tasks that he gave me, that I would be there forever ... I had a job there as long as I wanted." (Deposition, p. 74.)

In their motion for summary judgment, the defendants do not dispute that Rice made this statement to Alan Rosenberg. They argue, rather, that Alan Rosenberg was employed for an indefinite term, and therefore was employed at will. They argue that he has not alleged sufficient conduct by the defendants to support a cause of action for breach of an express or implied contract. The plaintiffs respond that they have alleged sufficient facts to support a cause of action for breach of an implied contract and that, in any case, the issue of whether the parties entered into a contract and the terms thereof depends on the intention of the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 1034611 (Conn.Super.))

Page 4

parties, and that the issue of intent presents a question of fact for the trier of fact.

*3 "Contracts may be expressed or implied. These terms, however, do not denote different kinds of contracts, but have reference to the evidence by which the agreement between the parties is shown. If the agreement is shown by the direct words of the parties, spoken or written, the contract is said to be an express one. But if such agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the surrounding circumstances, then the contract is an implied one ... Whether [a] contract is styled 'express' or 'implied' involves no difference in legal effect, but lies merely in the mode of manifesting assent ..." (Citations omitted, internal quotation marks omitted.) *Boland v. Catalano,* 202 Conn. 333, 336-37, 521 A.2d 142 (1987). In this case, the plaintiffs do not allege that Alan Rosenberg and the defendants expressly agreed to any specific terms or conditions of his employment, or that he had an express contract of employment with the authority. Instead, they appear to limit their claim to one of breach of implied contract. (See Revised Complaint, § 18.)

The Connecticut Supreme Court recognizes that "[a]ll employer-employee relationships not governed by express contracts involve some type of implied 'contract' of employment. There cannot be any serious dispute that there is a bargain of some kind; otherwise, the employee would not be working ..." (Citations omitted; internal quotation marks omitted.) *Gaudio v. Griffin Health Services Corp.,* 249 Conn. 523, 532, 733 A.2d 197 (1999). "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus, [a]s a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will ..." (Citations omitted; internal quotation marks omitted.) *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 234 Conn. 1, 14, 662 A.2d 89 (1995). An employment at will relationship can, however, be "modified by agreement of the parties." *Id.,* 15, 662 A.2d 89. To sustain a cause of action based on the alleged "existence of an implied agreement between the parties, the plaintiff [has] the burden of proving ... that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of

actual contract commitment to him under which he could not be terminated without just cause ..." (Citations omitted, internal quotation marks omitted.) *Id.* "A contract implied in fact, like an express contract, depends on actual agreement ..." (Citations omitted; internal quotation marks omitted.) *Coelho v. Posi-Seal International, Inc.,* 208 Conn. 106, 111-12, 544 A.2d 170 (1988).

*4 "To determine the contents of any particular implied contract of employment, the factual circumstances of the parties' relationship must be examined in light of legal rules governing unilateral contracts ... Initially, the trier of fact is required to find that the employer's oral representations ... [were] an 'offer'--i.e., that it was a promise to the employee that, if the employee worked for the company, his or her employment would thereafter be governed by those oral ... statements ... If the oral representations ... constitute an 'offer,' the trier of fact then is required to find that the employee accepted that offer." [FN5] *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., supra,* 234 Conn. 13-14. "A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of minds between the parties ... In order to support contractual liability, the defendants' representations must be sufficiently definite to manifest a 'present intention on the part of the defendants to undertake immediate contractual obligations to the plaintiff.' ..." *Burnham v. Karl & Gelb, P.C.,* 50 Conn.App. 385, 389, 717 A.2d 811, cert. granted on other grounds, 247 Conn. 944, 723 A.2d 320 (1998), quoting *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 214-15, 520 A.2d 217 (1987). "Absent a statutory warranty or definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., supra,* 234 Conn. 15.

