Not Reported in A.2d
(Cite as: 1999 WL 1034611 (Conn.Super.))

Page 8

(1984) (defendant demanded that plaintiff employee, known to have fear of heights, take photographs from high places). Courts also cite to the presence of allegations of egregious conduct in determining that a cause of action for intentional infliction of emotional distress survives a motion to strike. See *Centi v. Lexington Health Care Center supra,* Superior Court, Docket No. 383535 (defendant's agent changed plaintiff's work assignments, set unrealistic goals, came to her home on Sunday to terminate her and gave her a pretextual reason for her termination); *Taylor v. Phillis Bodel Childcare Center,* Superior Court, judicial district of New Haven at New Haven, Docket No. 377237 (July 10, 1996) (Licari, J.) (defendants accused plaintiff of child abuse and professional misconduct without investigating such claims, portrayed her as incompetent and unprofessional in evaluations to justify her termination and prevent future employment).

*9 Here, the transcript of the executive session provides evidence that Alan Rosenberg was permitted to respond to at least some of the allegations made by the defendants. (Transcript, pp. 1-5.) In addition, although the transcript does indicate that the defendants sometimes cut off Alan Rosenberg's responses and that they may have been rude and insulting, it does not indicate that their conduct was sufficiently egregious to support a cause of action for intentional infliction of emotional distress. "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Mellaly v. Eastman Kodak Co., supra,* 42 Conn.Sup. 19. Indeed, the behavior the plaintiffs allege amounts to the type of "insults, indignities, threats, annoyances, petty oppressions, or other trivialities" that are insufficient to sustain this cause of action. *Hiers v. Cohen,* 31 Conn.Supp. 305, 308-09, 329 A.2d 609 (1973), quoting 1 Restatement (Second), Torts § 46, comment (d) (1965). Therefore, the defendants are entitled to summary judgment on the plaintiffs' cause of action for intentional infliction of emotional distress.

*Negligent Infliction of Emotional Distress (Third Count)*

In count three of the complaint, the plaintiffs assert a cause of action for negligent infliction for emotional distress. They argue that the defendants breached their duty to act reasonably and exercise due care in carrying out their employment relationship with Alan Rosenberg. Again, at oral argument the parties agreed that the conduct upon which the plaintiffs rely for this cause of action is the defendants' conduct at the time of Alan Rosenberg's termination. [FN7] Specifically, the plaintiffs allege that at the executive session held to discuss Alan Rosenberg's status, the defendants did not allow him to speak or to respond to the allegations made about his conduct, he was cut off and was not permitted to face other employees who had a problem with his conduct. (Deposition, pp. 39, 44-45, 59-61.) In addition, they cite to Alan Rosenberg's contention that, on another occasion, Rice told him that he knew that Roccapriore did not like Alan Rosenberg and "indicated there would be a problem when she started for the Housing Authority as the chairperson." (Deposition, p. 60.) The defendants contend that they are entitled to summary judgement on this cause of action as a matter of law because the conduct the plaintiffs rely on is not sufficiently unreasonable. The plaintiffs respond that the defendants' conduct was sufficient to sustain this cause of action.

FN7. In the complaint, the plaintiffs also allege that this cause of action is supported by conduct engaged in by the defendants during the course of Alan Rosenberg's employment. (Revised Complaint, §§ 19-27.) Following oral argument, the court expressed concern on whether the parties' agreement to limit their allegation to the conduct that occurred during the termination process was appropriate given the 1993 amendments to the Workers' Compensation Act. As noted in a recent decision, "[p]rior to July 1, 1993, an employee could not bring a cause of action for negligent infliction of emotional distress against an employer except for distress caused during the termination process [because] 'on-the-job sufferings' were compensable under the Connecticut Workers' Compensation Act." *Karanda v. Pratt & Whitney Aircraft,* Superior Court, judicial district of Hartford, Docket No. 582025 (May 10, 1999) (Hale, J.) (24 CONN.L.RPTR. 521, 524) "With the passage of [Public] [Act] 93-228,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 1034611 (Conn.Super.))

Page 9

Connecticut excluded mental and emotional impairment from the definition of 'personal injury' in the Workers' Compensation Act ... This change has led some courts to conclude that ... the Workers' Compensation Act does not bar negligent infliction of emotional distress claims ... incurred after July 1, 1993." *Id.* However in *Parsons v. United Technologies Corp.*, 243 Conn. 66, 700 A.2d 655 (1997), which was decided after the enactment of Public Act 93-228, and which involved an allegation of wrongful termination, the Supreme Court noted that "negligent infliction of emotional distress arises only where it is based upon unreasonable conduct of the defendant in the termination process." *Id.*, 88, 700 A.2d 655. Therefore, the agreement to limit this cause of action to conduct which occurred at the time of termination is appropriate in circumstances, such as those presented in this case, which are based on termination of employment.

A plaintiff asserting a cause of action for negligent infliction of emotional distress "has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm ..." (Citations omitted; internal quotation marks omitted.) *Parsons v. United Technologies Corp.*, 243 Conn. 66, 88, 700 A.2d 655 (1997). In cases involving termination of employment, "negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process ... The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior ..." (Citations omitted; internal quotation marks omitted.) *Id.*, 88-89, 700 A.2d 655. The plaintiff must include "additional allegations [beyond termination of employment] which occurred during the termination process or at the time of discharge." *Centi v. Lexington Health Care Center, supra,* Superior Court, Docket No. 383535.

*10 A review of recent decisions on this cause of action indicates that courts will generally find that conduct similar to the conduct on which the plaintiffs rely is not sufficiently "unreasonable" to support this cause of action. For example, in *Pavliscak v. Bridgeport Hospital,* 48 Conn.App. 580, 598, 711 A.2d 747, cert. denied, 245 Conn. 911, 718 A.2d 17 (1998), the court found that the evidence "showed only that the plaintiff was terminated from employment without advance warning ... There was no evidence that the defendant humiliated the plaintiff publicly. She was told in a private meeting with her supervisors that she was being terminated effective immediately and that she must take her personal items and leave the ... premises." *Id.*, 598, 711 A.2d 747. The court concluded that, "[w]hile there was undoubtedly some indignity involved with being involuntarily terminated, we cannot say that this rises to the level of unreasonable conduct that would justify liability based on negligent infliction of emotional distress ... [and] that there was insufficient evidence in the record to support a finding of negligent infliction of emotional distress as a matter of law ..." *Id.* In *Chieffalo v. Norden Systems, Inc.,* 49 Conn.App. 474, 714 A. -2d 1261 (1998), the evidence indicated that the plaintiff's supervisor fired the plaintiff in front of another worker and had him escorted out of the office in front of approximately twenty other employees. See *id.,* 476, 714 A.2d 1261. The court agreed with the trial court's determination that the record contained "no evidence to support a finding by the jury of unreasonableness in the manner that the plaintiff was terminated." *Id.,* 480, 714 A.2d 1261. In contrast, in cases in which courts found a plaintiff's allegations were sufficient to sustain this cause of action, the plaintiffs alleged conduct by the defendants which went beyond what the court could consider as reasonable. For example in *Centi v. Lexington Health Care Center, supra,* Superior Court, Docket No. 383535, the court determined that the following allegations were adequate to support negligent infliction of emotional distress: the defendant told the plaintiff that he intended to set unreasonable goals that she would not be able to meet; told others, before informing her, that her performance was inadequate and that she would be fired; and delivered her termination notice to her home on a Sunday. The court reached the same conclusion in *Nguyen v. Newberry Industries, Inc.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 571319 (October

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 1034611 (Conn.Super.))

Page 10

31, 1997) (Hale, J.), based on allegations that the defendant told the plaintiff to go home "with no explanation," coerced the plaintiff to conceal the fact that an injury was work related and not to file a claim for workers' compensation, fired him for incurring a work related injury and contemplating filing a claim for workers' compensation, and misled him as to the content of termination documents and subsequently amended documents the plaintiff had signed without his knowledge or consent.

