marks omitted.) *Whelan v. Whelan,* 41 Conn.Supp. 519, 523, 3 CONN. L. RPTR. 135, 136, quoting 1 Restatement (Second), Torts § 46, p. 73, comment (d).

In the present case, the plaintiff has alleged and provided evidence that Goldstein displayed a dislike and antipathy toward him, that Goldstein recommended a reduction in his staff privileges to that of a private office radiologist, and that Goldstein's influence over the board of directors of the DRA led to his termination. In *Collins v. Gulf Oil Corp.,* 605 F.Supp. 1519, 1599 (D.Conn.1985) (Dorsey, J.), the plaintiff testified to what he considered improper motives for the defendant's conduct regarding the plaintiff's termination. The court found that the plaintiff failed to show that his termination was conducted in an egregious or unconscionable manner. Without such a showing the court held that the plaintiff could not maintain an action for the intentional infliction of emotional distress.

Similarly, the facts alleged and evidence produced viewed in the light most favorable to Richter fail to show that his termination was conducted in an egregious or unconscionable manner. Thus, the court finds that as a matter of law Goldstein's conduct was not "extreme and outrageous." Accordingly, Goldstein's motion for summary judgment as to count two is granted.

In count three, the plaintiff asserts an assault claim against Goldstein. He claims and provides evidence within his affidavit that he was in the hospital's radiological department reviewing an X-ray of a patient, when Goldstein, menacingly and threateningly approached him, ripped the X-ray from the shadow box as he was reviewing the films and ordered him out of the radiological department.

*7 Assault "has been defined as any attempt with force or violence to do corporeal offense to another, coupled with the present apparent ability to complete the act. An assault cannot be accomplished by words alone. There must be an overt act evidencing some corporeal threat. A mere preparation for an assault is not a civil wrong." *Comrie v. Hinds,* Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 521854 (April 18, 1996), quoting, Wright, J. FitzGerald & W. Ankerman, Connecticut Law of Torts (3rd Ed.1991) c. 2, § 6, pp. 8-9. In the present case, the evidence before the court reveals that a jury could not reasonably find that Goldstein's conduct constituted an attempt with force or violence to do corporeal offense to Richter. Accordingly, Goldstein's motion for summary judgment as to count three is granted.

In counts one and six, Richter alleges that Goldstein tortiously interfered with his employment contracts with DRA and Danbury Hospital, respectively. Richter alleges and has provided evidence that Goldstein's dislike and antipathy towards him motivated Goldstein to convince DRA and Danbury Hospital to terminate business relations with him.

Our courts have "long recognized a cause of action for tortious interference with contract rights or business relations." *Kelley Property Development, Inc. v. Lebanon,* 226 Conn. 314, 340 n. 30, 627 A.2d 909. The elements of tortious interference with a business relationship are "the existence of a contractual or beneficial relationship, the defendants' knowledge of that relationship, the intent to interfere with it, and the consequent actual loss suffered by the plaintiff." *Hart, Nininger & Campbell Associates, Inc. v. Rogers,* 16 Conn.App. 619, 629, 548 A.2d 758.

"[F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation ... [A]n action for intentional interference with business relations ... requires the plaintiff to plead and prove at least some improper motive or improper means." *Kelley Property Development, Inc. v. Lebanon, supra,* 340 n. 30. "A motive to injure another or to vent one's ill will on him serves no socially useful purpose given these guidelines. *Centi v. Lexington Health Care Center,* Superior Court, judicial district of New Haven at New Haven, Docket No. 383535, (May 1, 1997, Licari, J.).

Goldstein argues that, because he is an agent of DPA, he cannot be found to have intentionally interfered with the employment contract between Richter and it. "[T]he general rule is that the agent may not be charged with having interfered with a contract of the agent's principal." *Selby v. Pelletier,* 1 Conn.App. 320, 327 n. 4, 472 A.2d 1285. "An

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1998 WL 321853 (Conn.Super.))

Page 6

agent, however, can be held liable for such interference or inducement if he did not act legitimately within the scope of his duty but used the corporate power improperly for personal gain." (Citation omitted.) *Murray v. Bridgeport Hospital,* 40 Conn.Supp. 56, 61, 480 A.2d 610.

**\*8** In the present case, the evidence submitted reveals that Goldstein may have caused DRA and Danbury Hospital to terminate their business relationships and/or contracts with Richter because of his own personal animosity towards Richter. This raises a genuine issue of material facts as to whether Goldstein used his corporate power for personal gain.

Goldstein further argues that DRA did not breach its employment contract with Richter; therefore, he could not have tortiously interfered with that contract. DRA did not have to breach Richter's employment contract, however, for Goldstein to have tortiously interfered with said contract. To sustain his cause of action for the tortious interference of a contract, he only needs to plead and prove that Goldstein knew of his business relationship with DRA, intended to interfere with it, and Richter suffered a loss because of that interference. *Hart, Nininger & Campbell Associates, Inc. v. Rogers, supra.*

Goldstein knew about Richter's business relationship and/or contract with DRA and with Danbury Hospital. The evidence submitted reveals that there is a genuine issue of material fact as to whether Goldstein intended to interfere with Richter's business relationship and/or contract with DRA and Danbury Hospital. Intent is virtually always a question of fact. The evidence reveals that there is also a genuine issue of material fact as to whether Richter has suffered a loss. Goldstein has failed to show that there is no genuine issue of material fact, his motion for summary judgment as to counts one and six is denied.

In count four of the complaint, he claims that Danbury Hospital, DRA, and Goldstein violated Connecticut's Unfair Trade Practice Act (CUTPA). He alleges that Danbury Hospital and/or Goldstein and/or DRA have prevented him from utilizing the radiological equipment and services of the hospital. These actions have denied "him the ability to practice his specialty and [has] discourag[ed] referring doctors and patients who attempt to avail themselves of the plaintiff's skill, knowledge and experience in radiology and particularly mammography."

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 42-110b(a) of the General Statutes. In order to enforce this prohibition, CUTPA provides a private cause of action to "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice ..." Section 42-110g(a) of the General Statutes; see generally *Fink v. Golenbock,* 238 Conn. 183, 212-13, 680 A.2d 1243.

In determining whether an act is unfair, the courts have adopted the following criteria known as the "cigarette rule": "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law or otherwise--whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]." *Williams Ford, Inc. v. Hartford Courant Co.,* 232 Conn. 559, 591, 657 A.2d 212. "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Fink v. Golenbock, supra,* 215.

