UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURIE LABONIA | : |
| VS. | : NO. 3:01CV2399 (MRK) |
| DORAN ASSOCIATES, ET AL. | : NOVEMBER 17, 2003 |

### PLAINTIFF'S CONSOLIDATED LOCAL RULE 56(a)2 STATEMENT

**A** *RESPONSE TO LOCAL RULE 56(a)1 STATEMENT OF DEFENDANTS COMPASS GROUP AND PELLACCHIA*

1. Agree.

2. Agree.

3. Agree.

4. Agree.

5. Agree.

6. Agree.

7. Agree.

8. Agree.

1

9. Agree.

10. Agree.

11. Agree.

12. Agree.

13. Agree.

14. Agree.

15. Agree that plaintiff supervised the wait staff. Otherwise, disagree. (Plaintiff's 7/30/03 deposition transcript, pp. 361-68)

16. Disagree. (Id. pp. 362-68, 391, 395, 401-02; Plaintiff's CHRO affidavit, ¶ 12)

17. Disagree. (Ibid.)

18. Agree.

19. Disagree. (Plaintiff's CHRO affidavit, ¶ 13; Plaintiff's 7/30/03 deposition transcript, p. 377)

20. Agree.

21. Agree.

22. Agree.

2

23. Disagree that there was an "argument between Pellecchia and Labonia" for the reasons stated in response to Paragraph 19. The plaintiff did not argue with Pellecchia.

24. Disagree with the word "permitted"; otherwise, agree.

25. Agree.

26. Disagree. (Plaintiff's 7/30/03 deposition transcript, pp. 360-61, 402-03)

27. Disagree. (Ibid.)

28. Agree with first sentence and third sentence. Otherwise, disagree. (Ibid.)

29. Agree.

30. Agree.

31. Agree.

32. Agree.

**B    PLAINTIFF'S RESPONSES TO LOCAL RULE 56(a)1 STATEMENT OF DEFENDANTS DORAN ASSOCIATES AND SHELTON**

1. Agree.

2. Agree.

3. Agree.

3

4. Agree.

5. Agree.

6. Agree.

7. Agree.

8. Agree.

9. Agree.

10. Agree.

11. Agree.

12. Agree.

13. Agree.

14. Agree.

15. Agree.

16. Agree.

17. Agree.

18. Agree.

19. Agree.

20. Agree.

4

21. Agree.

22. Agree.

23. Agree.

24. Agree.

25. Agree.

26. Agree.

27. Agree.

28. Agree.

29. Agree.

30. Agree.

31. Agree.

32. Agree.

33. Disagree. (Plaintiff's 7/30/03 deposition transcript, pp. 361-68, 391, 395, 401-02; Plaintiff's CHRO affidavit, ¶ 12)

34. Disagree. (Ibid.)

35. Disagree. (Ibid.)

36. Agree.

5

37. Agree that these were some, but not all, of the things about which the plaintiff complained. (Ibid.)

38. Disagree. (Ibid.)

39. Disagree. (Ibid.)

40. Agree.

41. Agree.

42. Agree.

43. Disagree. (Plaintiff's CHRO affidavit, ¶ 13)

44. Agree.

45. Agree.

46. Agree.

47. Agree.

48. Agree.

49. Agree.

50. Agree.

51. Agree.

52. Agree.

6

Case 3:01-cv-02399-MRK    Document 64    Filed 11/18/2003    Page 7 of 17

53. Disagree. (Plaintiff's 7/30/03 deposition transcript, pp. 360-61, 402-03)

54. Agree.

55. Disagree. (Ibid.)

56. Agree.

57. Agree.

58. Agree.

59. Agree.

60. Agree.

61. Agree.

62. Agree.

63. Agree.

64. Agree.

65. Agree.

66. Agree.

67. Agree.

68. Agree.

69. Agree.

7

70. Agree that Shelton discouraged the plaintiff from notifying the police. Otherwise, disagree. (Plaintiff's 3/26/03 deposition transcript, p. 154)

71. Agree.

72. Agree.

73. Agree.

74. Agree.

75. Agree.

76. Disagree. (Plaintiff's 7/30/03 deposition transcript, pp. 361-68, 391, 395, 401-02; Plaintiff's CHRO affidavit, ¶ 12)

77. Agree.

78. Agree.

79. Plaintiff has no knowledge.

80. Plaintiff has no knowledge.

81. Agree.

82. Agree.

83. Plaintiff has no knowledge.

84. Disagree. (Plaintiff's 3/26/03 deposition transcript, pp. 185-91)

85. Agree.

86. Disagree. (Ibid.)

87. Disagree. (Ibid.)

88. Disagree. (Ibid.)

89. Disagree. (Ibid.)

90. Agree.

91. Agree.

92. Agree.

93. Disagree. (Id. pp. 137, 139, 146, 150, 185-91))

94. Plaintiff has no knowledge.

95. Plaintiff has no knowledge.

96. Agree.

97. Agree.

98. Agree.

99. Agree.

100. Agree that a letter was sent and that Shelton drafted it; otherwise, disagree with any implication that the stated reasons were the true reasons. (Ibid.)

9

101. The letter is an exhibit and speaks for itself. Disagree with anything in this paragraph that differs from the words of Exhibit 13.

102. Exhibit 14 speaks for itself. Disagree with any characterization differing from the words of that exhibit.

103. Agree.

104. Agree.

105. Agree that there is no reason for the termination of the plaintiff other than her complaints to the police. Otherwise, disagree for the reasons stated in response to Paragraph 93.

