FILED

Nov 20   | 26 PM '03

U S DISTRICT COURT
NEW HAVEN. CONN.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

LAURIE LABONIA                    :

VS.                               :        NO. 3:01CV2399 (MRK)
                                  :
DORAN ASSOCIATES, ET AL.          :        NOVEMBER 20, 2003

## CONSOLIDATED BRIEF IN OPPOSITION TO
## MOTIONS FOR SUMMARY JUDGMENT

### A.    *Introduction*

This is an action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

2000e, *et seq.*, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§

46a-60(a), *et seq.*, for employment discrimination, hostile working environment and

retaliation for complaining about the same, on the basis of the plaintiff's sex.[1]  The

plaintiff also sues under Connecticut common law for assault and battery, intentional

infliction of emotional distress and negligent infliction of emotional distress.

---

[1] The plaintiff agrees with the defendants that there is no basis for a claim
of disability discrimination in this case and that claim is withdrawn.

1

There are four defendants. Doran Associates, LLC, was the plaintiff's employer. Doran had a contractual arrangement with Compass Group USA, Inc., whereby Compass set up shop in Doran's facility and ran its food service operation. The defendant Chris Shelton headed Doran's facility and the defendant Pellecchia was a Compass employee who ran the kitchen inside Doran's facility.

The plaintiff contends that Pellecchia created a hostile working environment for her and all female employees on the wait staff that she headed. She contends that, although he was unpleasant to everybody, he targeted female employees for outrageous abuse over a long period of time. She has testified that she complained both to Shelton and to his assistant about this abuse, specifically complaining that Pellecchia was subjecting the women to disparate treatment and targeting them. Despite these express complaints of sex discrimination, Doran did nothing about it. Pellecchia's discriminatory behavior thus was permitted to continue until it culminated in a physical assault upon the plaintiff which even defense counsel admit was outrageous and unacceptable. At that point, Compass transferred Pellecchia to another facility. The plaintiff has testified that she immediately telephoned the police to report the assault. Over a period of days thereafter, Shelton attempted to dissuade her from following up on her complaint to the

2

police.  When the plaintiff went ahead and filed a formal complaint with the police, the police interviewed Shelton.  Promptly thereafter, Shelton ordered the plaintiff fired.  She was fired under a pretext, the false assertion that she had engaged in a disloyal telephone conversation with another Doran employee.[2]

All defendants have moved for summary judgment as to all aspects of this case. They have filed evidence in support of their motions.  The plaintiff has filed a consolidated Local Rule 56(a)2 Statement, with evidence attached, in opposition to both motions.  The plaintiff will not repeat here the detailed recitation of evidence contained in her Local Rule 56(a)2 Statement, with appropriate citations to the supporting evidence, and incorporates it by reference.

## B.    *Standard of Review*

"The standards governing summary judgment are well-settled.  Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue

---

[2] The foregoing is a summary of the evidence, from the plaintiff's perspective, as set forth in the Local Rule 56(a) Statements of all parties.

3

as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); *see also* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing."  <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158, 160 (1970).  "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of

4

persuasion at trial." <u>Trainor v. Apollo Metal Specialties, Inc.</u>, 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. <u>In re Unisys Savings Plan Litigation</u>, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. <u>Appleton v. Board of Education</u>, 254 Conn. 205, 757 A.2d 1059 (2000); <u>Cargill, Inc. v. Charles Kowsky Resources, Inc.</u>, 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. <u>Revak v. SEC Realty Corp.</u>, 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. <u>Appleton</u>, <u>supra</u>; <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Olin Corp. v. Consolidated Aluminum Corp.</u>, 5 F.3d 10, 14 (2d Cir. 1993); <u>United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103</u>, 998 F.2d 129 (2d Cir. 1993); <u>Union Pacific Corp. v. United States</u>, 5 F.3d 523, 525 (Fed. Cir. 1993); <u>Suarez v. Dickmont Plastics Corp.</u>, 229 Conn. 99, 105 (1994); <u>D.H.R.</u>

Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of

Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

"[T]he Second Circuit has cautioned that, in cases where motive, intent or state of mind are at issue, summary judgment should be used sparingly." Ruscoe v. Housing Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003) (Nevas, J.), citing Dister v. Continental Group, Inc., 859 F.2 1108, 1114 (2nd Cir. 1988). "[S]ummary judgment...is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent, and subjective feelings and reactions." Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 111, 639 A.2d 507 (1994). "A question of intent raises an issue of material fact, which cannot be decided on a motion

7

for summary judgment." <u>Picataggio v. Romeo</u>, 36 Conn. App. 791, 794, 654 A.2d 382 (1995).

**C.    _Plaintiff's Title VII and CFEPA Claims against Doran Associates_**

The plaintiff's evidence shows that she and the other female employees were subjected to a constant pattern of abuse far worse than, and different from, that inflicted upon male employees.  Her evidence further shows that she complained to her management about this disparate treatment, that the fact of the disparate abusive treatment was acknowledged by her bosses, but that no action was taken to protect her and in fact she was expressly told that she would have to endure it.  When the disparate treatment escalated to the point of a physical assault, the employer attempted to dissuade the plaintiff from complaining to the police.  When the plaintiff did complain to

8

the police, and the employer learned about the complaint, the plaintiff was fired.[3]  The

stated reasons for the termination of the plaintiff's employment were false.[4]

In a Title VII hostile work environment case, the plaintiff asserting that her

employer is liable for the unlawful actions of her co-workers is obligated to show that the

employer knew or should have known of the misconduct and unreasonably failed to take

prompt and appropriate corrective action.  Burlington Industries v. Ellerth, 524 U.S. 742

(1998); Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000); Fenton v. HiSAN,

Inc., 174 F.3d 827, 830 (6th Cir. 1999).  Evidence that the plaintiff told a supervisor about

the wrongdoing is sufficient to establish the notice element of this test.  Pollard v. E.I.

DuPont de Nemours Co., 213 F.3d 933, 943 (6th Cir. 2000); Breda v. Wolf Camera &

---

[3]
The employer claims alternatively that the plaintiff did not go to the police until after she was fired or that the employer did not learn about the complaint until after the firing had taken place. The employer, however, has no direct evidence to support this contention, since the police report is silent on the point of when the plaintiff complained. The plaintiff has submitted evidence that she complained to the police by telephone immediately after the assault took place, that she visited the police department and made a formal complaint days before she was fired, and that the police had interviewed her supervisor before she was fired.

[4]  Plaintiff's 3/26/03 deposition transcript, pp. 185-90)

9

<u>Video</u>, 222 F.3d 886 (11th Cir. 2000). "[I]f harassment continues after complaints are made, reasonable jurors may disagree about whether an employer's response was adequate." <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 72 (2d Cir. 2000); <u>Pascal v. Storage Technology Corp.</u>, 152 F. Supp. 2d 191, 210 (D. Conn. 2001). "Factors in assessing the reasonableness of remedial measures may include...whether or not the measures ended the harassment." <u>Carter v. Chrysler Corp.</u>, 173 F.3d 693, 702 (8th Cir. 1999). "If the evidence creates an issue of fact as to whether the employer's action is effectively remedial and prompt, summary judgment is inappropriate." <u>Richardson v. New York State Dep't of Correctional Service</u>, 180 F.3d 426, 440 (2d Cir. 1999), *quoting* <u>Gallagher v. Delaney</u>, 139 F.3d 338, 348 (2d Cir. 1998).

