U.S. DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURIE LABONIA<br>Plaintiff | CASE NO: 3:01 CV 02399 (MRK) |
| V. | |
| DORAN ASSOCIATES, LLC, ET AL.<br>Defendant | DECEMBER 23, 2003 |

REPLY MEMORANDUM OF DEFENDANTS DORAN & SHELTON
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Although summary judgment is not granted lightly in a discrimination lawsuit, a plaintiff should not be allowed to proceed to trial on a shred of a factual dispute that, when evaluated in context, is unsupported by the evidence. Again, the U.S. Supreme Court has said that in employment discrimination cases, the district court should frame its summary judgment analysis within a variety of factors, such as the strength of plaintiff's prima facie case, the probative value of proof that the employer's explanation is false, and evidence in the employer's favor. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148-49 (2000). In reaching its decision, the Court also must keep in mind that factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are contained in plaintiff's submission in opposition to summary judgment, and that submission contradicts prior deposition testimony. See Bickerstaff v. Vassar College, 196 F.3d 435, 455 (2d Cir. 1999).

The brief submitted by plaintiff confirms that summary judgment is appropriate in this case. Supported only by her own CHRO affidavit and short, scattered excerpts from her deposition testimony, plaintiff's brief is devoid of detailed examination into the

1

particular facts of this case -- the examination required to make a reasoned determination as to summary judgment. On the whole, plaintiff's brief is little more than a summary of case law, introduced or summarized by broad and unsubstantiated pronouncements about the facts. The brief does nothing to refute defendants' showing that, as a matter of law, plaintiff is not a victim of sexual harassment and her employment was not terminated because of her gender or the assertion of any protected rights.

I.   PLAINTIFF'S BRIEF ARGUES IN SUPPORT OF CLAIMS THAT HAVE NOT BEEN MADE IN THIS LAWSUIT

At pages 18-19 of her brief, plaintiff argues that defendants Doran and Shelton are liable under sections 31-51m(b) and 31-51q of the Connecticut General Statutes. No such claim has been brought in this case. The operative complaint is the original complaint filed by plaintiff on December 21, 2001; a later motion to amend the complaint was denied. That original complaint does not include any cause of action under these state statutes.

II.  PLAINTIFF HAS NOT CREATED A GENUINE DISPUTE OF FACT AS TO WHETHER HER DISCHARGE WAS UNLAWFULLY RETALIATORY[1]

Plaintiff's theory of retaliation continues to be solely that her employment was terminated "because she complained to the police about the assault upon her by defendant Pellachia[sic]." Plaintiff's Brief at 17. However, her submission to the Court does not even substantiate a prima facie case of retaliation, and it surely does not establish that Gardenside Terrace's reasons for discharge were pretextual.

---

[1] Plaintiff appears to be limiting this claim to defendant Doran and is not asserting it against defendant Shelton. See Plaintiff's Brief at 18 n.6.

2

A. *Plaintiff Has No Evidence that Gardenside Terrace was Aware of A Supposed Police Complaint When It Decided to Discharge Her, or <u>Evidence of Any Link Between Such a Complaint and the Decision</u>*

As plaintiff concedes, a prima facie showing of unlawful retaliation requires her to provide evidence that: (1) she was engaged in protected activity; (2) her employer was aware of the activity; and (3) the employer took adverse action because of the protected activity. As established in detail in defendant's main brief and exhibits, she has made no such showing here, for the following reasons:

- There is no documentation of a police complaint or investigation of the November 3 incident until the police report dated <u>3:30 p.m.</u> on December 14. Even if one would assume that she had called the police earlier, there is no evidence that Gardenside Terrace or its representatives were aware of such a purported complaint. Plaintiff has submitted no evidence to rebut the sworn statements by Chris Shelton and Kim Maturo that they knew nothing about any police complaint when they met on December 13, 2000 or when the final decision was made to terminate plaintiff the following day.

- On December 12, two days before the documented police report, Megan Moran told Gardenside Terrace management that she wanted to discuss a phone call from plaintiff. Ms. Moran met with management on December 13 and reported that plaintiff had made a number of extremely disturbing statements; such statements violated Gardenside Terrace's policies. Contrary to the unsupported remark in plaintiff's statement of facts, she has testified under oath that she has no reason to doubt Ms. Moran met with the three managers as indicated in the memo about the meeting, and that she has no information to indicate that Ms. Moran did not report the things described in that memo to management. Depo. of Plaintiff at 181-87. (In fact, she admits talking to Ms. Moran on December 12. <u>Id</u>. at 177-80.)