FN5. "[T]he only consideration needed to sustain [a promise not to discharge without just cause] is the employee's acceptance of employment on such terms." *Coelho v. Posi-Seal International, Inc., supra,* 208 Conn. 118.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 1034611 (Conn.Super.))

Page 5

The Connecticut Supreme Court has held that oral representations similar to Rice's statements to Alan Rosenberg provided sufficient evidence for a jury to find that an implied contract existed. *Gaudio v. Griffin Health Services Corp., supra,* 249 Conn. 538. In *Gaudio* the court concluded that, inter alia, the plaintiff's testimony that he "was promised that as long as [he] was doing [his] job and continued to do a good job, [he] would be there for as long as [he] wished" provided sufficient evidence of an implied contract precluding the defendant from terminating the plaintiff without just cause. *Id.,* 538, 733 A.2d 197. Similarly in *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., supra,* 234 Conn. 1, 662 A.2d 89, the court upheld the trial court's finding of an implied contract that the plaintiff could only be terminated for cause based, inter alia, on statements the defendant's representative made to the plaintiff that "if the plaintiff did a good job, the defendant would take care of him." *Id.,* 16, 662 A.2d 89; see also *Coelho v. Posi-Seal International, Inc., supra,* 208 Conn. 111 ("Don't worry about it; You're all set ... Just do your job ... This is the team that will carry this company ahead"); *Barry v. Posi-Seal International, Inc.,* 36 Conn.App. 1, 4, 647 A.2d 882, remanded for further consideration on other grounds, 235 Conn. 901, 664 A.2d 1124 (1995) ("[I]f you do your job, you do your work, you're going to have a job here"); *Anastasio v. Knights of Columbus,* Superior Court, judicial district of New Haven at New Haven, Docket No. 396806 (May 21, 1998) (Silbert, J) ("You will never have to find another job; but you must always be loyal to me and this building").

**\*5** Here the oral statement upon which the plaintiffs rely for their cause of action for breach of contract is sufficient to raise a genuine issue of material fact as to the existence of an implied contract. Although the statement does not contain definitive contract language, "[i]n the absence of [such] language ... the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact ..." (Citation omitted; internal quotation marks omitted.) *Gaudio v. Griffin Health Services Corp., supra,* 249 Conn. 533. "Summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated ... (Citation omitted; internal quotation marks omitted.) *Reynolds v. Chrysler First Commercial Corp.,* 40 Conn.App. 725, 731, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.

-2d 885 (1996). Therefore, the defendants are not entitled to summary judgment on the plaintiffs' cause of action for breach of contract.

*Promissory Estoppel (First Count)*

In the first count of their complaint, the plaintiffs also allege that Rice's statement to Alan Rosenberg gives rise to a cause of action for promissory estoppel. In their motion for summary judgment, the defendants contend that they are entitled to summary judgment on this cause of action because Rice's statement is not sufficiently promissory or definite to support a cause of action for promissory estoppel and because the plaintiffs fail to allege that Alan Rosenberg relied on the statement. The plaintiffs do not include a detailed response to this argument in their objection to the defendants' motion, but at oral argument they stated that Alan Rosenberg's conduct in performing his job as outlined in the complaint is sufficient evidence that he acted in reliance on Rice's statement.

"Section 90 of the Restatement Second [of Contracts] states that under the doctrine of promissory estoppel '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee ... and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' " *D'Ulisse- Cupo v. Board of Directors of Notre Dame High School, supra,* 202 Conn. 213. The required elements of a cause of action for promissory estoppel are: (1) the promisor made a clear and definite promise; (2) the promisee reasonably relied on the promise; (3) the promise induced the action taken by the promisee; and (4) injuries can be avoided only by enforcement of the promise. *Id.,* 213-15. The plaintiff must allege a promise--"the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance"; *id.,* 213; and reliance--that "the other party, influenced thereby, ... actually change[d] his position or [did] some act to his injury which he otherwise would not have done ..." (Citations omitted; internal quotation marks omitted.) *DeLuca v. C.W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 545, 391 A.2d 170 (1978); see *Chotkowski v. State,* 240 Conn. 246, 268, 690 A.2d 368 (1997).