*11 In this case, although the defendants' conduct at the executive session may have subjected Alan Rosenberg to indignity, the evidence indicates that the meeting was private, he was permitted to address at least some of the matters raised during the meeting, and the defendants did not subject him to public humiliation. Such conduct does not rise to the level of unreasonableness necessary to sustain this cause of action. Therefore, the defendants are entitled to summary judgment of the plaintiffs' cause of action for negligent infliction of emotional distress.

*Defamation (Fourth Count)*

In the fourth count of the complaint, the plaintiffs allege that the defendants made false and malicious allegations against Alan Rosenberg and, as a consequence, he was brought into contempt and ridicule and his reputation was damaged. At oral argument and in Alan Rosenberg's deposition, the plaintiffs stated that their cause of action for defamation is based on the following; (1) the defendants' statement on his termination pink slip; (2) Rice's statement to Alan Rosenberg repeating a statement Lucille Malavenda made to him; (3) the defendants' statements at the executive session about Alan Rosenberg's job performance; and (4) Malavenda's statements regarding Alan Rosenberg. The defendants claim that they are entitled to summary judgment on this cause of action because the statements upon which the plaintiffs rely are absolutely or conditionally privileged, constitute inadmissible hearsay, or are statements of opinion. The plaintiffs do not offer a specific response to the defendants' arguments but generally claim that they stated a cause of action for defamation. [FN8]

FN8. The plaintiffs did not specify the statements they were relying on for their cause of action for defamation in their complaint, but did specify the statements at oral argument. In their motion for summary judgment, the defendants categorize the statements and raise separate arguments as to each category. Therefore, before considering the defendants' arguments, the court must determine whether it can grant summary judgment to the defendants as to some but not all of the statements upon which the plaintiffs rely. Although Practice Book § 17-51 authorizes the "severance of claims and partial summary judgments"; *DeLaurentis v. New Haven, supra,* 220 Conn. 255 n. 15, the judges of the Superior Court are split on "the issue of whether summary judgment may be granted as to one or more, but not all, of the claims made in a single count." *Jewett v. General Dynamics Corp.,* Superior Court, judicial district of New London at New London, Docket No. 530943 (May 1, 1997) (Booth, J.).
In the following cases, courts entered summary judgment on a paragraph in a complaint: *Ambrosino v. Superior Plating Co.,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 309952 (September 16, 1996) (Maiocco, J.); *Niper v. Johnson,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 256309 (February 28, 1992) (Lewis, J.) (6 CONN.L.RPTR. 112); and *Cocca v. Pocesta,* Superior Court, judicial district of Waterbury, Docket No. 86470 (July 13, 1990) (Barnett, J.) (2 CONN.L.RPTR. 69). On the other hand, in the following cases, the courts determined that the rules of practice do not permit a defendant to obtain a partial summary judgment on some, but not all, of the allegations in a single count of a complaint: *Jewett v. General Dynamics Corp., supra,* Superior Court, Docket No. 530943; *Tracy v. Charisma Aviation, Ltd.* Superior Court, judicial district of New Haven at New Haven, Docket No. 270725 (January 20, 1993) (Hadden, J.) (8 CONN.L.RPTR. 282); *Dunham v. Cigna Ins. Co.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 334030

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

(April 5, 1991) (Hennessey, J.) (3 CONN.L.R PTR. 819, 6 C.S.C.R. 437); *Schofield v. Bic Corp.*, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 21244 (January 31, 1991) (Fuller, J.) (3 CONN.L.RPTR. 229). In the present case, the Superior Court cases that do allow the granting of summary judgment to eliminate some but not all of the allegations in a count of a complaint are more persuasive. Therefore, the court should address each of the arguments that the defendants raise on the plaintiffs' cause of action for defamation.

To prevail on a cause of action for defamation, the plaintiff must prove "that the defendants published false statements that harmed the [p]laintiff], and that the defendants were not privileged to do so." (Internal quotation marks omitted.) *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., supra,* 234 Conn. 27.

1. Pink Slip

The plaintiffs claim that the defendants defamed Alan Rosenberg by stating on his termination pink slip that he was not capable of performing his job. The defendants argue that employers' statements contained in a "pink slip" provided to the state unemployment office are absolutely privileged. This argument is expressly supported by the holding of the Supreme Court in *Petyan v. Ellis,* 200 Conn. 243, 247-48, 510 A.2d 1337 (1986). In *Petyan,* the court agreed that "an employer who discharges an employee has an absolute privilege when supplying the information necessary for the 'unemployment notice' required by regulation [to be given to the employee immediately upon termination of employment]." *Id.,* 247 and n. 1, 510 A.2d 1337. "The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." *Id.,* 246, 510 A.2d 1337. Therefore, the defendants' statements on Alan Rosenberg's pink slip cannot support a cause of action for defamation.

2. Rice's Statement as to Malavenda's Statement

*12 The plaintiffs claim that Rice told Alan Rosenberg that Malavenda had informed Rice that Mike, another employee, said that Alan Rosenberg was stealing materials to build his house; (Deposition, p. 87); and that Rice "received a call from [defendant] Malavenda, that she had concerns because she was told by Mike Golebewski about what was going on." (Deposition, p. 91.) The defendants argue that this statement is inadmissible hearsay and is not defamatory.

"Hearsay is an out-of-court statement offered into evidence to establish the truth of the matters contained therein ..." (Citations omitted, internal quotation marks omitted.) *Pagano v. Ippoliti,* 245 Conn. 640, 650, 716 A.2d 848 (1998). Hearsay statements are inadmissible absent a recognized exception. *State v. Oquendo,* 223 Conn. 635, 664, 613 A.2d 1300 (1992), and cannot be "relied upon to support [a] motion for summary judgment." *Fogarty v. Rashaw,* 193 Conn. 442, 444, 476 A.2d 582 (1984). The statement in question here is hearsay and, absent valid claim by the plaintiffs that it qualifies for an exception, it is inadmissible and thus cannot support the plaintiffs' cause of action for defamation. [FN9]

FN9. Because Mike Golebewski, the individual whose statement was repeated by Malavenda, is Alan Rosenberg's fellow employee and is not a party to this action, Rice and Malavenda's statements regarding what he said do not constitute party admissions.

3. Defendants' Statements at the Executive Session

The plaintiffs contend that the following statements made by the defendants at the executive session are defamatory: (1) "They indicated ... that I failed to protect the building's roof cover when I was the clerk of the works, years back ... A contractor was doing roof replacements and he covered one of the buildings for the weekend, and at that particular weekend there were 55 mile per hour winds ... and there was water damage in one of the tenant's apartments. [Roccapriore] indicated to me that it was my fault" (Deposition, pp. 85-86); [FN10] (2) "Also she indicated that it was my fault that floors that ... I allowed the contractor to install flooring in units on top of other floors ... She indicated to me that I didn't do my job" (Deposition, p. 86); [FN11] (3) Malavenda "indicated to me that she interviewed nine men that worked for me and that

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 1034611 (Conn.Super.))

Page 12

they don't like me. And Hector Cardona indicated that he interviewed three men that worked for me ... and some of the men were not happy working under me." (Deposition, p. 87.) [FN12]

> FN10. According to the Transcript, Roccapriore stated: "When they were putting new roofs at Johnson Farms, the cover of one or the roofs blew off in a big storm. If you were doing your job, that would have never happened." (Transcript, p. 2.)

> FN11. According to the Transcript, Roccapriore stated: "The new floors at Yale acres, you allowed the contractor to place a few layers of floor tile over one another. People were tripping in their own apartments." (Transcript, p. 2.)

> FN12. According to the Transcript, Malavenda stated, "The men are complaining ... the men have a real problem working out there. They don't even want to come to work. They keep taking time off and hate to come to work ... You treat the men very badly ... You made it so bad to work for the MHA, that even a guy like Randy Moro couldn't take it and had to leave ... You made him leave ... You made it so bad for him that he didn't even want to come back ... I talked to nine people about you." (Transcript, p. 3.)

The defendants argue that the statements the defendants made at the executive session cannot support a cause of action for defamation because they are statements of opinion, not statements of fact. Alternatively the defendants argue that, even if one or more of these statements are defamatory, the defendants are still entitled to summary judgment pursuant to the doctrine of qualified privilege.