**\*9** In the present case, Richter attests in his personal affidavit that after his discharge, Danbury Hospital, DRA, and Goldstein, dissuaded patients at the hospital who requested his services from reaching him or knowing of his whereabouts. The defendants' move for summary judgment on the ground that CUTPA does not apply to the employment relationship. In *Quimby v. Kimberly Clark Corporation,* 28 Conn.App. 660, 670, 613 A.2d 838, the Appellate Court, relying on *Banerjee v. Robert,* 641 F.Supp. 1093 (D.Conn.1986), held that the employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA. Richter argues that the actions complained of in the fourth

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
**(Cite as: 1998 WL 321853 (Conn.Super.))**

Page 7

count of the complaint occurred after his termination. "[T]he court is unable to find, however, any authority to support the proposition that CUTPA applies to employer-employee relationships where the conduct complained of occurs following the employee's termination of employment." *Mafcote Industries v. Swanson,* Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 150309 (November 7, 1997, D'Andrea, J.). The motions for summary judgment submitted by Danbury Hospital, DRA, and Goldstein are hereby granted as to count four.

Danbury Hospital's motion for summary judgment as to Counts Four (4), Five (5) and Seven (7) is *granted*.

DRA's motion for summary judgment as to Counts Four (4) and Eight (8) is *granted,* and as to Count Nine (9) is *denied*.

Goldstein's motion for summary judgment as to Counts Two (2), Three (3) and Four (4) is *granted,* and as to Counts One (1) and Six (6) is *denied.*

An order may enter in accordance with the foregoing.

1998 WL 321853 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 342045
(Cite as: 1998 WL 342045 (D.Conn.))

Page 1

▷
Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Cynthia ARMSTRONG
v.
CHRYSLER FINANCIAL CORP and Roger Pinneault

No. Civ. 397CV1557(AHN).

May 14, 1998.

RULING ON MOTIONS TO DISMISS

NEVAS, J.

*1 This employment discrimination case involves a claim of hostile work environment. The plaintiff, Cynthia Armstrong ("Armstrong"), alleges claims under Title VII, the Connecticut Fair Employment Practices Act ("CFEPA"), Conn.Gen.Stat. § 46a-60, and Connecticut common law. Pending before the court are the motions of the plaintiff's employer, Chrysler Financial Corporation ("Chrysler") and her supervisor, Roger Pinneault ("Pinneault"), to dismiss the complaint in its entirety pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, the motions [docs. # 11 and # 13] are GRANTED IN PART and DENIED IN PART.

FACTS

The following facts are alleged in the complaint and are taken as true for purposes of this motion. Armstrong was employed by Chrysler as the customer service manager of its New Haven branch from 1983 until May 31, 1996. She performed her duties at a satisfactory or higher level, and always met or exceeded her job expectations. In January 1996, Pinneault became the branch manager.

Between January 1996 and May 31, 1996, Pinneault subjected Armstrong to verbal harassment. He addressed her and other female employees as "You-Who" and "Eloise," but addressed male employees by their proper names. He criticized, insulted, demeaned, and embarrassed Armstrong on a daily basis. He took away her authority as customer service manager, but he did not interfere with the authority of the office's two male managers. Pinneault frequently declared Armstrong incompetent and demeaned her professional ability in the presence of her superiors and subordinates. Pinneault's behavior was pervasive and created a working environment that was intimidating, insulting, and abusive to Armstrong and other female employees. Moreover, Chrysler failed to supervise Pinneault or to intervene to prevent him from engaging in sexually harassing conduct when it knew or, in the exercise of reasonable care, should have known of his conduct.

In addition to these facts, the defendants maintain that the court should also consider the facts which Armstrong alleged in the charges she filed with the CHRO. [FN1] Among those facts are that Armstrong resigned because the New Haven office was closing and that the reason she did not accept the position she was offered in the Boston zone office was that she would have to work under Pinneault's supervision.

> FN1. As a general rule, matters outside the complaint cannot be considered on a motion to dismiss without converting the motion to one for summary judgment. See Fed.R.Civ.P. 12(b). However, where a plaintiff does not attach to the complaint or incorporate by reference a document on which it relies and which is integral to the complaint, a defendant may introduce that document as part of a motion attacking the pleadings. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991), cert. denied, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). Accordingly, because the plaintiff's administrative charges are integral to the complaint, complaint, the court may properly consider the administrative complaint as part of the pleadings in this case.

DISCUSSION
Chrysler claims that the Title VII claim must be dismissed because the complaint does not allege facts that entitle Armstrong to relief. Pinneault moves to dismiss on the grounds that there is no

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 342045
(Cite as: 1998 WL 342045 (D.Conn.))

Page 2

individual supervisory liability under Title VII or CFEPA, and because Armstrong failed to exhaust her administrative remedies against him. Both defendants maintain that the common law claims should also be dismissed.

I. *Sufficiency Of Title VII and CFEPA Claims*

Armstrong's claims under Title VII and CFEPA are characterized as "hostile work environment" claims. The defendants maintain that Armstrong has failed to establish on the face of her pleadings that a hostile work environment was created or that the situation she complains about should be imputed to Chrysler. The defendants also maintain that Armstrong has not properly alleged a constructive discharge. Armstrong contends that the complaint satisfies the minimal pleading requirements of the federal rules.

*2 The federal rules only require the complaint to set forth a "short and plain statement of the claim showing the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This rule was designed to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See* 2A Moore's Federal Practice ¶ 8.13, at 8-73 (2d ed.1991). Under Rule 8(a), a plaintiff is not required to prove his case at the pleading stage. *See Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 124 (2d Cir.1991). Indeed, the pleading of evidence is not only unnecessary, but in contravention of proper pleading procedure. *See Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir.1980). The purpose of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence that might be offered in support of the claim. *See id.* at 639. "[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Id.*

To prevail on a hostile work environment [FN2] claim a plaintiff must show (1) that the workplace was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of the work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir.1996); *Briones v. Runyon*, 101 F.3d 287, 291-92 (2d Cir.1996); *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir.), *cert. denied*, 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994).

> FN2. Connecticut courts have held that federal standards apply to claims under Connecticut's employment discrimination statutes. *See Levy v. Commission on Human Rights & Opportunities*, 35 Conn.App. 474, 646 A.2d 893, *aff'd*, 236 Conn. 96, 671 A.2d 349 (1994).

Judging the complaint with these procedural and substantive principles in mind, it appears that Armstrong may be able to establish facts that entitle her to relief under Title VII and CFEPA.

A. *Sufficiency of Alleged Conduct*

With respect to the first element of the hostile environment claim, Armstrong alleges Pinneault subjected her on a daily basis to verbal harassment, criticism, insults, that he continually demeaned and embarrassed her about her appearance, that he took away her authority, and frequently declared her incompetent and demeaned her professional ability in the presence of others.

These allegations are sufficient to state a prima facie case under Title VII. Armstrong is entitled to develop and present a full evidentiary record to the trier of fact so that it can determine from the totality of the circumstances whether the harassment was so pervasive and severe as to create an abusive environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (in determining whether the work environment was hostile the court should consider such factors as the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with the employee's work performance). Armstrong is also entitled to have all of her evidence considered in light of the social context in which the behavior occurred and its effect on her. *See Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, ----, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1988) (noting that the inquiry into whether conduct violated Title VII requires

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 342045  
(Cite as: 1998 WL 342045 (D.Conn.))