106. Disagree. (Plaintiff's 3/26/03 deposition transcript, pp. 137, 139, 146, 150) Defendants' Exhibit 15 makes no such statement.

107. Disagree. Exhibit 15 makes no representation concerning the date and time of any of the plaintiff's complaints to the police.

108. Disagree. (Plaintiff's 3/26/03 deposition transcript, pp. 137, 139, 146, 150)

109. Disagree. (Ibid.)

110. Disagree. (Ibid.)

111. Disagree. (Ibid.)

10

112. Disagree. (Ibid.)

113. Disagree. (Ibid.)

114. Disagree. (Ibid.)

115. Disagree. (Ibid.)

116. Disagree. (Ibid.)

117. The CHRO complaint speaks for itself. Disagree with any attempted characterization thereof that does not recite the actual allegations thereof. (Exhibit 16)

118. See response to Paragraph 117.

119. See response to Paragraph 117.

120. Disagree. (Exhibit 17)

121. Disagree. (Plaintiff's deposition, pp. 340-49)

122. Disagree with the word "admitted"; otherwise, agree that the statement was made.

123. Agree.

124. Agree.

125. Agree.

126. Disagree. (Plaintiff's 7/30/03 deposition transcript, pp. 402-03)

11

127. Agree.

128. Agree.

129. Agree, but irrelevant. <u>University of Tennessee v. Elliott</u>, 478 U.S. 788, 795 (1986).

130. Agree.

131. Agree.

### C   PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1. The plaintiff was harassed by Pellecchia on several occasions. She complained about the harassment many times to Christian Shelton and Kim Maturo. (Plaintiff's CHRO Complaint, ¶ 5)

2. The plaintiff was terminated on December 14, 2000 in retaliation for complaining about sex discrimination and for exercising her legal right to file criminal charges against Pellechia. (Id. ¶ 6)

3. All of plaintiff's performance evaluations were satisfactory prior to her termination, andshel had previously received two increases in salary. (Id. ¶ 8)

4. As Dining Room Manager the plaintiff supervised all wait staff. All of her staff were women with the exception of one male. (Id. ¶ 9)

12

5. On several occasions prior to her termination, the plaintiff made complaints to her employer about the abusive and harassing conduct of Dan Pellecchia to the women wait staff including name calling and treating them in a condescending manner. (Id. ¶ 12)

6. On or about December 3, 2000, while plaintiff was working at Gardenside, she asked Dan Pellecchia about the unbearable working conditions, the heat in the kitchen, whereupon he physically grabbed the plaintiff, shook her, and held her against the wall in the kitchen while yelling at her. (Id. ¶ 13)

7. During the three days following the assault, the plaintiff's employer contacted her several times inquiring about what she was planning to do concerning the assault. (Id. ¶ 17)

8. Soon after her return to work, the plaintiff filed a criminal complaint against Dan Pellecchia for assault, unlawful restraint and breach of peace with the Branford Police Department. (Id. ¶ 18)

9. Subsequent to the plaintiff's complaint, the Officer informed her that he had interviewed Christian Shelton, and Dan Pellecchia's boss regarding the plaintiff's

complaint of criminal conduct. In addition, the plaintiff asked co-workers to describe what they had witnessed. (Id. ¶ 19)

10. Soon thereafter, the plaintiff received a call from the new Director of dining Services who informed the plaintiff that she was fired. (Id. ¶ 20)

11. The plaintiff contacted the Branford police by telephone, complaining about Pellecchia's assault upon her, on the very day of the assault. She thereafter visited Branford police headquarters and complained again in a more formal manner. All of this took place well before the date she received the telephone call firing her. (Plaintiff's 3/26/03 deposition transcript, pp. 137, 139, 146, 150)

12. Chris Shelton told the plaintiff that it wasn't a good idea to complain to the police. He said: "There's no need to call the cops. We can do our own investigation. I'm an attorney, sometimes they get a slap on the hand, and it's not going to do you any good. I can go through his employer and sit and talk to his boss." (Id. p. 154)

13. Plaintiff did not make the statements to Ms. Moran which the defendants claim she made, and which the defendants have presented, falsely, as the asserted reasons for terminating the plaintiff's employment. (Id. pp. 185-90)

14

14. Pellecchia subjected the plaintiff, and the other female employees, to a constant verbal barrage of cruel personal attacks and insults. Although he occasionally was unpleasant to a male employee, he concentrated his attacks upon the female employees and treated them much worse than he treated the males. (Id. p. 366; plaintiff's 7/30/03 deposition transcript, pp. 362-68, 391, 395-96, 401-02)

15. The plaintiff complained to Mr. Shelton repeatedly about Pellachia's abuse of her and the other female employees and specifically complained to Shelton that Pellachia was discriminating against the women in the way he abused them much more than the males. (Ibid.)

16. The plaintiff suffered severe emotional distress, including physical symptoms requiring medical treatment, as a result of Pellachia's abuse and as a result of the manner in which her employment was terminated. (Plaintiff's 7/30/03 deposition transcript, pp. 360-62, 385-86, 402-03)

THE PLAINTIFF

BY _____
JOHN R. WILLIAMS (ct00215)
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
Telephone: 203.562.9931
Fax: 203.776.9494
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney

**CERTIFICATION OF SERVICE**

This is to certify that a copy of the foregoing was sent on the date above stated to the following parties and counsel of record:

Andrew A. Cohen, Esq.              Attorney Nicole J. Anker
Letizia, Ambrose & Cohen, P.C.     Bingham Dana LLP
One Church Street                   One State Street
New Haven, CT 06510                 Hartford, CT 06103-3178

_____
JOHN R. WILLIAMS

16