A hostile work environment harassment case, to succeed, requires evidence "that the workplace is permeated" to a degree "that is sufficiently severe or pervasive to alter the conditions of the victim's employment." <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 570 (2d Cir. 2000); <u>Mack v. Otis Elevator Co.</u>, 326 F.3d 116 (2nd Cir. 2003). However, "[i]t is not how long the sexual innuendos, slurs, verbal assaults, or obnoxious course of conduct lasts. The offensiveness of the individual actions complained of is also a factor to be considered in determining whether such actions are pervasive." <u>Carrero v. New</u>

10

York City Housing Auth., 890 F.2d 569, 578 (2d Cir. 1989).  See Howley v. Town of

Stratford, 217 F.3d 141 (2d Cir. 2000) (single incident of severe verbal abuse sufficient

to establish hostile environment case).  The court must consider "the totality of the

circumstances."  Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir.

2000).  "[W]hether an environment is 'hostile' or 'abusive' can be determined only by

looking at all the circumstances.  These may include the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

performance.  The effect on the employee's psychological well-being is, of course,

relevant to determining whether the plaintiff actually found the environment abusive.  But

while psychological harm, like any other relevant factor, may be taken into account, no

single factor is required."  Harris v. Forklift Systems, Inc., 510 U.S.17, 23 (1993).  See

Hostetler v. Quality Dining, Inc., 218 F.3d 798 (7th Cir. 2000) (employee's reaction to the

allegedly harassing conduct is relevant to, and may be dispositive of, determination

whether it created a hostile work environment).   "We have reminded district courts,

however, that 'the appalling conduct alleged in prior cases should not be taken to mark

the boundary of what is actionable....[T]here is neither a threshold magic number of

11

harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." *Id.* at 70, quoting Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 439 (2d Cir. 1999). "The fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." *Ibid.*, quoting Torres v. Pisano, 116 F.3d 625, 631 (2d Cir.), *cert. denied*, 522 U.S. 997 (1997).

Sexual harassment is not limited to sexual propositioning, although that of course is sufficient. "[O]ffensive language or behavior about women in general and women in the workplace, and non-sexual actions directed toward a plaintiff in order to interfere with her work...; isolated incidents occurring within her hearing of women being called 'heifers' and being degraded for their inability to accomplish tasks as well as men; being subjected to false alarms and practical jokes, such as her dinner being burned,...; and the Bible verse concerning women's proper submissive role being placed in her locker. This conduct constitutes severe and pervasive harassment....: Pollare v. E.I. DuPont de Nemours Co., 213 F.3d 933, 942 (6th Cir. 2000). A single physical act can be sufficient

12

to sustain a hostile work environment claim.  <u>Lockhard v. Pizza Hut</u>, 162 F.3d 1062 (10th Cir. 1998).

"In an employment discrimination case, the plaintiff has the burden of 'proving by the preponderance of the evidence a prima facie case of discrimination.'"  <u>Chambers v. TRM Copy Centers Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994), quoting <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981).[5]

"To make out a prima facie case, the plaintiff must show that:  (i) she is a member of a protected class; (ii) she was qualified for the position; (iii) the defendant took adverse action against her; and (iv) the adverse action occurred under circumstances giving rise to an inference of discrimination."  <u>Harper v. Metropolitan District Commission</u>, 134 F. Supp. 2d 479, 483 (D. Conn. 2001) (Covello, C.J.).  Stated another way, a plaintiff may make out a *prima facie* case "by showing that she is within a protected group; that she is qualified for the position; that she was subject to an adverse employment action...; and that a similarly situated employee not in the relevant protected

---

[5] A plaintiff need not necessarily prove a *prima facie* case to prevail, however.  "For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case."  <u>Swierkiewicz v. Sorema N.A.</u>, 122 S. Ct. 992, 997 (2002).

group received better treatment." <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 53 (2d Cir. 2001). "Alternatively, the fourth prong of the prima facie case may be satisfied if the plaintiff can demonstrate that the...adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in that class." <u>Farias v. Instructional Systems, Inc.</u>, 259 F.3d 91, 98 (2d Cir. 2001).

"To establish a prima facie case of disparate treatment, a plaintiff must show, *inter alia*, that she was subjected to adverse employment action, under circumstances giving rise to an inference of prohibited discrimination." <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 356 (2d Cir. 2001).