- As a result of the meeting with Ms. Moran, Mr. Shelton decided to terminate plaintiff's employment the next day. He talked to Ms. Maturo and Ms. Rivas about this decision but decided to "sleep on it" and make the decision official on the morning of December 14, when Ms. Rivas called plaintiff to inform her that her employment was being terminated. Plaintiff has no contrary evidence on this point.

3

- Overall, plaintiff admits she has no evidence supporting her retaliation claim except for the time relationship between her police complaint and her discharge. Depo. of Plaintiff at 146-47. The only evidence in the record is that the complaint occurred <u>after</u> the termination of her employment.

Based on this undisputed evidence, plaintiff has not met her burden as to the remaining elements of a prima facie case of retaliatory discharge, and defendants are entitled to summary judgment on that cause of action.

B.  *Any Complaint By Plaintiff to the Police was not Protected Activity for Purposes of a Title VII Retaliation Claim*

In its main brief, Gardenside Terrace explained why a supposed police complaint by plaintiff would not be statutorily protected activity under Title VII. Plaintiff's sole response to this a short remark that "she complained to the police about the assault upon her" by Mr. Pellechia, that the assault was "the culmination of a sexually hostile working environment," and therefore that her alleged police complaint "was a complaint about the Title VII and CFEPA violation." Plaintiff's Brief at 17. Plaintiff has cited no support whatsoever that a complaint to the police about an alleged assault constitutes an assertion of rights under Title VII. Even assuming that plaintiff reported an alleged assault to the police, there is no evidence that such a report had any connection to gender. Therefore, such a report cannot be construed as a complaint about unlawful employment practices under Title VII. <u>See</u> <u>Wimmer v. Suffolk Cty. Police Dept.</u>, 176 F.3d 125, 136 (2d Cir. 1999) (upholding summary judgment on retaliation claim even if plaintiff had complained about racist behavior by police toward public, since such behavior would not be redressable under Title VII).

4

C.   *Even if Plaintiff has Set Forth a Prima Facie Case, there is No Evidence of Pretext*

Defendants are entitled to summary judgment on plaintiff's retaliation claim even if the Court concludes that she has established a prima facie case, because there has been absolutely no showing that Gardenside Terrace's reasons for discharge were pretextual. Gardenside Terrace has set forth substantial evidence that it terminated plaintiff's employment because of the unsolicited report by co-worker Megan Moran on December 13, that plaintiff had made a number of wrongful statements about management. Mr. Shelton and Ms. Maturo of Gardenside Terrace have stated under oath that they knew nothing about any police complaint by plaintiff when the decision was made to terminate her employment. Plaintiff has no evidence to undercut the credibility of these witnesses, and no evidence to rebut this explanation and link it to unlawful retaliation. As plaintiff admitted at her deposition, as to the allegation that she was discharged in retaliation for her police complaint, "There's no fact that supports it. It's just what I think happened." Depo. of Plaintiff at 147. Without an evidentiary showing that Gardenside Terrace's articulated, nondiscriminatory reason for discharge is pretextual, plaintiff's claim of retaliation must fail as a matter of law.

II.  PLAINTIFF HAS NOT MET HER BURDEN OF DEMONSTRATING A GENUINE FACTUAL DISPUTE AS TO HER CLAIMS OF GENDER DISCRIMINATION AND SEXUAL HARASSMENT

Plaintiff argues that she is entitled to proceed with her claims of sexual discrimination and harassment because the "evidence shows that she and the female employees were subjected to a constant pattern of abuse far worse than, and different from, that inflicted upon male employees." Plaintiff's Brief at 8 (emphasis added). She argues further that "the fact of the disparate abusive treatment was acknowledged by her

5

bosses" and nothing was done to protect her. Id. If such statements were supported by the evidence, then summary judgment might indeed be inappropriate. But the statements are false; they are mere remarks by counsel, unsupported by the particular record in this case. In fact, plaintiff's brief goes on to summarize the case law without a single discussion of the specific facts or evidence in this case. See Plaintiff's Brief at 9-18.

A close examination of plaintiff's statement of facts on this point is crucial. That pleading, like plaintiff's brief, includes a broad statement (at paragraph 14) that plaintiff and other female employees were subjected to a "constant verbal barrage of cruel personal attacks and insults." As already set forth in defendants' main brief, however, even the written statements solicited by plaintiff herself went to pains to show that Mr. Pellechia was mean and rude and nasty to both male and female employees, and plaintiff herself repeatedly testified to this effect. According to plaintiff, Mr. Pellechia was just rude and nasty -- to everybody.