**\*6** In this case, the plaintiffs do not raise a genuine issue of material fact as to the element of reliance.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 1034611 (Conn.Super.))

[FN6] In order to satisfy this element, the plaintiffs must show that the actions Alan Rosenberg took in reliance on the defendants' promise are "of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute ..." (Citations omitted; internal quotation marks omitted.) *DeLuca v. C.W. Blakeslee & Sons, Inc., supra,* 174 Conn. 545. The plaintiffs fail to present evidence that Alan Rosenberg changed his position in a way which could be accounted for only by the existence of a contract under which he could only be terminated for cause. Although they allege that he met and exceeded his obligations as an employee, such conduct is not sufficient to satisfy the element of reliance. See *Bombard v. Industry Riggers, Inc.,* Superior Court, judicial district of Waterbury, Docket No. 140181 (January 5, 1998) (Pellegrino, J.) (plaintiff failed to allege any change in position in reliance on an alleged contract; instead plaintiff alleged he remained employed by defendants); *Leniart v. C & S Distributors, Inc.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 516354 (January 21, 1994) (Corradino, J.) (plaintiff presented no evidence that she "forbore doing anything" as a result of defendant's promise); *Corrado v. Leonard,* Superior Court, judicial district of Danbury, Docket No. 307646 (March 26, 1992) (Fuller, J.) (fact that plaintiff left another job to work for defendant does not, without more, state a promissory estoppel claim). Therefore, the defendants are entitled to summary judgment on the plaintiffs' cause of action for promissory estoppel.

FN6. Because the plaintiffs fail to raise a genuine issue of material fact as to the element of reliance, it is not necessary for the court to consider whether the plaintiffs raise a genuine issue of material fact as to the "promise" element.

*Intentional Inflication of Emotional Distress (Second Count)*

In the second count of the complaint the plaintiffs allege a cause of action for intentional infliction of emotional distress. Specifically they allege that the defendants acted "extreme[ly], intolerabl[ly] and outrageously" toward Alan Rosenberg and that this conduct, which occurred both during his employment and at the time of his termination, caused him to suffer "substantial and enduring emotional distress, anguish, embarrassment and humiliation." The defendants argue that they are entitled to summary judgment on this cause of action because the plaintiffs fail to allege conduct that is extreme and outrageous. The plaintiffs respond that the conduct of the defendants as alleged in their complaint was extreme and outrageous.

At oral argument and during Alan Rosenberg's deposition, the parties agreed that the conduct the plaintiffs are relying on for this cause of action is the defendants' conduct at the executive session held on May 11, 1995, just prior to the termination of Alan Rosenberg's employment.

*7 Specifically, Alan Rosenberg avers that at the executive session, held to discuss his status, the defendants did not allow him to speak or to respond to the allegations made about his conduct, he was cut off and was not permitted to face other employees who had a problem with his conduct. (Deposition, pp. 39, 44-45, 59-61.) In addition, the plaintiffs cite to Alan Rosenberg's contention that, on another occasion, Rice told him that he knew that Roccapriore did not like Alan Rosenberg and "indicated there would be a problem when she started for the Housing Authority as the chairperson." (Deposition, p. 60.)

In order to state a claim of intentional infliction of emotional distress, "[i]t must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe ..." (Citations omitted; internal quotation marks omitted.) *DeLaurentis v. New Haven,* 220 Conn. 225, 266-67, 597 A.2d 807 (1991). As to the second element, which is the element at issue here, the question of "[w]hether the defendant's conduct ... [is] sufficient to satisfy ... [this element] is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury ..." (Citations omitted.) *Mellaly v. Eastman Kodak Co.,* 42 Conn.Supp. 17, 18, 597 A.2d 846 (1991); see also *Richter v. Danbury Hospital,* Superior Court, judicial district of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
**(Cite as: 1999 WL 1034611 (Conn.Super.))**

Danbury, Docket No. 307869 (June 9, 1998) (Moraghan, J.). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind ..." (Citation omitted, internal quotation marks omitted.) *DeLaurentis v. New Haven, supra,* 220 Conn. 267. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to the average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' ..." (Citations omitted; internal quotation marks omitted.) *Mellaly v. Eastman Kodak Co., supra,* 42 Conn. Sup. 20.