To support a cause of action for defamation, "the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." *Daley v. Aetna Life & Casualty Co.*, 249 Conn. 766, 795, 734 A.2d 112 (1999). "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known ... In a libel action, such statements of fact usually concern a person's conduct or character ... An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact ..." (Citations omitted; emphasis in original.) *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 111, 438 A.2d 1317 (1982). Although "this distinction [between fact and opinion] may be somewhat nebulous ... [t]he important point is whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." (Citations omitted, internal quotation marks omitted.) *Id.*, 111-12, 448 A.2d 1317.

*13 In *Daley v. Aetna Life & Casualty Co., supra*, 249 Conn. 796, the Supreme Court found that the trial court did not err in stating that in order to be actionable, "[a] statement must be an expression of fact such as he is a thief ... [A] statement can not be an opinion such as I think he is a thief or a question such as is he a thief." (Internal quotation marks omitted.) The statements at issue here can be characterized as statements of fact and therefore can support a cause of action for defamation. At least, the statements suggest that they are based on fact, and therefore raise a genuine issue of material fact. As noted by the Supreme Court, "[w]here the court cannot reasonably characterize the allegedly libelous words as either fact or opinion because, for example, innuendo is present, this becomes an issue of fact for the jury, which would preclude a directed verdict." *Goodrich v. Waterbury Republican-American, Inc., supra*, 188 Conn. 112 n. 5.

In the alternative, the defendants argue that, pursuant to their affirmative defense of qualified immunity, these statements cannot support a cause of action for defamation. "The defendants must sufficiently prove five prerequisites in order to establish the defense of ... conditional [privilege] claimed by them. The essential elements are (1) an interest to be upheld, (2) a statement limited in its scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only." *Miles v. Perry*, 11 Conn.App. 584, 595, 529 A.2d 199 (1987). As explained by the Supreme Court, "[t]here are two

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 1034611 (Conn.Super.))

Page 13

facets to the defense of privilege. The occasion must be one of privilege, and the privilege must not be abused. Whether the occasion is one of privilege is a question of law. [W]hether the privilege was abused ... depends upon whether there was malice in fact ... in uttering and broadcasting the alleged defamatory matter ..." (Citations omitted, internal quotation marks omitted.) *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., supra,* 234 Conn. 28.

As to the first facet, "[a] qualified ... privilege arises out of an 'occasion,' such as, when one acts in the bona fide discharge of a public or private duty." *Miles v. Perry, supra,* 11 Conn.App. 594 n. 8. "[C]ommunications between managers regarding the review of an employee's job performance ... are protected by a qualified privilege. Such communications ... are necessary to effectuate the interests of the employer in efficiently managing its business." *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., supra,* 234 Conn. 29. The evidence presented by the defendants, and not refuted by the plaintiffs, indicates that the statements at issue here were made by Alan Rosenberg's supervisors in a closed meeting and concerned his job performance. (Affidavits of Rice, Malavenda, and Boltin.) Therefore, the statements were made in circumstances that satisfy the "occasion" facet.

*14 However, the statements must still satisfy the "abuse" facet because a qualified privilege "does not protect a defendant who makes statements that are both defamatory and malicious." *Gaudio v. Griffin Health Services Corp., supra,* 249 Conn. 545. A privilege is abused if a defendant "made the statement about the plaintiff with actual malice--that is, with knowledge of its falsity or reckless disregard as to its truth." *Torosyan v. Boehringer Ingeheim Pharmaceuticals Inc., supra,* 234 Conn. 29. Thus, "[e]ven when a legitimate interest is at stake, a claim of conditional privilege is defeated if the defendant acts with malice in making the defamatory communication at issue. For purposes of our law of defamation, malice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive." *Bleich v. Ortiz,* 196 Conn. 498, 504, 493 A.2d 236 (1985). The issue of "whether the privilege is ... defeated through its abuse is a question of fact to be decided by the jury." *Id.,* 501, 493 A.2d 236; see also *Miles v. Perry, supra,* 11 Conn.App. 594 n. 8; *Smith v. Shoreline Care, Ltd. Partners,* Superior Court, judicial district of New Haven at New Haven, Docket No. 360206 (May 17, 1996) (Licari, J.).

In his deposition, Alan Rosenberg stated that his allegation of malice is based on the falsity of the statements the defendants made about his job performance which led to his termination, the defendants' refusal to "give [Alan Rosenberg] an opportunity to discuss anything" and the defendants' refusal to allow him to face the other employees who had a problem working with him. (Deposition, pp. 98-90.) The Supreme Court has found that a jury could reasonably conclude that a defendant acted with "improper motive" in circumstances where a "defendant's agents published a false statement in order to effectuate the plaintiff's discharge, even though they doubted the statement's veracity." *Gaudio v. Griffin Health Services, supra,* 249 Conn. 545; *Torosyan v. Boehringer Ingelheim Pharmaceuticals Inc.,* 234 Conn. 30. Alan Rosenberg's deposition testimony is sufficient to raise a genuine issue of material fact on the issues of whether the defendants made the statements with malice. Accordingly, the defendants are not entitled to summary judgment on the plaintiffs' cause of action for defamation as it relates to the statements the defendants made at the executive session.

4. Defendant Malavenda's Statements

The plaintiff alleges that Malavenda accused Alan Rosenberg of "spending his day at dry cleaning business that he owned instead of doing his job at the Meriden Housing Authority ... told people that he took kickbacks from contractors so that he would look the other way [and] ... told people that he was using Housing Authority materials and supplies for a house he was building in Woodbridge." (Revised Complaint §§ 24 and 25.)

*15 The defendants do not address these statements in their memorandum in support of their motion for summary judgment, nor have they submitted any evidence regarding these statements. Because the defendants have not met their burden of showing that there are no genuine issues of material facts regarding these statements, the defendants are not entitled to summary judgment of the plaintiffs' cause of action for defamation as to these statements.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 1034611 (Conn.Super.))

Page 14

*Discriminatory Discharge: Fifth Count*

In the fifth count of the complaint, the plaintiffs allege that the defendants terminated Alan Rosenberg in retaliation for his assertion of a claim for workers' compensation benefits in violation of his rights under General Statutes § 31-290a. The defendants contend that they are entitled to summary judgment on this cause of action because Alan Rosenberg did not exercise his rights under the Workers' Compensation Act prior to his termination and because, when the decision to terminate Alan Rosenberg was made, the individuals who made the decision were unaware that he had been injured or that he intended to file a claim for workers' compensation benefits. The plaintiffs do not offer a specific response, but claim that they adequately stated a claim for discriminatory discharge.

According to the complaint, this cause of action is based on the plaintiffs' allegation that Alan Rosenberg suffered a work related injury on May 8, 1995, filed a report of injury and a claim for workers' compensation benefits on May 9, 1995, and was terminated on May 11, 1995. In his deposition, Alan Rosenberg stated that he was injured on May 9, 1995, and on that same day filled out a report of injury and told Rice that he had been injured. Alan Rosenberg also stated that he could not recall when he submitted the report of injury to the authority, that Rice was the only person he talked to about his injury, and that, as of the date of his termination, he had not filed any documents with the workers' compensation commission. (Deposition, pp. 103, 105, 107.)

General Statutes § 31-290a(a) provides: "No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter." According to the Connecticut Supreme Court, "[i]n setting forth the burden of proof requirements in a § 31-290a action, we look to the federal law for guidance." *Ford v. Blue Cross & Blue Shield of Connecticut Inc.,* 216 Conn. 40, 52, 578 A.2d 1054 (1990). "In *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth the basic allocation of burdens and order of presentation of proof in cases involving claims of employment discrimination. The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination ... In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination ... If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, non-discriminatory reason for its actions ... If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity ... The Plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence ..." (Citations omitted; internal quotation marks omitted.) *Id.,* 53-54. "[T]he plaintiff, to make out a prima facie case of retaliatory discharge, must establish (a) [protected activity, i.e.,] that he filed a claim for workers' compensation benefits or otherwise exercised his rights under chapter 568 of the Connecticut General Statutes [Workers' Compensation Act]; (b) an employment action disadvantaging the plaintiff; and (c) a causal connection between the protected activity and the adverse employment action." *Gordon v. Yale-New Haven Hospital,* Superior Court, judicial district of New Haven at New Haven, Docket No. 365472 (May 22, 1998) (Levin, J.); see also *Erisoty v. Merrow Machine Co.,* 34 Conn.App. 709, 712 n. 6, 708 A.2d 643, cert. denied, 231 Conn. 908, 648 A.2d 151 (1994); *Moore v. Consumer Credit Counseling Service of Connecticut, Inc.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 522196 (December 24, 1996) (Aurigemma, J.). [FN13] In this case, the defendants contend that the plaintiffs cannot establish the first and third elements of a prima facie case. [FN14]

FN13. See also *Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 130 (2d Cir.1996), cert. denied, 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997) (elements of prima facie case of retaliation under Title VII); *LaFond v. General Physics Services*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 1034611 (Conn.Super.))