Page 3

careful consideration of the social context in which particular behavior occurs because "the real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed"). *See also Gallagher v. Delaney,* No. 97-7726, 1998 WL 119614, slip op. at *8 (2d Cir. March 19, 1988) (commenting that "[a]n Article III judge is not a hierophant of social graces [and that] [e]valuation of ambiguous acts present [ ] an issue for the jury.").

B. *Imputing Supervisor's Conduct to Chrysler*

*3 The allegations pertaining to this element of the hostile environment claim are that Pinneault was Chryler's agent, servant and employee and that Chrysler failed to supervise him or to intervene when it knew or should have known of his improper conduct.

In determining whether an employer is liable for an employee's conduct, the Supreme Court has directed lower courts to draw from traditional agency principles. *See Kotcher v. Rosa & Sullivan Appliance Center, Inc.,* 957 F.2d 59, 63 (2d Cir.1992) (citing *Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The Second Circuit has held that an employer is liable for the discriminatorily abusive work environment created by a supervisor if the supervisor uses his or her actual or apparent authority to further the harassment, or if he was otherwise aided in accomplishing that harassment by the existence of the agency relationship. *See Karibian v. Columbia Univ.,* 14 F.3d at 780; *see also Kotcher,* 957 F.2d at 64 (recognizing that the actions of a supervisor at a sufficiently high level in the hierarchy may be imputed to the employer). [FN3]

> FN3. There is no merit to the defendants' claim that Pinneault's conduct may only be imputed to Chrysler if Chrysler provided no reasonable avenue for complaint or knew of the harassment but did nothing to prevent it. The Second Circuit has stated that this standard only applies where the harassment is attributable to a co-worker, not a supervisor *See Karibian v. Columbia Univ.,* 14 F.3d at 780; *Van Zant,* 80 F.3d at 715.

Whether Pinneault used his authority to further the harassment or whether he was at a sufficiently high level in the hierarchy are issues that are not properly before the court on this motion to dismiss. Accordingly, Armstrong's allegations that Pinneault was her supervisor and Chrysler's agent are sufficient to allow the claim to survive.

Based on the foregoing, it does not appear that Armstrong can prove no set of facts entitling her to relief, and the motion to dismiss the hostile environment claim is denied.

C. *Sufficiency of Constructive Discharge Allegations*

The defendants maintain that Armstrong's claim of constructive discharge must be dismissed because she alleged in the administrative complaint that her employment with Chrysler ended because the New Haven office closed. They assert that this allegation is inconsistent with a claim of constructive discharge. Armstrong maintains that she has consistently asserted that Pinneault's behavior would, at some point, have forced her to resign and that this allegation states a constructive discharge.

To establish a constructive discharge, the plaintiff must show that the employer deliberately made the working conditions so intolerable that the employee was forced to resign. *See Stetson v. Nynex Serv. Co.,* 995 F.2d 355, 359 (2d Cir.1993). Ultimately the plaintiff must convince the trier of fact that "the working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have been compelled to resign." *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir.1983).

Here, the court agrees that Armstrong's allegation that she would have been forced to resign "at some point" if the New Haven office had not closed is not sufficient to state a claim of constructive discharge. However, she also asserts that she did not accept a position in the Boston zone office because she would have had to work under Pinneault's supervision. This is tantamount to resignation and is sufficient to state a constructive discharge claim.

II. *Individual Liability Under Title VII*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 342045
(Cite as: 1998 WL 342045 (D.Conn.))

Page 4

*4 Pinneault moves to dismiss the Title VII claim against him in his individual capacity because the Second Circuit has held that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995). Armstrong submits that the Second Circuit incorrectly decided *Tomka* and urges the court to allow her claim against Pinneault to stand so that the Second Circuit will have an opportunity to correct its error.

The court declines Armstrong's invitation to disregard binding authority of the Second Circuit. *Tomka* is controlling this court and the claim against Pinneault in his individual capacity is dismissed.

III. *State Law Claims*

A. *Individual Liability Under CFEPA*

Pinneault moves to dismiss Armstrong's claim against him in his individual capacity under CFEPA. He maintains that this court should reconsider its ruling in *Murphy v. Burgess,* No. 3:96CV1987(AHN), 1997 WL 52960 (D.Conn. July 16, 1997), in light of the circumstances of this case. [FN4]

>   FN4. There is no merit to the defendants' claim that the court should decline to exercise supplemental jurisdiction over this claim because it presents a novel issue that has not been decided by Connecticut courts. Pendent or supplemental jurisdiction is "a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Thus, the Supreme Court has instructed district courts to "deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id.* at 357. "[W]here state-law claims are joined with a federal claim that has substance sufficient to confer subject matter jurisdiction on the federal court, and the claims derive from a common nucleus of operative fact such that it would ordinarily be expected that they would all be tried in one judicial proceeding, the district court has the power to take jurisdiction of the state-law claims as well." *Robinson v. Via,* 821 F.2d 913, 925 (2d Cir.1987) (citing *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725-28, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Moreover, this is not one of the unusual cases where the court would abuse its discretion by not dismissing the unresolved issue of state law. *See Morse v. University of Vt.,* 973 F.2d 122, 128 (2d Cir.1992).

In *Murphy* this court recognized that the express language of CFEPA does not provide for personal liability of supervisory employees, that neither the Connecticut Supreme Court nor the Second Circuit have addressed the issue, and that there is a split of authority among the Connecticut Superior Courts. *See Murphy,* 1997 WL 52960 at * 3-4. Nonetheless, it concluded that, based on the substantial differences between the statutory scheme and remedial provisions of CFEPA and Title VII, the Connecticut Supreme Court would construe CFEPA more broadly than its federal counterpart with respect to individual supervisory liability. *See id.* at 4.

Despite the defendant's invitation, the court is not inclined to reconsider its conclusion that CFEPA imposes liability on supervisory employees who hold positions of power, control and authority, and who use that power, control, and authority to engage in conduct giving rise to a discrimination claim.

There is also no merit to Pinneault's motion to dismiss the CFEPA claim on the grounds that Armstrong failed to name him in the administrative complaint.

In Title VII actions, courts have recognized an exception the general rule that a defendant must be named in the EEOC complaint. This "identity of interest" exception permits a Title VII action to proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 342045
(Cite as: 1998 WL 342045 (D.Conn.))

Page 5

charge. *See Johnson v. Palma,* 931 F.2d 203, 209 (2d Cir.1991).

To determine if there is an identity of interest the court should consider: (1) whether the role of the unnamed party could, through reasonable effort by the complainant, be ascertained at the time the EEOC complaint was filed; (2) whether, under the circumstances, the interest of a named party is so similar to those of the unnamed party that, for the purpose of obtaining voluntary conciliation and compliance, it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice to his interests; and (4) whether the unnamed party in some way represented to the complainant that its relationship with the complainant was to be through the named party. *Id.; Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235 (2d Cir.1995); *Malasky v. Metal Prod. Corp.,* 44 Conn.App. 446, 689 A.2d 1145, *cert. denied,* 241 Conn. 906, 695 A.2d 539 (1997).