"The plaintiff's burden of establishing a prima facie case of employment discrimination is 'not onerous.' <u>Burdine</u>, 450 U.S. at 253. Indeed, "[t]he nature of the plaintiff's burden of proof is <u>de minimis</u>." <u>Harper v. Metropolitan District Commission</u>, 134 F. Supp. 2d 470, 483 (D. Conn. 2001) (Covello, C.J.), citing <u>Dister v. Continental Group, Inc.</u>, 859 F.2d 1108, 1114 (2d Cir. 1988). "As we have often emphasized, the burden of establishing this prima facie case in employment discrimination cases is 'minimal.'" <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 53 (2d Cir. 2001). Direct evidence

14

is not necessary, and a plaintiff charging discrimination against an employer is usually

constrained to rely on the cumulative weight of circumstantial evidence. See Rosen v.

Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) ('An employer who discriminates is

unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file,

attesting to a discriminatory intent.')." Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d

Cir. 1997). Often, "[w]hat is most revealing of the true intention behind the [adverse

employment action] is the timing." Harper v. Metropolitan District Commission, 134 F.

Supp. 2d 470, 489 (D. Conn. 2001) (Covello, C.J.).

     The employer, of course, may seek to rebut the prima facie case by proof of a

legitimate nondiscriminatory reason for the adverse employment action.  If the plaintiff is

able to persuade the jury that the employer's explanation is false, however, that fact,

combined with the prima facie case, is sufficient to permit a jury to find intentional

discrimination.  "Proof that the defendant's explanation is unworthy of credence is...one

form of circumstantial evidence that is probative of intentional discrimination, and it may

be quite persuasive....In appropriate circumstances, the trier of fact can reasonably infer

from the falsity of the explanation that the employer is dissembling to cover up a

discriminatory purpose.  Such an inference is consistent with the general principle of

15

evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 108 (2000), quoting Wright v. West, 505 U.S. 277, 296 (1992). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit...the trier of fact to infer the ultimate fact of intentional discrimination...[and] no additional proof of discrimination is required." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). "[O]nly occasionally will a *prima facie* case plus pretext fall short of the burden a plaintiff carries to reach a jury on the ultimate question of discrimination...." Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94 (2d Cir. 2001). Like all other aspects of an employment discrimination case, the falsity of the employer's asserted legitimate nondiscriminatory reasons for its actions may be inferred from circumstantial evidence. See Robertson v. Sikorsky Aircraft Corp., 258 F. Supp. 2d 33 (D. Conn. 2003) (Goettel, J.).

16

Here, there is sufficient evidence to support an inference that the plaintiff was fired because she complained to the police about the assault upon her by defendant Pellacchia. The evidence clearly supports a finding that the assault was itself the culmination of a sexually hostile working environment permitted to continue, and to escalate, because of the deliberate inaction of the employer. The plaintiff's police complaint, thus, was a complaint about the Title VII and CFEPA violation.

"In order to defeat a motion for summary judgment addressed to a claim of retaliation..., the plaintiff must first present sufficient evidence to make out a prima facie case, that is, evidence sufficient to permit a rational trier of fact to find (1) that she engaged in protected participation or opposition..., (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action....The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001). See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (discharge less than two months

17

after plaintiff complained to management and ten days after she filed complaint with

state human rights office established *prima facie* case of causal relationship); Lovejoy-

Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir. 2001) (discharge less than

three months after complaint filed and less than one month after service upon employer

established *prima facie* case).

The courts will be very reluctant to grant summary judgment in favor of an

employer in any employment discrimination case "when, as here, the employer's intent is

at issue." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2nd Cir. 1998).

The evidence in this case sufficiently supports a hostile environment claim and a

retaliatory discharge claim against the employer pursuant to Title VII and the CFEPA.

**D.    *Plaintiff's State Common Law Claims against Doran and Shelton*[6]**

The plaintiff also sues Doran and Shelton for discharge in violation of Connecticut

law.  Section 31-51m(b) of the Connecticut General Statutes provides: "No employer

shall discharge...any employee because the employee...reports, verbally or in writing, a

---

[6] The plaintiff agrees that defendant Shelton is not subject to suit under
either Title VII or the Connecticut Fair Employment Practices Act.