The only evidence now submitted by plaintiff to suggest that Mr. Pellechia was motivated by gender is a few excerpts from her deposition. See Plaintiff's Statement of Facts ¶ 14. But these excerpts refer only briefly and vaguely to evidence that Mr. Pellechia treated females worse than males:

> Q.   . . . [W]hat, if anything, did Dan Pellechia ever say to you that suggested to you that he had a bias against you because you are a woman?
>
> A.   He really only talked to one other male very mean and nasty and not the other males, but I mean -- so he just, general, his nastiness toward people. But I really never seen him be really nasty to like the chefs. One incident he had with the dishwasher but I wasn't present at that time, I just heard about it. He was just nasty, call you names, stupid, idiot, why are you dumb, you know, just nasty.

6

Depo. of Plaintiff at 363. Plaintiff then remarked vaguely and in passing about "I think Dan calling people stupid, idiot, more so to the girls than he did to the chefs and the dishwashers." Id. at 391 (emphasis added). Her final statement on this point was that Mr. Pellechia "did it more to the woman, there was only one other person that he did it to, the dishwasher, on one occasion, therefore he did it every day to the waitresses and myself . . . ." Id. at 401.

In the first place, the only specifics in this testimony -- apparently the most favorable that plaintiff could offer on this point -- simply show that Mr. Pellechia treated plaintiff very badly by being nasty, and he treated a male dishwasher very nastily, and plaintiff herself had never actually seen him be nasty to the male chefs. (Of course, plaintiff had already testified that these male chefs complained about Mr. Pellechia's behavior as well. Depo. of Plaintiff at 88-89.) Such testimony does not nearly provide evidence that Mr. Pellechia treated females worse than males, or plaintiff herself worse because she was a female. And not only has plaintiff failed to submit a single statement from another witness to support this theory of disparate treatment, but in fact she herself solicited and submitted four written statements complaining that Mr. Pellechia (apparently known as "Hitler" to some) was nasty to everyone, including the male staff.[2] The remarks in plaintiff's pleadings about Mr. Pellechia's supposed persecution of females are simply not borne out by the evidence in this case.

---

[2] Plaintiff's only testimony about Mr. Pellechia treating females worse than males was given in the third and final session of her deposition, after her original attorney had been replaced and her earlier neutral statements about Mr. Pellechia's nastiness to everyone were already in the record.

7

Nor has plaintiff produced any evidence that she was subject to a hostile work environment from Mr. Pellechia or at Gardenside Terrace. As plaintiff points out, the Court should examine "the totality of the circumstances" in evaluating whether a hostile work environment existed. Even if we interpret plaintiff's actual evidence most favorably for her in this instance, however, the record would show only that Mr. Pellechia was rude and nasty to her on a number of occasions, that he was rude and nasty to other dining hall employees of both genders, and that on November 3 he physically "assaulted" her during an argument in the kitchen. There is no evidence to support a pattern of harassing behavior toward plaintiff as a woman, or such a pattern because she was a woman, or even evidence that the November 3 incident itself had anything to do with her gender. There has been no evidence that Gardenside Terrace was a workplace marked by pervasive harassment of women or anything like it, no evidence that the workplace was severely permeated with discriminatory intimidation, ridicule and insult, no showing of a sexually hostile or abusive environment. What there has been is a showing that a male employee, one who was apparently known for being generally nasty to the staff, became angry at a female employee during an argument and acted inappropriately -- including touching her in an apparently angry but non-sexual way. Such an incident may be wrong and regrettable, but it does not meet the standard for sexual harassment or gender discrimination, especially in light of plaintiff's lack of evidence that women were pervasively subjected to gender-based harassment by this individual or at Gardenside Terrace. This is particularly true in light of Gardenside Terrace's undisputed response to the incident: to make sure that Dan Pellechia never set foot inside its doors again. Given

8

the absence of evidence to support a claim of hostile work environment sexual harassment, defendants are therefore entitled to summary judgment on this claim as well.

## CONCLUSION

For the foregoing reasons, and based on the arguments and evidence offered by way of their original memorandum of law, defendants Doran Associates, LLC and Christian Shelton request that their motion for summary judgment be granted in its entirety.

DEFENDANTS
DORAN ASSOCIATES AND
CHRISTIAN SHELTON

Andrew A. Cohen, ct 07124
Letizia, Ambrose & Falls, P.C.
One Church Street
New Haven, CT 06510
(203) 787-7000

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed postage prepaid via first class mail on this 23rd day of December 2003 to all counsel and pro se parties of record as follows:

John R. Williams, Esq.
Willams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
Phone: 562-9931
Fax: 776-9494

Kimberly White
Bingham McCutchen LLP
One State Street
Hartford, CT 06103-3178
Phone: 860-240-2700
Fax: 860-240-2818

David Casey, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726
Phone: 617-951-8000
Fax: 617-951-8736

Andrew A. Cohen