"A review of recent Connecticut decisions on the issue of extreme and outrageous conduct within the context of a claim for intentional infliction of emotional distress reveals that there is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain an action. The court looks to the specific facts and circumstances of each case in making its decision." *Martins v. Bridgeport Hospital,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 356084 (February 11, 1999) (Melville, J.). However, "[a] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional acts wholly lacking in social utility." (Internal quotation marks omitted.) *Whelan v. Whelan,* 41 Conn.Supp. 519, 522, 588 A.2d 251, 3 C ONN.L.RPTR. 519 (1991). "[T]he plaintiff must allege and prove conduct considerably more egregious than that experienced in the rough and tumble of everyday life ..." *Id.* As stated by this court, "[t]hose cases in the employment context that have granted motions to strike because the allegations do not sufficiently describe 'extreme and outrageous' behavior are more often those that allege little more than that the plaintiff was terminated without just cause." *Centi v. Lexington Health Care Center,* Superior Court, judicial district of New Haven at New Haven, Docket No. 383535 (May 1, 1997) (Licari, J.).

**\*8** Similarly, in granting summary judgments in

favor of defendants based on this element, in several cases the court found the defendant's conduct insufficiently egregious. See *Finucane v. Dandio,* Superior Court, judicial district of New Haven at New Haven, Docket No. 366182 (February 26, 1999) (Levin, J.) (24 CONN.L.RPTR. 165, 165-66) (defendants temporarily suspended plaintiff, a baseball coach, and had police officer tell plaintiff's wife that plaintiff would be arrested if he returned to ball field); *Henderson v. Hoban,* Superior Court, judicial district of New Haven at New Haven, Docket No. 391352 (July 10, 1998) (Levin, J.) (defendant shouted at plaintiff, threatened to strike her, verbally attacked her, threatened and abused her "inviting a physical altercation"); *Richter v. Danbury Hospital,* Superior Court, judicial district of Danbury, Docket No. 307869 (June 9, 1998) (Moraghan, J.) (defendant showed dislike and antipathy toward plaintiff, recommended reduction of his privileges and influenced others to terminate plaintiff's employment); *Manley v. Blue Cross/Blue Shield of Connecticut,* Superior Court, judicial district of New Haven at New Haven, Docket No. 322213 (September 10, 1996) (Corradino, J.) (at termination meeting, defendant's agent was "nasty, unpleasant and did not allow her to explain," but plaintiff did not allege he used profanity or took action designed to humiliate her).

On the other hand, "[i]n those cases where the courts have held that there was a question of material fact as to whether behavior was sufficiently extreme or outrageous to give rise to an intentional tort, the circumstances have been particularly egregious." *Finucane v. Dandio, supra,* 24 CONN.L.RPTR. 166. See, e.g., *Appleton v. Board of Education,* 53 Conn.App. 252, 265-66, 730 A.2d 88 (1999) (defendants subjected plaintiff to "humiliating series of incidents ... in front of coworkers," told her they were collecting information on her, had police escort her off the premises, required her to undergo psychiatric evaluation and made her take leave even though evaluation showed she could work); *Cucuel v. Fayed,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 315420 (February 28, 1997) (Levin, J.) (plaintiff's employers induced him to give up his career with police department, misrepresented intent to hire him for three years, terminated him without cause, and opposed his entitlement to unemployment benefits.); *Brown v. Ellis,* 40 Conn.Supp. 165, 165-68, 484 A.2d 944

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works