Page 15

*Corp.*, 50 F.3d 165, 173 (2d Cir.1995) (elements of prima facie case of retaliation under Connecticut whistle blower statute); and *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir.1990) (elements of prima facie case of retaliation under Age Discrimination in Employment Act).

FN14. Because the defendants limited their argument to this issue, the court is not required to extend its inquiry beyond the question of whether a genuine issue of material fact exists as to the plaintiffs' prima facie case.

*16 The defendants argue that Alan Rosenberg's failure to file a claim with the workers' compensation commission prior to his termination precludes him from asserting a cause of action for discriminatory discharge. Although no reported decisions by the Appellate Court address this issue, the judges of the Superior Court, in construing the portion of § 31-290a that protects employees who have "otherwise exercised" the rights afforded to them under the statute, have explained that "the statute's plain language demonstrates that the actual filing of a claim is not a prerequisite to a recovery." *Nguyen v. Newberry Industries, Inc.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 571319 (October 31, 1997) (Hale, J.); *Boucher v. Hilton Mechanical Contractors., Inc.*, Superior court, judicial district of New Haven at New Haven, Docket No. 300154 (February 3, 1995) (DeMayo, J.); *Bundock v. Waste Management of Connecticut, Inc.,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 123903 (January 26, 1993) (Lewis, J.) (8 CONN.L.RPTR. 263). As explained by the court in *Bundock,* "[i]f the actual filing of a claim was a prerequisite to a recovery under the statute, there would be no need to refer to someone who 'otherwise exercised' his rights." *Bundock v. Waste Management of Connecticut, Inc., supra,* Superior Court, Docket No. 123903, 8 CONN.L.RPTR. 263. In the above- referenced cases, each court determined that the plaintiffs allegations were sufficient to sustain a cause of action under § 31-290a where the plaintiff alleged that the defendants were aware that the plaintiff had suffered a work related injury or intended to file a claim for workers' compensation benefits.

Although Alan Rosenberg stated that he did not remember the date he submitted his first report of injury to the authority, he did state that on May 9, 1995, he told Rice that he had sustained a work related injury and that Rice knew it was "standard procedure" to file a first report of injury before filing a workers' compensation claim. (Deposition, pp. 98, 107.) Therefore, the plaintiffs have raised a genuine issue of material fact as to whether Alan Rosenberg exercised his rights under the workers' compensation statute.

To establish the requisite casual connection between the protected activity and the adverse employment action, "[t]he plaintiffs must present some evidence from which a trier of fact could infer that the employer discharged or discriminated against the employees because they had exercised their rights under the Workers' Compensation Act ... Without some proof of an improper motive, [a plaintiff's] case must fail ..."(Citations omitted; internal quotation marks omitted.) *Erisoty v. Merrow Machine Co., supra,* 34 Conn.App. 711. The general rule under Connecticut law is that "[s]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions ..." (Citations omitted; internal quotation marks omitted.) *Suarez v. Dickmont Plastics Corp.,* 229 Conn. 99, 111, 639 A.2d 507 (1994). Nevertheless, "even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." *Wadia Enterprises, Inc. v. Hirschfeld,* 224 Conn. 240, 250, 618 A.2d 506 (1992).

*17 In the present case, the plaintiffs imply that the defendants' termination of Alan Rosenberg so soon after his injury and his report thereof is sufficient to raise a genuine issue of fact as to the defendants' motivation. The defendants argue that the individuals who made the decision to terminate Alan Rosenberg's employment were not aware that he had been injured. The defendants submitted affidavits of three of the six individuals who were involved in the termination decision in which these individuals state that at the time the decision was made, they were not aware that Alan Rosenberg had injured himself or that he intended to file a claim for benefits and that this information did not play any role in their decision. (Affidavits of Rice,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 1034611 (Conn.Super.))

Page 16

Boltin, and Malavenda.)

However, Alan Rosenberg's deposition testimony directly contradicts Rice's statements regarding his knowledge of Alan Rosenberg's injury. (Deposition, p. 98.) Moreover, judges of the Superior Court have explained that "[a] causal connection may be established indirectly by showing that the protected activity was followed closely by discriminatory treatment." (Internal quotation marks omitted.) *Gordon v. Yale-New Haven Hospital, supra,* Superior Court, Docket No. 365472; *Moore v. Consumer Credit Counseling Service of Connecticut, Inc., supra,* Superior Court, Docket No. 522196. The plaintiffs' undisputed contention that Alan Rosenberg filed his first report of injury with the authority prior to his termination; (Deposition, pp. 98, 103); raises a question of material fact. Further, a question of material fact remains as to the motive of the three other individuals who participated in the decision to terminate Alan Rosenberg. When a defendant's motive and intent remain as a question of material fact, the defendant is not entitled to summary judgment on the plaintiff's cause of action for discriminatory discharge. *Lindblom v. Shawmut Bank, N.A.* Superior Court, judicial district of Danbury, Docket No. 324852 (September 29, 1998) (Radcliffe, J.); *Schrimp v. Bozzuto's, Inc.,* Superior Court, judicial district of New Haven at New Haven, Docket No. 392667 (September 11, 1998) (Zoarski, J.); *Cowan v. Warner-Lambert Co.,* Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 32564 (November 5, 1994) (Cocco, J.). Therefore, the defendants are not entitled to summary judgment on the plaintiffs' cause of action for discriminatory discharge.

*Loss of Consortium (Sixth Count)*

In the sixth count of the complaint, Lynne Rosenberg alleges loss of consortium based on Alan Rosenberg's causes of action for breach of contract, promissory estoppel, and intentional infliction of emotional distress. At oral argument, the plaintiffs argued that this cause of action is based on all other counts of the complaint. The defendants argue that if they are entitled to summary judgment on the plaintiffs' other causes of action, they are also entitled to summary judgment on this cause of action because, as a derivative claim, it cannot stand on its own. At oral argument, the defendants also argued that a cause of action for loss of consortium cannot, as a matter of law, attach to a cause of action for breach of contract. They contend, therefore, that if the plaintiffs' cause of action for breach of contract is the only other claim to survive summary judgment, the defendants are entitled to summary judgment on the cause of action for loss of consortium.

*18 As to the defendants' first contention, because a cause of action for loss of consortium "is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits." *Hopson v. St. Mary's Hospital,* 176 Conn. 485, 494, 408 A.2d 260 (1979). Due to the derivative nature of this cause of action, the Appellate Court has upheld trial court decisions directing a verdict on a loss of consortium claim following dismissal of the injured spouse's claims; *Parker v. Shaker Real Estate Inc.,* 47 Conn.App. 489, 496, 705 A.2d 210 (1998); and striking a loss of consortium claim where the injured spouse's claims were stricken; *Greene v. Metals Selling Corp.,* 3 Conn.App. 40, 47, 484 A.2d 478 (1984). Therefore, if the defendants are entitled to summary judgment on all of the plaintiffs' causes of action, they are also entitled to summary judgment on the plaintiffs' cause of action for loss of consortium.