*5 Application of these factors here supports the identity of interest exception. The interests of Chrysler and Pinneault are similar if not identical, and the allegations against Pinneault are not separate and distinct from those against Chrysler. Moreover, Armstrong was not represented by counsel at the administrative level and Pinneault has not shown any prejudice by her failure to name him.

B. *Intentional Infliction of Emotional Distress*

The defendants maintain that this claim should be dismissed because (1) the complaint does not allege the elements of this cause of action and does not sufficiently allege outrageousness; (2) the claim is barred by the exclusivity provisions of Connecticut Worker's Compensation Act; and (3) the claim is barred under the doctrine of respondeat superior. The court agrees that the complaint does not allege sufficiently outrageous and extreme conduct to support a cause of action for intentional infliction of emotional distress.

Liability for intentional infliction of emotional distress has been found only where conduct exceeds all bounds usually tolerated by decent society and is so outrageous in character, so extreme in degree, and is calculated to cause, and does cause, mental distress of a very serious kind. *See Petyan v. Ellis,* 200 Conn. 243, 254, 510 A.2d 1337 (1986); *Reed v. Signode Corp.,* 652 F.Supp. 129, 137 (D.Conn.1986). Mere insults, indignities, annoyances, or conduct that displays bad manners or results in hurt feelings, is insufficient. *See Kintner v. Nidec-Torin Corp.,* 662 F.Supp. 112, 114 (D.Conn.1987); *Reed,* 652 F.Supp. at 137. The issue of whether a defendant's conduct is extreme and outrageous is a question to be determined by the court in the first instance. *Kintner,* 662 F.Supp. at 137; *Collins v. Gulf Oil Corp.,* 605 F.Supp. 1519, 1522 (D.Conn.1985).

Here, Armstrong alleges that Pinneault addressed her as "You-Who" and Eloise, criticized, insulted, demeaned, and embarrassed her on a daily basis, took away her authority, frequently declared her incompetent, and demeaned her professional ability in the presence of her superiors and subordinates. This conduct does not meet the required threshold of outrageousness. *Cf. Valencia v. St. Francis Hosp. & Med. Ctr.,* Civ. No. 94-538867S, 1996 Conn.Super. LEXIS 894 (Superior Court Apr. 2, 1996) (holding that conduct was not extreme and outrageous where defendant "grabbed plaintiff's arm in front of patients and co-workers, pulled her in a back room and yelled at her"); *Johnson v. Chesebrough-Pond's USA Co.,* 918 F.Supp. 543, 552-53 (D.Conn.1996) (concluding that conduct was not extreme and outrageous where employee was suddenly terminated and physically escorted from the building like a criminal) *aff'd,* 104 F.3d 355 (2d Cir.1996); *Barbuto v. William Bachus Hosp.,* No. 105452 (Conn.Supp.Ct. April 13, 1995) (defendant's conduct in removing plaintiff from a work-shift schedule despite reassurances it would not do so and suspending her for two days not extreme and outrageous); *Reed,* 652 F.Supp. at 137 (conduct not extreme and outrageous where policy against leaves of absence was applied to employee undergoing cancer treatment).

*6 Because the allegations are not sufficient to satisfy the threshold requirements of outrageousness, the court need not address the defendants' arguments that the claim is barred by the Connecticut Worker's Compensation Act or the doctrine of respondeat superior.

C. *Breach of Covenant of Good Faith and Fair Dealing*

The defendants maintain that Armstrong's claim for

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 342045
(Cite as: 1998 WL 342045 (D.Conn.))

Page 6

breach of the covenant of good faith and fair dealing must be dismissed because this cause of action only exists where an employee is otherwise without redress. The court agrees.

In the employment context, a claim for breach of the covenant of good faith and fair dealing can only be brought where the employee is "otherwise without remedy." *See Atkins v. Bridgeport Hydraulic Co.,* 5 Conn.App. 643, 648, 501 A.2d 1223 (1995). Dismissal of this claim is appropriate here because Armstrong has adequate statutory remedies under Title VII and CFEPA. She is thus not otherwise without remedy and dismissal of this common-law claim will not "leave a valuable social policy ... unvindicated." *Id.*

IV. *Punitive Damages*

The defendants maintain that Armstrong has not asserted any basis for recovery of punitive damages under 42 U.S.C. § 1981a(b)(1). Armstrong does not contest the defendants' allegation, but rather seeks leave to replead the required allegations that the defendants acted with malice or reckless indifference to her federally protected rights.

When a claim is dismissed for insufficiency under Rule 12(b)(6) and the plaintiff requests permission to file an amended complaint, that request should ordinarily be granted. *See Ricciuti,* 941 F.2d at 123. Only in a rare case should leave to replead be denied, especially where there has been no prior amendment. *Id.* Accordingly, Armstrong is granted leave to file an amended complaint containing the allegations that are necessary for punitive damages.

CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss [docs. # 11 and # 13] are DENIED with respect to the Title VII claim against Chrysler and the CFEPA claim against Pinneault. With respect to the Title VII claim against Pinneault and the state law claims of intentional infliction of emotional distress and breach of the covenant of good faith and fair dealing, and the claim for punitive damages, the motions are GRANTED. The plaintiff is granted leave to file an amended complaint which adequately alleges a claim for punitive damages and deletes the claims that have been dismissed, within twenty-one days of this ruling.

SO ORDERED this 13 day of May, 1998 at Bridgeport, Connecticut.

1998 WL 342045, 1998 WL 342045 (D.Conn.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 240731 (Conn.Super.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Toni A. ROBERTS,
v.
Myrna KELLEY, et al.

No. CV 980418904.

April 9, 1999.

MEMORANDUM OF DECISION RE MOTION TO STRIKE

SILBERT.

*1 The plaintiff alleges that on December 26, 1997, she visited Branford, Connecticut's Wal-Mart Store for the purpose of exchanging allegedly defective computer software which she had previously purchased. She claims that while discussing the intended exchange with the defendant Kelley, an employee of Wal- Mart, Kelley became "rude, belligerent and disrespectful of the plaintiff and suddenly and without justification proclaimed in a tone easily heard by nearby store patrons and members of the plaintiff's community, including plaintiff's father and minor daughter, 'you're a liar!' " Based on this incident, the plaintiff brought the instant ten-count complaint against Kelley and Wal-Mart Stores. The defendants contend that each and every one of the plaintiff's ten counts fails to state a claim upon which relief may be granted as a matter of law, and they have therefore moved to strike the entire complaint.