18

violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body...." Section 31-51q of the Connecticut General Statutes provides: "Any employer... who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages."

The plaintiff already has explained, in Section C of this brief, why her evidence plainly supports a conclusion that the defendants Doran and Shelton discharged her because she filed a legitimate criminal complaint with the police. If her evidence is credited by a jury, as it could be, she clearly has established their liability under these statutes.

### E.    *Plaintiff's State Common Law Claims against Pellacchia and Compass*[7]

The plaintiff's common law claims against Pellacchia and his employer Compass

are three: assault and battery, intentional infliction of emotional distress and negligent

infliction of emotional distress.

The defendants' brief does not address the assault and battery claim, probably

because defendant Pellacchia obviously assaulted the plaintiff in the course of his job

duties and obviously inflicted physical injuries upon her.  This is classical common law

assault.  Lentine v. McAvoy, 105 Conn. 528, 531 (1927); Morris v. Platt, 32 Conn. 75, 87

(1864).

As to the claim of intentional infliction of emotional distress, the defendants argue

that Pellacchia's conduct was not "extreme and outrageous" within the meaning of the

law.  The conduct in question includes not only the assault but the longstanding pattern

of outrageous verbal abuse which preceded it.  Precisely this sort of misconduct has in

prior cases been held to constitute the very "extreme and outrageous" behavior

contemplated by the law.  In Berry v. Loyseau, 223 Conn. 786 (1992), an employee was

---

[7] The plaintiff agrees that Compass Group was not her "employer" and
therefore is not subject to suit by her under either Title VII or the CFEPA.

threatened by one employer and assaulted by another. In <u>Benton v. Simpson</u>, 78 Conn.

App. 746 (2003), a supervisor's repeatedly telling three subordinates that they "made

him sick" and were a "cancer" in the company not only was sufficiently extreme and

outrageous to justify litigation but was sufficient to establish probable cause for a

$500,000 attachment of the supervisor's personal assets. In <u>Brown v. Ellis</u>, 40 Conn.

Sup. 165 (1984), the plaintiff's job supervisor had given him work assignments in

disregard of his fear of heights.[8] In <u>Mellaly v. Eastman Kodak Co.</u>, 42 Conn. Sup. 17

(1991), the plaintiff's supervisor had taunted him about his alcoholism. In <u>Nance v. M.D.</u>

<u>Health Plan, Inc.</u>, 47 F. Supp. 2d 276 (D. Conn. 1999), the court held that an employer's

questioning that signaled to others its belief that the plaintiff was a homosexual could be

found sufficiently "extreme and outrageous" in the eyes of a jury to constitute a basis for

a finding of intentional infliction of emotional distress. In <u>Caesar v. Hatford Hospital</u>, 46

F. Supp. 2d 174 (D. Conn. 1999), the court held that an employer's acts in discriminating

---

[8] "An additional consideration in determining whether extreme and outrageous behavior exists is whether the plaintiff is particularly susceptible to emotional distress because of some physical or mental condition or peculiarity; behavior that otherwise might be considered merely rude, abrasive or inconsiderate may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional turmoil." <u>Honaker v. Smith</u>, 256 F.3d 477, 492 (7th Cir. 2001).

against the plaintiff and making false reports regarding her to the Department of Public

Health were sufficiently "extreme and outrageous" to state a claim for intentional

infliction of emotional distress.  In <u>Kennedy v. Coca-Cola Bottling Co. of New York, Inc.</u>,

170 F. Supp. 2d 294, 298 (D. Conn. 2001), the court held that the actions of an

employer in disclosing to the employees and supervisors involved in wrongdoing the

plaintiff's complaints that they had engaged in a variety of illegal or improper activities at

the workplace, with the result that the plaintiff suffered retaliation and harassment, was

conduct sufficiently "extreme and outrageous" to go to a jury.  A cause of action for

intentional infliction of emotional distress was stated in an employment context when the

plaintiff alleged that his supervisor "severely harassed and mistreated [him], and created

a situation where he was denied effective assistance in the performance of his job, open

communication and fairness, unfairly placed on a 60-day performance improvement plan

and then constructively fired."  <u>Grossman v. Computer Curriculum Corp.</u>, 131 F. Supp.