If the plaintiffs' cause of action for breach of contract is the only other cause of action to survive, the court must consider the defendants' contention that this cause of action cannot support a loss of consortium claim. In *Hopson v. St. Mary's Hospital, supra,* 176 Conn. 496, the court held that "either spouse has a claim for loss of consortium shown to arise from a personal injury to the other spouse caused by the negligence of a third person ..." A review of published decisions suggests that courts have not expressly held that this cause of action cannot be based on a cause of action for breach of contract. However, the Appellate Court and at least one judge of the Superior Court have determined that, under *Hopson,* a spouse cannot maintain an action for loss of consortium if the injured spouse's damages are pecuniary only, even if the injured spouse's cause of action is based on negligence. See *Kuhn v. Bridgeport Ambulance Service,* 11 Conn.App. 179, 183, 526 A.2d 11 (1987); *Dionisio v. Buzi,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 260602 (July 2, 1992) (Lewis, J.) (7 CONN.L.RPTR. 43, 7 CSCR 841,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 1034611 (Conn.Super.))

Page 17

842). These decisions, as well as the language used by the court in *Hopson,* suggest that a cause of action for loss of consortium must be based on some form of illness or bodily harm to the injured spouse caused by the defendant's misconduct. [FN15] However, this court need not determine whether if the plaintiffs' cause of action for breach of contract were the only other claim that survived summary judgment, the defendants would be entitled to summary judgment on Lynne Rosenberg's cause of action for loss of consortium. The cause of action for defamation, although in reduced form, with its unplumbed claim for damages, has survived. It is sufficiently tortious in nature and its claim for damages is broad enough to defeat summary judgment.

> FN15. See also W. Prosser & W. Keeton, Torts (5th Ed.1984) § 125, p. 937: "The right of the spouse ... to recover [for loss of consortium] will of course depend upon the existence of tortious conduct on the part of the defendant. Normally this means that there must be a tort for which an action might be maintained by the injured spouse ..."

*19 The defendants are entitled to summary judgment on the plaintiff's causes of action for promissory estoppel, intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation, but only as to the statements the defendants made on Alan Rosenberg's pink slip and Rice's statement as to what another employee told Malavenda. To that extent this motion is granted. The defendants are not entitled to summary judgment on the plaintiffs' causes of action for breach of contract, discriminatory discharge, loss of consortium, and defamation as to defendants' statements at the executive session and Malavenda's statements. To that extent this motion is denied.

1999 WL 1034611 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1998 WL 405268 (Conn.Super.))

Page 1

C
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Judith HENDERSON
v.
Michael J. HOBAN et al.

No. 391352.

July 7, 1998.

MEMORANDUM OF DECISION

LEVIN, Judge.

*1 Two issues are presented by the defendants' motions to dismiss or for summary judgment. First, based on the evidence before the court, are the plaintiff's claims against the defendants barred the doctrine of sovereign immunity? Second, if the defendants are not protected by sovereign immunity, are they entitled to summary judgment on the plaintiff's claims of intentional infliction of emotional distress?

The court holds that the defendant, Michael Hoban, is entitled to sovereign immunity because his actions were not malicious, reckless or willful. The defendant, Patricia Miele, is entitled to summary judgment because her alleged actions did not rise to the level of extreme or outrageous behavior necessary to support a claim for intentional infliction of emotional distress.

The plaintiff, Judith Henderson, has brought this action against the defendants, Hoban and Miele, alleging that they intentionally inflicted emotional distress on her. The defendants each filed a motion to dismiss pursuant to Practice Book § 143, now Practice Book (Rev.1998) § 10-31. In their motions to dismiss, the defendants argued that General Statutes § 4-165 conferred sovereign immunity upon them and, therefore, the court was without subject matter jurisdiction. The court (McMahon, J.) denied the defendants' motions, without prejudice, and indicated to the parties that the motions could be renewed when discovery was completed. The defendants subsequently renewed their motions to dismiss and also filed the motions for summary judgment now before the court.

The relevant facts are as follows. The plaintiff was employed as an assistant clerk in the Bail Commission office located in Waterbury. The defendant Miele also was an assistant clerk in that office. The defendant Hoban was the immediate supervisor of both women. The plaintiff has sued both defendants in their individual capacities only.

The plaintiff claims she suffers from a traumatic brain injury (TBI) that she suffered in 1986, prior to her employment with the state of Connecticut. She also sustained a second TBI in 1990, when she fell at her work place in the Bail Commission office. As a result of these injuries, the plaintiff alleges that she suffers from high distractibility and a decrease in her short term memory. The plaintiff further alleges that both defendants were aware of her condition. In her complaint, the plaintiff alleges that the defendants wantonly, willfully and maliciously undertook a continual course of harassment that was both extreme and outrageous. Consequently, she suffered severe emotional distress.

The defendants have renewed their motions to dismiss claiming that the doctrine of sovereign immunity deprives the court of subject matter jurisdiction. Those motions must be addressed before any other inquiry may proceed. [FN1] "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. *Amore v. Frankel*, 223 Conn. 358, 364, 636 A.2d 786 (1984)." *Federal Deposit Ins. Corp. v. Peabody, N.E., Inc.* 239 Conn. 93, 99, 680 A.2d 1321 (1996).

> FN1. "A motion to dismiss ... properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) *Gurliacci v. Mayer*, 218 Conn. 531, 544, 590 A.2d 914 (1991). "Jurisdiction of the subject matter is the power [of the court] to hear and

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1998 WL 405268 (Conn.Super.))

Page 2

determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) *Konover v. Town of West Hartford,* 242 Conn. 727, 740, 699 A.2d 158 (1997). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented ... and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Community Collaboration of Bridgeport, Inc. v. Ganim,* 241 Conn. 546, 552, 698 A.2d 245 (1997).

*2 The plaintiff has sued the defendants in their individual capacities. Such a designation, however, is not determinative of the defendants' entitlement to claim sovereign immunity. The plaintiff also has pleaded that "the defendants ... were duly appointed officials of the Connecticut Bail Commission ..." The Bail Commission is a state agency. See General Statutes § 54-63b. [FN2] In *Sentner v. Board of Trustees,* 184 Conn. 339, 342, 439 A.2d 1033 (1981), the Supreme Court stated: "We have long recognized the common-law principle that the state cannot be sued without its consent ... we have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state ... Therefore, we have dealt with such suits as if they were solely against the state and have referred to the state as the defendant." *Id.* State officials sued in their individual capacities are nonetheless protected by sovereign immunity unless they have "acted pursuant to an unconstitutional enactment or in excess of statutory authority ..." *Fetterman v. University of Connecticut,* 192 Conn. 539, 552-53, 473 A.2d 1176 (1984). A claim that the defendants intentionally inflicted emotional distress on the plaintiff, a co-worker, is a claim that they acted in excess of their statutory authority.

FN2. General Statutes "Sec. 54-63b. Bail Commission. Duties. Chief Bail Commissioner. (a) There shall be, within the Judicial Department, the office of the Bail Commission, the duties of which shall be: (1) To promptly interview, prior to arraignment, any person referred by the police pursuant to section 54-63c or by a judge. Such interview shall include, but not be limited to, information concerning the accused person, his or her family, community ties, prior criminal record and physical and mental condition; (2) to seek independent verification of information obtained during the interview, if practicable; (3) to determine, as provided in section 54-63d, or to make recommendations on request of any judge, concerning the terms and conditions of the release of arrested persons from custody pending final disposition of their cases; (4) to prepare a written report on all persons interviewed and, upon request and pursuant to the procedures established under subsection (d) of section 54-63d, provide copies of the report to the court, defense counsel and state's attorney. Such report shall contain the information obtained during the interview and verification process, the person's prior criminal record, where possible, and the determination or recommendation of the commissioner pursuant to section 54-63d concerning the terms and conditions of the release of the persons so interviewed; (5) to give prior notice of each required court appearance to each person released following an interview by the Bail Commission; (6) to supervise pursuant to the direction of the court those persons released on nonfinancial conditions; (7) to inform the court and the state's attorney of any failure to comply with terms and conditions of release, including the arrest of persons released under its supervision; (8) to monitor, evaluate and provide information concerning terms and conditions of release and the release criteria established under subdivision (2) of subsection (c) of this section, to prepare periodic reports on its activities, and to provide such other information as is needed to assist in the improvement of the pretrial release process; (9) to perform such other functions as the Chief Court Administrator may, from time to time, assign. "(b) The judges of the Superior Court or an authorized committee thereof shall appoint, for such term and at such compensation as said judges may establish,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1998 WL 405268 (Conn.Super.))