"The purpose of a motion to strike is to 'contest ... the legal sufficiency of the allegations of any complaint ... to state a claim upon which relief can be granted.' " *Novametrix Medical Systems, Inc. v. BOC Group, Inc.*, 224 Conn. 210, 214-15, 618 A.2d 25 (1992). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." *Id.*, 215, 618 A.2d 25. "The court must construe the facts in the complaint most favorably to the plaintiff." *Id.* The motion "admits all facts well pleaded." *Ferryman v. Groton,* 212 Conn. 138, 142, 561 A.2d 432 (1989). A motion to strike "does not admit *legal conclusions or the truth or accuracy of opinions* stated in the pleadings." (Emphasis in original.) *Mingachos v. CBS, Inc.,* 196 Conn. 91, 108, 491 A.2d 368 (1985). Further, the court must construe the facts in the pleadings which are the subject of the motion to strike in the light most favorable to the pleader. *Gordon v. Bridgeport Housing Authority,* 208 Conn. 161, 170, 544 A.2d 1185 (1988).

Count one alleges intentional infliction of emotional distress by the defendant Myrna Kelley. Such a claim must include the following elements:
(1) that the actor intended to inflict emotional distress, or that he knew or should have known that the emotional distress would be the likely result of his conduct;
(2) that the conduct was extreme and outrageous;
(3) that the defendant's conduct was the cause of the plaintiff's distress; and
(4) that the emotional distress sustained by the plaintiff was severe.

*Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986), quoting *Murray v. Bridgeport Hospital,* 40 Conn.Supp. 56, 62, 480 A.2d 610 (1984); *Mellaly v. Eastman Kodak* Co., 42 Conn.Supp. 17, 597 A.2d 846 (1991).

*2 The defendants argue that as a matter of law, the conduct alleged by the plaintiff does not satisfy the third prong of this test, namely that it was not "extreme and outrageous." "The rule which seems to have emerged is that there is liability for conduct exceeding *all bounds,* usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Lucuk v. Cook,* 21 CONN. L. R PTR. 377, 1998 WL 67412 (Conn.Super.1998), quoting *Murray v. Bridgeport Hospital,* 40 Conn.Supp. 56, 480 A.2d 610 (1984) (emphasis in original). The Restatement (2nd) of Torts, § 46, suggests that liability should only be found "where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." "The liability clearly does not extend to mere insults, indignities, threats, petty oppressions or other trivialities." *Lucuk v. Cook, supra.*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 240731 (Conn.Super.))

Page 2

Whether conduct alleged by a plaintiff rises to the level of "extreme and outrageous" is, in the first instance, a question for the court. *Petyan v. Ellis, supra.* This is so at least in part to protect courts from being flooded by "suits claiming distress for every kind of threat, indignity or abuse no matter how trivial." *Lucuk, supra.* See, also, *Knierim v. Izzo,* 174 N.E.2d 1957 (Ill.1961).

The plaintiff suggests that, combined with the fact that her father and minor daughter were present and that the event took place on the day after Christmas, the comments made by Kelley were indeed "extreme and outrageous." Although this court does not disagree that the context may well be relevant in determining whether conduct is "extreme and outrageous," the facts in this case fall far short of meeting this standard. However unprofessional Kelley's conduct may have been, and however offended the plaintiff may have been by it, that conduct does not meet the "extreme and outrageous" test, and the first count therefore fails to state a cause of action for intentional infliction of emotional distress.

In her second count, the plaintiff appears to allege negligent infliction of emotional distress, but the count as presently worded does not include an allegation that the defendant should have realized her conduct involved an unreasonable risk of causing emotional distress and that this distress, if it were caused, might result in illness or bodily harm. *Morris v. Hartford Courant Co.,* 200 Conn. 676, 683, 513 A.2d 66 (1986). *Faillace v. Soderholm,* 1997 WL 684900 (Conn.Super.1997).

The plaintiff attempts to defend her pleading by citing *Montinieri v. Southern New England Telephone Co.,* 175 Conn. 337, 345, 398 A.2d 1180 (1978), which notes that "recovery for unintentionally caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact." The plaintiff misses the distinction between physical harm, which may arise from emotional distress, and physical injury or physical impact, which would be the product of some kind of physical trauma. An allegation of negligent infliction of emotional distress must, as a matter of law, include the allegation that the defendant should have realized that its conduct could have caused such distress and that, if caused, that distress could result in some physical symptoms. That the plaintiff is not required to allege physical injury or physical impact does not relieve her of that responsibility. The second count thus also fails to state a claim upon which which relief may be granted as a matter of law, and it is therefore stricken.

*3 The defendant has also argued that by failing to specify the duty owed by the defendant to the plaintiff, she has failed even to allege negligence with respect to the second count. The court assumes that if the plaintiff elects to replead this count, she will do so in a manner which specifies the duty allegedly owed to her by the defendant.

As for the third count, which alleges "slander per se," the plaintiff has acknowledged that it fails to state a claim upon relief may be granted, and this count is therefore stricken.

The fourth count incorporates portions of the first and third counts, which have been stricken, and also alleges that the defendant's conduct was "willful, wanton, malicious and in callous disregard of plaintiff's rights and sensibilities." In attempting to defend this count, the plaintiff herself cites *Bordonaro v. Senk,* 109 Conn. 428, 431-432, 147 A. 136, which states:

Wanton misconduct is more than negligence ... Willful misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of willful misconduct. When we say that wanton misconduct is the equivalent of willful misconduct, we do not intend to characterize these terms as equivalents of each other, but equivalents in result. Willful or intentional misconduct and wanton misconduct are different concepts of wrongful or improper misconduct, but in their resultant they are alike in their seriousness and gravity, and the law subjects whoever is guilty of either form of misconduct to like rules and visits upon each a like liability.

It is thus apparent that for purposes of construing this count, the "willful, wanton and malicious" conduct alleged by the plaintiff should be viewed in the same way as an allegation of intentional conduct. Just as the plaintiff has failed to allege facts tending to show that the conduct was "extreme and outrageous" with respect to the first count, so she has failed to do so with respect to this, the fourth count. The fourth count is therefore stricken.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 240731 (Conn.Super.))

Page 3

The fifth count restates the allegations of the third count (slander per se) and seeks to have the defendant Wal-Mart held responsible on a theory of respondeat superior. As the plaintiff has already conceded that the third count is defective, however, the fifth count also cannot stand. The motion to strike it is therefore granted.

The sixth count appears to be an amalgam of fraudulent and negligent misrepresentation allegations. Although the count arguably sets forth a claim of negligent misrepresentation, the defendant argues that the count is devoid of any allegations that would set forth the claim of fraudulent misrepresentation and that the entire count must therefore be stricken. This count refers to various advertisements and publications through which the defendant Wal-Mart makes representations that its customers will receive "helpful, courteous and efficient service by well trained employees." Although the language of this count arguably sets forth the claim that such statements were made, negligently, in order to state a cause of action for fraudulent misrepresentation, the plaintiff must allege:
 *4 (1) a false representation made as a statement of facts;
 (2) it was untrue and known to be untrue by the party making it;
 (3) it was made to induce the other party to act upon it;
 (4) the other party did so act upon the false representation to his injury.