2d 299, 310-11 (D. Conn. 2000).  A verbal threat to commit an assault may be "extreme

and outrageous" within the law's meaning.  RESTATEMENT (SECOND) OF TORTS §

31 (1965); <u>American Progressive Life & Health Ins. Co. of N.Y. v. Better Benefits, LLC</u>,

35 Conn. L. Rptr. No. 12, 435, 437 (2003) (*dicta*) (Blue, J.).  Assigning the plaintiff to a

22

work station close to that of a co-employee who had threatened her and whom she feared was held sufficiently "extreme and outrageous" to survive a motion to strike in Karanda v. Pratt & Whitney Aircraft, 24 Conn. L. Rptr. 521 (1999). Obviously the facts of this case meet the Connecticut test for intentional infliction of emotional distress.

Negligent infliction of emotional distress is even more easily established. All the plaintiff need prove is that the defendant knew or should have known that its conduct – which need not be extreme and outrageous – was of a kind which would cause a person of ordinary sensibilities to suffer a level of emotional distress sufficiently severe that it could result in physical illness, and that some sort of emotional distress actually resulted. Chieffalo v. Norden Systems, Inc., 49 Conn. App. 474, 480 (1998); Barrett v. Danbury Hospital, 232 Conn. 242, 261-62 (1995); Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 345-46 (1978). A recent Supreme Court case held that the elements of negligent infliction of emotional distress are: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003).

23

The defendants attempt to structure their negligent infliction of emotional distress as an employment-related claim, arguing that no such claim can survive unless it arises in the context of termination of employment and that the termination itself was uncommonly stressful.  Perodeau v. City of Hartford, 259 Conn. 729 (2002).  But these defendants already have persuasively argued that they were not the plaintiff's employer; accordingly, their Perodeau analysis fails.

### F.    There is no Workers' Compensation Bar to Plaintiff's Common Law Claims

Defendants Compass and Pellachia assert in exactly one sentence in the introductory portion of their brief that the "tort aspect of [the plaintiff's] case is based on theories which cannot be asserted against employers because they are preempted by the workers' compensation statute...."  Having failed to brief the claim, it must fail.

There is a fairly obvious reason, probably, why the defendants did not brief their claim: it is utterly without merit.  Of course there is no workers' compensation preemption of a claim for intentional, malicious wrongdoing.  Moreover, the defendants have established that they were not fellow employees of the plaintiff.  Finally, emotional distress not resulting from a physical injury was excluded from the workers'

24

compensation statute by P.A. 93-228's amendment to Gen. Stat. § 31-275(16).  *E.g.,*

Martell v. Prentice Hall, Inc., 23 Conn. L. Rptr. No. 5, 172 (1998) (Mihalakos, J.).


**G.**    **_Conclusion_**

    The motions for summary judgment must be denied.


          Respectfully submitted:

          JOHN R. WILLIAMS (ct00215)
          Williams and Pattis, LLC
          51 Elm Street, Suite 409
          New Haven, CT 06510
          Telephone: 203.562.9931
          Fax: 203.776.9494
          E-Mail: jrw@johnrwilliams.com
          Plaintiff's Attorney

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent on the date above stated to the following parties and counsel of record:

Andrew A. Cohen, Esq.
Letizia, Ambrose & Cohen, P.C.
One Church Street
New Haven, CT 06510

Attorney Nicole J. Anker
Bingham Dana LLP
One State Street
Hartford, CT 06103-3178

JOHN R. WILLIAMS

26