Page 3

a Chief Bail Commissioner and an Assistant Chief Bail Commissioner. "(c) The full-time duties of the Chief Bail Commissioner shall be: (1) To supervise and direct the operation of the office of the Bail Commission; (2) to establish written uniform, weighted release criteria based upon the premise that the least restrictive condition or conditions of release necessary to insure the appearance in court of the defendant is the pretrial release alternative of choice. Such criteria shall be based on, but not be limited to, the following considerations: (A) The nature and circumstances of the offense insofar as they are relevant to the risk of nonappearance, (B) the defendant's record of previous convictions, (C) the defendant's past record of appearance in court after being admitted to bail, (D) the defendant's family ties, (E) the defendant's employment record, (F) the defendant's financial resources, character and mental condition, and (G) the defendant's community ties; (3) to establish data collection procedures which will carry out the responsibilities and duties established under subdivision (8) of subsection (a) of this section; (4) to develop procedures which will insure that Bail Commission staff are available to make release decisions at all times as required by this section; (5) to submit to the Chief Court Administrator or his designee, between May first and June first of each year, a report of the activities of the commission, for the twelve months preceding such May first, which shall include an evaluation of the agency in implementing the purposes of sections 54-63a to 54-63g, inclusive. Such report shall be a public record. "(d) The judges of the Superior Court or an authorized committee thereof shall also appoint such bail commissioners, assistant bail commissioners and other personnel as are necessary. All bail commissioners, assistant bail commissioners and other personnel shall meet qualifications to be set by the judges of the Supreme Court. Bail commissioners, assistant bail commissioners and other personnel appointed prior to July 1, 1981, shall have until January 1, 1986, to meet such qualifications."

"The [defendant Hoban] is a state official whose office was created by the General Assembly. General Statutes [§ 54-63b(a) ]. Like other comparable public officials, he has only such power and authority as are clearly conferred or necessarily implied." *Allyn v. Hull,* 140 Conn. 222, 226, 99 A.2d 128 (1953). This power and authority did not extend to intentionally inflicting emotional distress on a co-worker.

In addition to the foregoing common law rule, state officers and employees enjoy a statutory form of sovereign immunity. General Statutes § 4-165, entitled "Immunity of state officers and employees from personal liability," provides in pertinent part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment." " 'A wilful or malicious injury is one caused by design. Wilfulness and malice alike import intent ... [Its] characteristic element is the design to injure, either actually entertained or to be implied from the conduct and circumstances.' *Sharkey v. Skilton,* 83 Conn. 503, 507, 77 A. 950 (1923)." *Rogers v. Doody,* 119 Conn. 532, 534, 178 A. 51 (1935). Accordingly, a person liable for intentional infliction of emotional distress may not avail herself of the sovereign immunity afforded by General Statutes § 4-165.

*3 The defendants, however, argue that the plaintiff cannot present proof upon which her allegations of willful, reckless and malicious conduct are based, and that, therefore, she is barred by the doctrine sovereign immunity from maintaining these claims directly against the defendants.

"[T]he court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light." (Internal quotation marks omitted.) *Savage v. Aronson,* 214 Conn. 256, 264, 571 A.2d 696 (1990). "The motion to dismiss ... admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone ... Where, however ... the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1998 WL 405268 (Conn.Super.))

Page 4

not conclusively presume the validity of the allegations of the complaint." (Citation omitted; emphasis added; internal quotation marks omitted.) *Barde v. Board of Trustees*, 207 Conn. 59, 62, 539 A.2d 1000 (1988). "The allegations of ... a complaint and the factual underpinnings if placed in issue, must clearly demonstrate" that the state has consented to be sued or an exception to the doctrine of sovereign immunity. *Id.*, 64, 539 A.2d 1000. In support of his motion to dismiss, Hoban has submitted an affidavit, in addition to affidavits of other state employees of the Bail Commission, placing the factual underpinnings of the plaintiff's claims of intentional infliction of emotional distress, and therefore the defendants' immunity, in issue.

As to Hoban, the plaintiff's complaint alleges that Hoban failed to protect her from "the unlawful actions" of Miele, failed to accommodate her disability, discriminated against her because of her sex, disability, and ethnic background and "imposed formal punishment upon [her] by taking sick and vacation time away from her." The plaintiff further alleges that Hoban shouted at the plaintiff, threatened her with disciplinary action, and "unilaterally" changed the plaintiff's work schedule. Finally, the plaintiff alleges that Miele is mentally ill, and that Hoban knew of Miele's mental illness, yet despite this information, Hoban failed to protect the plaintiff from Miele. [FN3]

> FN3. This allegation, as to which there is no support in the record, is at least an improper pleading of evidence and, at worst, a defaming of Miele under the protection of the absolute privilege afforded pleadings such as complaints.

In support of his motion to dismiss, Hoban has filed the affidavits of Moira Butler, the affirmative action coordinator for the Judicial Department; Paul Brown, the Chief Bail Commissioner; and Betsy McSweet, vocational counselor with the State Bureau of Rehabilitation Services. All three affidavits support Hoban's assertion that he conducted himself in a professional and cooperative manner toward Henderson.

Butler states that Hoban attempted to provide Henderson with the accommodations she requested, but that Henderson was often not specific as to what sort of accommodations she needed. Furthermore, Butler states that Hoban rejected some of Henderson's requests for special accommodations because they would have required considerable expenditures of money, involved security risks or because alternate equipment was available.

*4 McSweet's affidavit details her experiences with Hoban and the bail commission office, and the attempts by the defendant to accommodate the plaintiff. McSweet states that Hoban accomplished some her recommendations with respect to accommodating the plaintiff. Nowhere in her affidavit, however, is there a suggestion that Hoban's conduct toward the plaintiff was unprofessional.

Finally, Paul Brown, the Chief Bail Commissioner states that Hoban properly denied Henderson's request for leave time because Henderson had not obtained prior approval for the leave. Brown also states that Hoban was not even present during the June 29, 1994 dispute between Miele and the plaintiff because he was away on vacation.

In response to Hoban's motion to dismiss, the plaintiff has not filed any opposing affidavits. While she has submitted with her brief a copy of an affidavit purportedly filed in United States District Court fourteen months before the commencement of this action, the court cannot consider such a document an affidavit for purposes of this action. *United States v. Husted*, 558 F.Supp. 658, 659 (E.D.Mich.1983). The Supreme Court "has noted that '[t]estimony presented by affidavit is different from testimony orally delivered because the affiant is not subject to cross-examination. But that fact leads to greater, not lesser, strictures imposed on the testimony presented by affidavit.' *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir.1970)." *Rosenblit v. Danaher*, 206 Conn. 125, 136, 537 A.2d 145 (1988).

Moreover, in opposition to Hoban's motion to dismiss, the plaintiff relies on the copy of the affidavit form of complaint she filed two years before the commencement of this action with the Commission on Human Rights and Opportunities. This document is submitted by Hoban in support of his motion to dismiss. The plaintiff's argument is that the complaint filed with the CHRO is evidence of the truth of the allegations contained therein.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1998 WL 405268 (Conn.Super.))

Page 5

First, it is abundantly clear that Hoban has not submitted that complaint as evidence of the truth of the matters contained therein, but as evidence that certain of the claims raised by the plaintiff here have been raised by her previously, in another forum, and dismissed. Second, as observed *supra*, a copy of an affidavit filed in another forum prior to the commencement of this action is not an affidavit in this action.

Therefore, the evidence submitted in support of Hoban's motion to dismiss stands unrefuted. Accordingly, the court finds that the evidence demonstrates that Hoban did not act maliciously, recklessly or willfully with respect to the plaintiff and, therefore, he is entitled to sovereign immunity. Hoban's motion to dismiss is granted.

With respect to Miele, the plaintiff's complaint alleges that on May 19, Miele threatened the plaintiff, and again on June 29, 1994, Miele "rushed the plaintiff, shouting that she was going [to strike her], and [forced] the plaintiff to flee the area in tears." The complaint states that when Miele shouted at the plaintiff on June 29, 1994, she used an obscenity. Further, the plaintiff alleges that on July 1, 1994, Miele "verbally attacked [her] ... threatening and abusing her in a loud voice inviting a physical altercation." The plaintiff's allegations against Miele are refuted only by way of memorandum of law.