*Barbara Weisman, Trustee v. Kaspar*, 233 Conn. 531, 539, 661 A.2d 530 (1995); *Parker v. Shaker Real Estate, Inc.*, 47 Conn.App. 49 (1998). A review of the sixth count reveals that it does not include the requisite allegations, and it is therefore stricken.

The seventh count incorporates the allegations of several other counts which have now been stricken and goes on to complain that Wal-Mart failed to investigate or respond to the plaintiff's complaints about Kelley or take any meaningful disciplinary action against her. Even after having heard oral argument, it is difficult to discern the legal theory on which this count is based. Because, at a minimum, the count relies on allegations which have already been stricken, this count must also be stricken.

The eighth count appears to allege a breach by Wal-Mart of its obligation of good faith and fair dealing with respect to its contractual obligations with the plaintiff surrounding its return policy. To the extent that this "breach" refers to infliction of emotional distress, it has been dealt with in the other counts of the complaint. To the extent that it relates to any failure by Wal-Mart to abide by its agreements with regard to the return of merchandise, this count is devoid of any allegation as to how it breached the covenant of good faith and fair dealing with respect to such obligations. For all of these reasons, as well as the fact that the count incorporates by reference elements of other counts which have already been stricken, this count must also be stricken.

As to the ninth and tenth counts, the plaintiff has conceded that they fail to state claims upon which relief may be granted, and the court therefore orders them stricken.

For all of the above reasons, the plaintiff's complaint is stricken in its entirety.

1999 WL 240731 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
28 Conn. L. Rptr. 47
**(Cite as: 2000 WL 1337665 (Conn.Super.))**

Page 1

H
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Craig ESPOSITO,
v.
CONNECTICUT COLLEGE et al.

**No. X04CV 970117504S.**

Sept. 1, 2000.

MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KOLETSKY.

*1 On July 25, 1997, Craig Esposito filed the present lawsuit against the defendants, Connecticut College and Claire Matthews, his employer and supervisor respectively, seeking damages arising out of his alleged wrongful demotion from the position of Director of Planned and Major Gifts to the position of Director of Planned Giving. The initial complaint consists of ten counts, seven directed against the college and three directed against the individual defendant.

Mr. Esposito was discharged from his employment on August 5, 1997. Although a revised complaint was filed on September 2, 1997, there are no counts alleging wrongful termination in that pleading. Count three of the revised complaint alleges retaliation, but the claimed retaliatory actions consist of reducing the plaintiff's income and benefits because he filed a grievance with the college's Human Resources Department on April 15, 1997.

The plaintiff's first amended complaint, which is the operative complaint, was filed on November 17, 1997, and does contain two counts with allegations of wrongful termination. Count three alleges that the plaintiff was retaliated against, in violation of section 46a-60(a) of the General Statutes, for filing grievances with his employer and for filing a complaint with the Attorney General of Connecticut seeking an investigation into the college's use of bequest funds. Count nine is titled "wrongful discharge" and claims the college terminated the plaintiff as a result of his whistle-blowing activities.

On January 7, 2000, the defendants moved for summary judgment on all fifteen counts of the plaintiff's first amended complaint. The plaintiff filed a withdrawal of count three of the operative complaint on March 23, 2000, the date of oral argument on this motion. The court now addresses the remaining fourteen counts. [FN1]

> FN1. The decision was rendered from the bench before trial, which resulted in a defendant's verdict. An appeal was timely filed by plaintiff, and the court prepared this memorandum in compliance with Practice Book § 64-1. Before the final draft was filed, the appeal was withdrawn. The decision is filed nonetheless, in the hope it will be of some interest to the bench and bar.

"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ... In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party ... Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact ... a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue ... It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact ... are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citations omitted; internal quotation marks omitted.) *Home Ins. Co. v. Aetna Life & Casualty Co.,* 235 Conn. 185, 202-03, 663 A.2d 1001 (1995). "A 'material' fact has been defined adequately and simply as a fact which will make a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
28 Conn. L. Rptr. 47
(Cite as: 2000 WL 1337665 (Conn.Super.))

Page 2

difference in the result of the case." *Catz v. Rubenstein,* 201 Conn. 39, 48, 513 A.2d 98 (1986).

Count one is a claim for breach of an express contract directed against the college. It is alleged that the terms and conditions in the college's employee handbook constitute an express contract between the plaintiff and the college. In the briefs filed by the parties, and at the time of oral argument on this motion, references were made to various provisions contained in the 1994 handbook. The 1994 handbook, at page 6, provides that "[t]his handbook is not a contractual document." Further, language that the handbook is "informational rather than contractual" is found at page 7. At page 19 is the statement that "[n]othing in this handbook is intended as a contract of employment." Page 19 also contains the statement that "[w]e adhere to the principle of employment at will, which allows either party to terminate the employment relationship at any time." Finally, page 58 of the handbook includes the following statements: "All employment with the College is not for any specific period of time, but rather is considered to be at will. You may terminate your employment at any time, and the College may terminate your employment at any time for any legal purpose." The defendants claim these statements are contract disclaimers.

*2 The plaintiff counters by referencing various general provisions in the 1994 handbook speaking to fair and equitable working conditions at the college and various alleged oral representations made by President Gaudiani concerning the college's obligation to treat its employees fairly and equitably. The plaintiff indicates that the college's written offer of employment to him in 1989 expressly states that employment is subject to the terms and conditions as set forth in the handbook. These written and oral statements, according to the plaintiff, constitute an express contract obligating the college to treat him fairly and equitably. The plaintiff contends that the contract disclaimers in the handbook are ineffective because of the inconspicuous location of the language, the failure to print them in bold face print and larger type, and the failure to reference them in the table of contents.

"If [an] agreement is shown by the direct words of the parties, spoken or written, the contract is said to be an express one." *Boland v. Catalano,* 202 Conn. 333, 336-37, 521 A.2d 142 (1987). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact; (Citations omitted) '[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law.' " (Citations omitted.) *Levine v. Massey,* 232 Conn. 272, 277-78, 654 A.2d 737 (1995).

Whether statements found in an employee handbook can be the basis for finding the existence of a contract between the employer and the employee is an issue which has been addressed in two Connecticut Supreme Court decisions. In *Finley v. Aetna Life & Casualty Co.,* 202 Conn. 190, 199 n. 5, 520 A.2d 208 (1987), the Court noted that "[b]y eschewing language that could reasonably be construed as a basis for a contractual promise, or by including appropriate disclaimers of the intention to contract, employers can protect themselves against employee contract claims based on statements made in personnel manuals."

In *Gaudio v. Griffin Health Services Corporation,* 249 Conn. 523, 535, 733 A.2d 197 (1999), the Court revisited this issue.