*5 The plaintiff's complaint alleges that Miele's actions were wanton, willful, malicious, extreme and outrageous and were carried out with the knowledge that they would or probably would cause the plaintiff to suffer extreme emotional distress. General Statutes § 4-165 does not provide sovereign immunity for state employees whose acts are wanton, malicious or reckless. Thus, sovereign immunity pursuant to General Statutes § 4-165 would not bar the plaintiff's claims. Miele's motion to dismiss is denied.

The denial of Miele's motion to dismiss, however, does not end the inquiry. The court must next address Miele's motion for summary judgment against the plaintiff's claim for intentional infliction of emotional distress.

Preliminarily, the plaintiff argues that whether the defendants acted in an extreme or outrageous manner is a jury question, and the court may not decide the issue as a matter of law. The plaintiff is mistaken. "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury. *Reed v. Signode Corporation*, 652 F.Supp. 129, 137 (D.Conn.1986); 1 Restatement (Second) of Torts § 46 comment (h) (on the issue of extreme and outrageous conduct) ..." *Mellaly v. Eastman Kodak Co.*, 42 Conn.Supp. 17, 18-19, 597 A.2d 846 (1991). [FN4]

> FN4. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." 1 Restatement (Second) Torts 546, comment (h).

A court will grant a motion for summary judgment if the moving party would be entitled to a directed verdict on the same facts. *Gabrielle v. Hospital of St. Raphael*, 33 Conn.App. 378, 382-83, 635 A.2d 1232, cert. denied, 228 Conn. 928, 640 A.2d 115 (1994). "A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion ..." *Ciarelli v. Romeo*, 46 Conn.App. 277, 282, 699 A.2d 217 (1997).

For the plaintiff to maintain an action for intentional infliction of emotional distress against the defendants, "four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe ..." *Delaurentis v. New Haven*, 220 Conn. 225, 266-67, 597 A.2d 807 (1991). Since the defendant focusses exclusively on the second element of the prima facie case, the court

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1998 WL 405268 (Conn.Super.))

Page 6

confines its analysis to the defendant's allegedly extreme and outrageous conduct.

"Liability for intentional infliction of emotional distress requires 'conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.' *Petyan v. Ellis, supra,* [200 Conn.] 254 n. 5 ..." *Delaurentis v. New Haven, supra,* 220 Conn. 267. "[L]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kintner v. Nidec-Torin Corp.,* 652 F.Sup. 112 (D.Conn.1987). "Mere insult, indignities, or annoyances that are not extreme and outrageous will not suffice." *Brown v. Ellis,* 40 Conn.Supp. 165, 167, 484 A.2d 944 (1984).

*6 In considering a properly documented motion for a summary determination, the court may recognize the realities of the case. *DiMauro v. Pavia,* 492 F.Supp. 1051, 1059 (D.Conn.1979) (*Newman, J.* affirmed, 614 F.2d 1286 (2d Cir.1979) (summary judgment). Viewing the record realistically, it appears that none of the parties enjoyed a pleasant work environment. With respect to Miele, however, the episodes related in the plaintiff's complaint neither individually nor collectively rise to the unusual degree necessary to maintain an action for intentional infliction of emotional distress.

The motion to dismiss of the defendant Hoban is granted. The motion for summary judgment of the defendant Miele is also granted.

1998 WL 405268 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1998 WL 321853 (Conn.Super.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Michael W. RICHTER, M.D.,
v.
DANBURY HOSPITAL, et al.

No. 307869.

June 9, 1998.

MEMORANDUM OF DECISION

MORAGHAN, J.

*1 The plaintiff, Michael Richter, has filed a fifth amended complaint against the Danbury Hospital; Danbury Radiology Associates (DRA); and William Goldstein (Goldstein). The action sounds in nine counts: (1) tortious interference with a contractual relationship (as to Goldstein); (2) intentional infliction of emotional distress (as to Goldstein); (3) assault (as to Goldstein); (4) unfair trade practice (as to Danbury Hospital, and/or the DRA, and/or Goldstein); (5) breach of contract (as to Danbury Hospital); (6) tortious interference with contractual relationship (as to Goldstein); (7) breach of contract (as to Danbury Hospital); (8) breach of covenant of good faith and fair dealing (as to the DRA); and (9) breach of employment agreement (as to DRA).

He alleges the following facts. In February 1968, Danbury Hospital and Goldstein entered into a written agreement whereby the hospital hired Goldstein to provide radiological services for the hospital. In accordance with that contract, he agreed to create and administer a Department of Radiology within the hospital, and to provide physicians to staff that radiology department. The contract also provided that Goldstein was to operate the department consistent with the hospital's personnel and administrative policies. Goldstein chose to create a professional corporation (the DRA) to staff the Radiology Department, and became an employee, director and president of the DRA.

Richter is a physician licensed to practice in the State of Connecticut specializing in radiology. In May of 1973, he was hired by Goldstein, became an employee of the DRA and was appointed by Danbury Hospital and Goldstein to the Department of Radiology where he has served ever since. The employees of the DRA, including Richter, entered into employment contracts with it in which they agreed to comply with all applicable rules and regulations of Danbury Hospital. From 1973 to the present, Richter has been a member of the medical staff of the hospital with clinical privileges in radiology and has been an active, participating radiologist there.

The rights, privileges and obligations of staff physicians at Danbury Hospital are set forth in its bylaws. Section 8 of those bylaws provides that staff physicians' clinical privileges can be lost or restricted if the "professional conduct of a practitioner is, or is reasonably certain to be, detrimental to patient safety or to the delivery of quality patient care, or is reasonably certain to be disruptive to Hospital operations ..." The bylaws further set forth certain procedures for a change in clinical privileges, providing for a review and a "fair hearing" with regard to any changes that may result in changes in clinical privileges. On July 9, 1991, at a meeting of the Board of Directors of the DRA, a majority of the Directors voted to terminate Richter's employment agreement. The vote was not preceded by a discussion nor any explanation as to the reasons for Richter's termination.

*2 To date, no charges have been brought nor any hearing held, pursuant to the aforesaid bylaws. Richter has been denied access to the radiological department and denied all privileges within the hospital. Since that denial, he has been unable to continue his radiology practice in the area, and has been allegedly denied his livelihood.

Danbury Hospital has filed a motion for summary judgment on counts four, five, and seven. Richter has vehemently opposed that motion. DRA and Goldstein also move for summary judgment as to counts one, two, three, four, six, eight, and nine. Richter has also opposed that motion with the same vigor as he has to the hospital's motion.

"Practice Book § 384 provides that summary

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1998 WL 321853 (Conn.Super.))

Page 2

judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Doty v. Mucci,* 238 Conn. 800, 805, 679 A.2d 945. Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." *Miller v. United Technologies Corp.,* 233 Conn. 732, 751, 660 A.2d 810.

The movant has the burden of demonstrating the absence of any genuine issue of material fact. *Gupta v. New Britain General Hospital,* 239 Conn. 574, 582, 687 A.2d 111. A material fact has been defined as a fact that will make a difference in the result of the case. *Hammer v. Lumberman's Mutual Casualty Co.,* 214 Conn. 573, 578, 573 A.2d 699. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party ... Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact ... a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue ... (Internal quotation marks omitted.) *Home Insurance Co. v. Aetna Life & Casualty Co.,* 235 Conn. 185, 202, 663 A.2d 1001.

"The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." *2830 Whitney Avenue Corporation v. Heritage Canal Development Associates, Inc.,* Conn.App. 563, 567. "If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." (Internal quotation marks omitted.) *Id.,* 569.

The court will first consider the hospital's motion for summary judgment. It seeks summary judgment on Richter's claims that it breached its contract with him and that its actions violated the Connecticut Unfair Trade Practices Act (CUTPA) under § 42-110(g) of the General Statutes. [FN1]

> FN1. Count Four which asserts CUTPA claims against Danbury Hospital, the DRA, and Goldstein will be discussed under the section addressing the DRA's and Goldstein's motion for summary judgment.