*3 We have stated with unambiguous clarity that "employers can protect themselves against employee contract claims based on statements made in personnel manuals" by following either (or both) of two simple procedures: (1) "eschewing language that could reasonably be construed as a basis for a contractual promise"; and/or (2) "Including appropriate disclaimers of the intention to contract ..." *Finley v. Aetna Life & Casualty Co., supra,* 202 Conn. 199 n. 5.

The court finds as a matter of law that general statements made orally and in writing concerning fair and equitable working conditions and treatment of employees do not rise to the level of an express contract, particularly in light of the explicit contract disclaimers contained in the handbook. The statements in the employee handbook concerning at will employment and the absence of contract formation are sufficient disclaimers to preclude a valid claim for an express contract between the parties. The fact that the plaintiff's offer of employment provides that such employment is subject to the "terms and conditions" set forth in the handbook does not warrant a different conclusion.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
28 Conn. L. Rptr. 47
**(Cite as: 2000 WL 1337665 (Conn.Super.))**

Page 3

The "terms and conditions" include the express provisions that employment is "at will" and that the handbook is "informational rather than contractual." The defendants' motion for summary judgment is granted as to the first count of the plaintiff's first amended complaint.

Count four is a claim for fraudulent misrepresentation directed against the college. In this count, the plaintiff alleges that the defendant's oral and written representations were of facts relating to the conditions of plaintiff's employment; that said representations were untrue and known by the defendant to be untrue; that the representations were made for the purpose of inducing the plaintiff to use the grievance procedures; and that the plaintiff did in fact use the grievance procedures because of the representations. The count is fatally deficient, however, in that there are no allegations of any damage suffered by the plaintiff, as a result of the alleged fraudulent misrepresentations, i.e., the plaintiff does not allege that he was terminated because he utilized the grievance procedure. The complaint is legally insufficient to state a cause of action for fraudulent misrepresentation against the college and, accordingly, the defendants' motion for summary judgment is granted as to count four of the first amended complaint.

Count eight is a claim for invasion of privacy directed against the college. It is alleged that the defendant violated section 31-128f of the General Statutes, which prohibits an employer's disclosure of information from an employee's personnel file, and that by doing so the college invaded the plaintiff's privacy. A review of the Personnel Files Act, Conn. Gen.Stat. Sections 31-128a, *et seq.*, reveals no provision authorizing a private cause of action for claimed violations. "When the legislature has authorized supplementary private causes of action, it has generally done so expressly." *Middletown v. Hartford Electric Light Co.,* 192 Conn. 591, 596, 473 A.2d 787 (1984). Although there are no appellate decisions addressing this issue as it applies to this particular statute, there are two superior court decisions which this court finds to be persuasive. See *Dais v. Laidlaw Transit, Inc.,* No. CV-95-0146079S, 16 CONN. L. RPTR. 392, 1996 WL 176370 (Conn.Super.); *Turzer v. Connecticut National* Bank, No. CV-91-0279671 S, 5 CONN. L. R PTR. 119, 1991 WL 213529 (Conn.Super.). Judges Ryan and Spear, respectively, concluded that an individual does not have a private cause of action for a violation of this statute. This court agrees and grants the defendants' motion for summary judgment as to count eight of the first amended complaint.

Count nine is a claim for wrongful discharge directed against the college. The plaintiff alleges he was terminated for filing grievances with the college (internal whistle-blowing activities) and for filing the complaint with the Attorney General (external whistle-blowing activities). It is claimed that by terminating the plaintiff for these lawful whistle-blowing activities, the defendant has violated an important public policy of the state of Connecticut.

*4 As recognized in the case of *Sheets v. Teddy Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980), an employee terminable at will may bring a valid claim for wrongful discharge if his termination contravenes an important public policy. This constitutes a narrow exception to the traditional rules governing employment at will.

Given the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception. Nevertheless, the plaintiff has not alleged that his discharge violated any explicit statutory or constitutional provision. Nor has he alleged that his dismissal contravened any judicially conceived notion of public policy.

*Morris v. Hartford Courant Co.,* 200 Conn. 676, 680, 513 A.2d 66 (1986).

In the present case, the plaintiff cites no statutory or constitutional provision in this count which has been violated by his termination. He claims his filing of grievances with the college constitutes an internal whistle- blowing activity and that termination for doing so contravenes an important public policy of this state. This court finds as a matter of law that the *Sheets* public policy exception does not apply under these circumstances to the plaintiff's utilization of the grievance procedures as outlined in the handbook. Such activities do not implicate a public policy nor do they rise to the level of importance mandated by this narrow exception.

With respect to the filing of the complaint with the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
28 Conn. L. Rptr. 47
(Cite as: 2000 WL 1337665 (Conn.Super.))

Page 4

Attorney General, the plaintiff specifically characterizes this action as a "whistle-blowing" activity. Section 31-51m of the General Statutes is a statutory remedy for persons wrongfully discharged for reporting a suspected violation of any state or federal law or regulation to a public body. Any employee discharged, disciplined or other-wise penalized by his employer for doing so may, after exhausting available administrative remedies, bring a civil action within 90 days of the date of the final administrative determination or within 90 days of such violation, whichever is later. Having an adequate statutory remedy, the plaintiff cannot bring a separate cause of action for wrongful discharge based upon his claimed whistle-blowing activities. See *Atkins v. Bridgeport Hydraulic Co.,* 5 Conn.App. 643, 648, 501 A.2d 1223 (1985); *Menard v. People's Bank,* No. CV-97-0544627S, 21 CONN. L. RPTR. 597, 1998 WL 177536 (Conn.Super.).

If it is plaintiff's contention that this lawsuit constitutes the action filed under section 31-51m (there is no statutory reference in count nine), then plaintiff failed to file the claim within the requisite statutory time period. As previously noted, the plaintiff filed his lawsuit in July of 1997, prior to his discharge from employment on August 5, 1997. His revised complaint, filed on September 2, 1997, does not contain a count for wrongful discharge based upon the plaintiff's whistle-blowing activities. More than 90 days after his discharge, count nine of the operative complaint was filed on November 17, 1997. He had already exhausted his administrative remedies by filing grievances and receiving adverse decisions from the college prior to his termination on August 5, 1997. For this reason, the plaintiff had 90 days from August 5, 1997 to bring a claim pursuant to section 31-51m of the General Statutes. He did not do so. Having an adequate statutory remedy, he cannot now bring a common law *Sheets* action based upon his alleged whistle-blowing activities. Accordingly, the defendants' motion for summary judgment as to count nine of the first amended complaint is granted.

*5 Counts eleven and fourteen are claims for intentional infliction of emotional distress directed against the college and the individual defendant, respectively. Four elements must be established in order for a plaintiff to prevail on such a claim: 1) the defendant intended to inflict emotional distress or he knew or should have known that emotional distress was a likely result of his conduct; 2) the conduct was extreme and outrageous; 3) the defendant's conduct was the cause of the plaintiff's distress; and 4) the plaintiff's emotional distress was severe. *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986).

"Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy [the elements outlined in *Petyan v. Ellis, supra* ] is a question, in the first instance, for [the] court. Only when reasonable minds can differ does it become an issue for the jury. *Reed v. Signode Corporation,* 652 F.Supp. 129, 137 (D.Conn.1986); 1 Restatement (Second), Torts sec. 46, comment (h) (issue of extreme and outrageous conduct) and comment (j) (issue of severe emotional distress)." *Mellaly v. Eastman Kodak Co.,* 42 Conn.Supp. 17, 18-19, 597 A.2d 846 (1991) (Berdon, J.). Conduct that is merely insulting or displays bad manners or results in hurt feelings is not sufficient to form the basis for an action based upon intentional infliction of emotional distress. *Id.,* 19, 597 A.2d 846; *Brown v. Ellis,* 40 Conn.Supp. 165, 484 A.2d 944 (1984) (McDonald, J.).

An examination of the affidavits and other documentation submitted by the plaintiff in opposition to this motion for summary judgment does not reveal actions amounting to the extreme and outrageous conduct necessary to support an action for intentional infliction of emotional distress. Although plaintiff's brief references certain actions claimed to constitute outrageous conduct, most of the referenced actions are not described in any of the submitted affidavits or in certified excerpts from depositions. Moreover, while the alleged conduct may have been unprofessional and insulting to the plaintiff, it does not rise to the level of the extreme and outrageous conduct required for this cause of action. Furthermore, the plaintiff's submissions fall to indicate any symptoms or conditions suffered by plaintiff which would support the severe emotional distress alleged in his complaint. For these reasons, the court grants the defendants' motion for summary judgment as to counts eleven and fourteen of the first amended complaint.

Count twelve is a claim for breach of the implied covenant of good faith and fair dealing directed

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
28 Conn. L. Rptr. 47
**(Cite as: 2000 WL 1337665 (Conn.Super.))**

Page 5

against the college. Our Supreme Court discussed this cause of action at length in the case of *Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 572, 479 A.2d 781 (1984).

**\*6** Although we endorse the applicability of the good faith and fair dealing principle to employment contracts, its essence is the fulfillment of the reasonable expectations of the parties. Where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right. Like other contract provisions, which are unenforceable when violative of public policy, the night to discharge at will is subject to the same restriction. We see no reason presently, therefore, to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves "impropriety ... derived from some important violation of public policy." *Sheets v. Teddy's Frosted Foods, Inc., supra,* 475. Whether a claim resulting from such a discharge is framed in tort or in contract should make no difference with respect to the issue of liability.

Because this court has already determined that the allegations of this complaint do not support a public policy exception, the court grants the defendants' motion for summary judgment as to count twelve of the first amended complaint.

Count fifteen is a claim for aiding and abetting directed against the individual defendant. It is alleged that Ms. Matthews aided and abetted the college in breaching its contract with the plaintiff, negligently misrepresenting the terms of the plaintiff's employment to the plaintiff, and in wrongfully discharging the plaintiff. It is further claimed that Ms. Matthews' actions in aiding and abetting the college resulted in harm to the plaintiff.

"A common law claim for aiding and abetting a statutory violation or tort has been recognized by [our] Supreme Court in *Carney v. DeWees,* [136 Conn. 256, 262, 70 A.2d 142 (1949) ], and approved in *Slicer v. Quigley,* 180 Conn. 252, 259, 429 A.2d 855 (1980) ... [A] person is liable if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Dudrow v. Ernst & Young, LLP,* No.

XO1-CV-98-0144211, 23 CONN. L. RPTR. No. 7, 225, 228 (Conn.Super.1998) (Hodgson, J.). The plaintiff's operative complaint is devoid of such allegations and is, therefore, legally insufficient to state a cause of action for aiding and abetting against the individual defendant. Accordingly, the defendants' motion for summary judgment is granted as to count fifteen of the first amended complaint.

The court finds there are genuine issues as to material facts with respect to counts two, five, six, seven, ten and thirteen of the first amended complaint and therefore denies the defendants' motion for summary judgment as to those counts.

Conclusion

**\*7** The defendants' motion for summary judgment is granted as to counts one, four, eight, nine, eleven, twelve, fourteen and fifteen of the plaintiff's first amended complaint. The defendants' motion for summary judgment is denied as to counts two, five, six, seven, ten and thirteen of the plaintiff's first amended complaint.

2000 WL 1337665 (Conn.Super.), 28 Conn. L. Rptr. 47

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

http://print.westlaw.com/delivery.html?dest=atp&dataid=B005580000004243000224069...   10/31/2003

RECEIVED
JUN 03 2002
BINGHAM DANA LLP

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURIE LABONIA ) | CASE NO. 3:01CV02399(RNC) |
| ) | |
| v. ) | |
| ) | |
| DORAN ASSOCIATES, LLC., ET AL. ) | FEBRUARY 25, 2002 |

## MOTION TO DISMISS

Defendants Doran Associates, LLC d/b/a Gardenside Terrace and Christian Shelton hereby move to dismiss portions of the complaint against them pursuant to Fed. R. Civ. P. 12(b)(6), in the following respects:

1. Defendant Shelton moves that the claims of discriminatory discharge against him

May 30, 2002.   Laurie Labonia v. Doran Associates, LLC, et. al.
                3:01CV2399 (RNC)

Re: Defendants Doran Associates, LLC and Christian Shelton's motion to dismiss [18-1]

Granted for substantially the reasons set forth in movants' papers. The discriminatory discharge claim against defendant Shelton in count two is dismissed because Conn. Gen. Stat. §46a-60(a)(1) does not impose liability on individual employees. Perodeau v. City of Hartford, 259 Conn. 729, 744 (2002). The intentional infliction of emotional distress claim against defendants Shelton and Doran in count four is dismissed because their alleged conduct was not "extreme and outrageous" within the meaning of this tort. See Appleton v. Board of Education, 254 Conn. 205, 210-11 (2000). Plaintiff alleges that these defendants took no action on her complaints concerning defendant Pellecchia's misconduct, contacted her at home several times after Pellechia assaulted her, and terminated her employment in retaliation for her complaints against Pellechia by means of a letter containing false reasons. Such conduct is not actionable under the strict standard that governs this cause of action in Connecticut. Cf. Dollard v. Board of Education, 63 Conn. App. 550 (2001). The negligent infliction of emotional distress claim in count five is also dismissed. Connecticut recognizes such a claim only in the context of the termination process. Perodeau, 259 Conn. at 762-63. "The mere termination of employment, even where it is wrongful, is ... not, by itself, enough to sustain a claim for negligent infliction of emotional distress." Parsons v. United Technologies Corp., 243 Conn. 66, 88-89 (1997). Defendants' alleged conduct in connection with plaintiff's termination was not so egregious as to support a claim for negligent infliction of emotional distress under Connecticut law. So ordered.

Robert N. Chatigny U.S.D.J.