*3 The thrust of Richter's breach of contract claim is that the hospital's bylaws constituted an enforceable contractual relationship between himself and Danbury Hospital. [FN2] He argues that the hospital breached the contract by reducing his clinical privileges without following the fair hearing procedures set out in the hospital's bylaws.

> FN2. In the present case, it is clear the Danbury Hospital Bylaws constitute a part of the contract between the Hospital and Richter, and neither party argues otherwise. See *Glanetti v. Norwalk Hospital,* 211 Conn. 51, 557 A.2d 1249.

The hospital asserts two arguments in support of its motion: (1) that the hospital's impairment of Richter's privileges and the denial of his access to its facilities does not constitute a reduction or termination of privileges because such impairment or denial results from the hospital's exclusive contract with another physician; (2) that it is not required to conduct a hearing because such a hearing is applicable only where an adverse action is premised upon issues of professional competency and conduct and, in the present case, Richter's professional competency and conduct are not in issue. This court agrees that a right to a fair hearing is only applicable where an adverse action is premised on matters bearing on professional competency and conduct. This conclusion draws strong support from the unambiguous language of the said bylaws.

"Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity ... Similarly, any ambiguity in a contract must emanate from the language used therein rather than from one party's subjective perception of the terms ... Absent a statutory warranty or definitive contract language, the trial court's interpretation of a contract, being a determination of the parties' intent, is a question of fact ..." (Citations omitted; internal quotation marks

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1998 WL 321853 (Conn.Super.))

Page 3

omitted.) *Tremaine v. Tremaine,* 235 Conn. 45, 57, 663 A.2d 387. When a contract provision is unambiguous, its interpretation presents an issue of law for determination by the court. *Mulligan v. Rioux,* 229 Conn. 716, 740, 643 A.2d 1226. "When, however, a contract provision is ambiguous or contract provisions are internally inconsistent, a question of facts is involved." *Bank of Boston Connecticut v. Avon Meadow Associates,* 40 Conn.App. 536, 540, 671 A.2d 1310.

Richter argues that he received an adverse recommendation which reduced his clinical privileges to that of a private office radiologist [FN3] and that "[u]nder the words of the Bylaws in the case at bar, any adverse recommendation triggers the right to a hearing." Article III, section 3(B)(3)(b) of the bylaws provides that the executive committee may "[m]ake an adverse recommendation in which case the practitioner will be entitled to the due process rights provided for in APPENDIX I, THE FAIR HEARING PLAN ..." Appendix I provides a definition of an adverse action: "An adverse action is a recommendation or decision which would adversely affect a practitioner's appointment, status, or clinical privileges as a member of the Medical Staff."

> FN3. The reduction of Richter to the status of a private practice radiologist prevented him from using the facilities and equipment at Danbury Hospital.

*4 Although Richter's clinical privileges may have been adversely affected, Appendix I, section (C)(6), states that "the Hearing provided for in these Bylaws is to resolve, on an intraprofessional basis, matters bearing on professional competence and conduct."

In *Dutta v. St. Francis Reg. Med. Center,* 254 Kan. 690, 867 P.2d 1057 (Kan.1994), a radiologist sued a hospital because it revoked her access to its radiology facilities. The Hospital revoked her access because it entered into an exclusive contract with another radiologist. The bylaws in the *Dutta* case provided that "[a]ny practitioner who receives notice of a recommendation of the Executive Committee or the Board of Directors ... that will adversely affect his appointment to or status as a member of the Medical Staff or his exercise of clinical privileges will be entitled to a hearing ..." Further, Subsection (j) of the bylaws stated that, "The hearing provided for in these Bylaws is for the purpose of resolving, on an intra-professional basis, matters bearing on professional competency and conduct." That court stated that since the plaintiff's professional competency and conduct were not at issue, to find that a hearing was necessary would require that subsection (j) be ignored. To hold that Danbury Hospital was required to provide Richter with a hearing would require that this court ignore Appendix I, section C, subsection (6) of its bylaws.

Richter continues his argument by asserting that an exclusive contract does not exist between DRA and Danbury Hospital, and therefore the contract cannot be used as a reason for revoking his privileges within the Hospital. He does not argue, however, that his privileges were revoked on account of his competency and conduct. Further, the Hospital has submitted the affidavit of Gerard D. Robilotti, the executive vice president of the hospital, which states that Richter lost his privileges because he was no longer employed by the DRA. [FN4] Since the language in the bylaws clearly and unambiguously requires a hearing only for matters bearing on professional competency and conduct, the hospital was not required to provide Richter with a hearing.

> FN4. In Robilotti's affidavit he states that "at no time was I informed by Dr. Goldstein or anyone else of the existence of any issue regarding Dr. Richter's professional competency and performance."

The evidence clearly establishes that there is no genuine issue of material fact, and the hospital's motion for summary judgment as to counts five and seven is granted.

Richter alleges in count eight that the DRA breached the implied covenant to act in good faith with regard to the plaintiff's employment contract. In the present case, Richter was an "employee at will" and, as such, his employment relationship was terminable at the will of either party. *Battista v. United Illuminating Co.,* 10 Conn.App. 486, 495, 523 A.2d 1356. In *Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 572, 479 A.2d 781, the Court held that an at will employee may not successfully

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1998 WL 321853 (Conn.Super.))

Page 4

challenge his discharge unless the reason for his discharge involves a violation of public policy.

*5 Richter argues that his discharge involves a violation of public policy in that his termination "deprives the population of the expertise of one of the community's most skilled physicians in an important area of medical care." Richter further argues that the DPA disregarded its bylaws when it terminated him.

To prevail under the public policy exception, Richter must prove an "improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Internal quotation marks omitted.) *Battista v. United Illuminating Co.,* supra, 497. "[T]he employee has the burden of pleading and proving that his dismissal occurred for a reason violating public policy." *Morris v. Hartford Courant, Co.,* 200 Conn. 676, 679, 513 A.2d 66. Moreover, "there must be more than an incidental effect on public policy. The defendant's reason for discharging the plaintiff must contravene public policy." *Battista v. United Illuminating Co.,* supra, 497-98.

Richter alleges in his complaint and provides evidence in his affidavit that Goldstein "displayed a dislike and antipathy" toward him. He continues, in his memorandum of law, that the reason for his termination was based on Goldstein's personal animosity toward him. It is clear from his allegations and the evidence before the court that the reason for his discharge does not involve a violation of public policy. Any effect that Richter's discharge has on depriving the public of his expertise is an incidental and an unintended effect. There being no genuine issues of fact to resolve, DRA's motion for summary judgment as to count eight is granted.

In count nine, Richter claims that DRA failed to pay expenses and wages or salaries as called for in the employment agreement. DRA has presented evidence showing that, pursuant to the employment contract, Richter was entitled to full salary during the ninety day period following his termination, and that indeed he did receive his full salary during that ninety day period.

Richter has also submitted evidence, which consists of his own affidavit and an agreement between himself and DRA dated January 18, 1991. That evidence reveals that additional money may be owed in addition to what he has already received. DRA has failed to demonstrate that there is no genuine issue of material fact as to whether Richter is entitled to additional money under the employment contract. Accordingly, DRA's motion for summary judgment as to count nine of the fifth amended complaint is denied.

In count two, it is asserted that Goldstein's conduct, as stated in count one of the complaint, constituted an intentional infliction of emotional distress. In count one, Richter alleged that Goldstein tortiously interfered with his employment contract with DRA by using his superior skill and dominant position to convince the board of directors to terminate his employment. He also attempts to bolster his emotional distress claim by arguing in his memorandum of law that Goldstein committed an assault upon him. The facts related to the assault, however, are not incorporated into Richter's emotional distress claim (count two). Therefore, the allegations related to the assault will not be considered in determining whether there is a genuine issue of material fact regarding Richter's emotional distress claim.

*6 A cognizable claim of intentional infliction of emotional distress must establish: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result from his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337. "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the *Parsons v. Sikorsky Aircraft Division,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 280394 (March 1, 1996, Levine J.), quoting *Reed v. Signode Cor,* 652 F.Supp. 129, 137 (D.Conn.1986).

For liability to exist, the threshold for the requisite behavior begins "where conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Internal quotation

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works