U.S. DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

LAURIE LABONIA                :        CASE NO: 3:01 CV 02399 (MRK)
        Plaintiff             :
                              :
V.                            :
                              :
DORAN ASSOCIATES, LLC, ET AL. :
        Defendant             :        FEBRUARY 20, 2004


### SUPPLEMENTARY MEMORANDUM OF DEFENDANT DORAN
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I.   PLAINTIFF CANNOT USE CONCLUSORY STATEMENTS TO AVOID
     SUMMARY JUDGMENT, WITHOUT "CONCRETE PARTICULARS" TO
     SUPPORT THEM

        In a leading case on employment discrimination, the U.S. Court of Appeals for the

Second Circuit emphasized that "To allow a party to defeat a motion for summary

judgment by offering purely conclusory allegations of discrimination, absent any

concrete particulars, would necessitate a trial in all Title VII cases. Given the ease with

which these suits may be brought and the energy and expense required to defend such

actions," summary judgment is appropriate if a plaintiff cannot support his or her case

with specific and concrete evidence. Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)

(emphasis added).  The plaintiff in Meiri had alleged that she was the victim of

discrimination against Jews.  In sworn testimony, she stated that she "heard disparaging

remarks about Jews," which irrefutably constitutes some evidence of discrimination,

although obviously not the strongest or most credible.  Instead of providing concrete

particulars, however, plaintiff merely said "of course, don't ask me to pinpoint people,

1

times or places . . . . It's all around us." The Second Circuit held that such conclusory statements, even under oath and therefore technically admissible, were insufficient to satisfy the requirements of Rule 56, and insufficient to defeat summary judgment.

A much more recent decision from the Second Circuit confirms that not just some admissible evidence, but "concrete particulars," are required in order to deny summary judgment and send an employment discrimination case forward through the trial process. In Schwapp v. Town of Avon, 118 F.3d 106 (2d Cir. 1997), the plaintiff alleged that he was the victim of a racially hostile work environment.[1]  Plaintiff supported that claim with affidavits stating that the supervisor in question "was always making racial slurs about minorities . . . ."  The district court refused to rely on such statements because they constituted "bald assertions and legal conclusions," and the Second Circuit agreed with that ruling. Id. at 111.  By contrast, the Schwapp court also explained what kind of evidence should defeat a motion for summary judgment: evidence that was much more specific.  In Schwapp, this included testimony about a supervisor's statement about a "nigger bitch," testimony about a comment that "all the crimes in Avon were committed by blacks," and evidence of 10 specific racially hostile incidents of which the plaintiff was aware. 118 F.3d at 110-11.

The Schwapp decision provides an important dividing line between what kind of evidence can defeat a summary judgment motion and what kind cannot. "Some admissible evidence" of discrimination is not the standard for defeating summary judgment.  Under Schwapp, that evidence must be something more than a broad allegation, even under oath, that a supervisor or employer "was always making racial

---

[1] The Second Circuit has ruled that the same standards apply to claims of racially and sexually hostile work environments.  Whidbee v. Garzarelli Food Specialties, 223 F.3d 62, 69 n.6 (2d Cir. 2000).

slurs" -- more than a broad allegation, even under oath, that a supervisor was "always" disparaging or mistreating one group or another. It is this concrete particularity that provides the required link between the employer's alleged misbehavior and the protected class.

Another case in point is <u>Fagan v. New York State Elec. & Gas Corp.</u>, 186 F.3d 127 (2d Cir. 1999). Although <u>Fagan</u> was an age discrimination case rather than a harassment case, it also helps to flesh out the distinction between "concrete particulars" and "conclusory statements." The plaintiff in <u>Fagan</u> asserted, under oath, that his duties had been transferred to three younger managers. <u>Id</u>. at 131. Moreover, he specifically asserted that 60% of his supervisory duties had been transferred to a younger man. <u>Id</u>. at 131-34. He also asserted that a much younger employee had not been disciplined for involvement in the same misconduct that led to his own discipline, and moreover that this younger employee had been promoted. <u>Id</u>. at 131-32. Despite this admissible evidence, the Second Circuit affirmed the grant of summary judgment for the employer, ruling that plaintiff's sworn assertions about which duties were reassigned to which people were "unparticularized." <u>Id</u>. at 134. The court also differentiated evidence as to the younger co-worker's particular misconduct. Once again, under <u>Fagan</u>, the mere fact that a plaintiff offers <u>some identifiable</u> evidence in support of his allegations of discrimination does not necessarily avoid summary judgment. Instead, the court is obligated to analyze the particularity of that evidence, and to determine whether it is more than a mere "scintilla," and more than a mere "conclusory statement." <u>See also</u> <u>Murphy v. Board of Educ.</u>, No. 00-CV-6038L (W.D.N.Y., July 10, 2003) (granting summary judgment for employer on gender/race hostile work environment claim, despite plaintiff's "conclusory" allegation

3

that employer ignored violence against white teachers only); Fayson v. Kaleida Health, Inc., No. 00-CV-0860E (W.D.N.Y., Sept. 18, 2002) (granting summary judgment for employer despite plaintiff's evidence that employer paid her less than white males in same position, because she failed to produce specific evidence linking this wage disparity to discrimination).

These guidelines about "concrete particulars" call for summary judgment to be granted in this case. As already pointed out, the following excerpt from plaintiff's deposition appears to provide the strongest "evidence" that Mr. Pellechia treated females worse than males:

> Q.     . . . [W]hat, if anything, did Dan Pellechia ever say to you that suggested to you that he had a bias against you because you are a woman?
>
> A.     He really only talked to one other male very mean and nasty and not the other males, but I mean -- so he just, general, his nastiness toward people. But I really never seen him be really nasty to like the chefs. One incident he had with the dishwasher but I wasn't present at that time, I just heard about it. He was just nasty, call you names, stupid, idiot, why are you dumb, you know, just nasty.

Depo. of Plaintiff at 363 (emphasis added). Plaintiff then remarked vaguely and in passing about "I think Dan calling people stupid, idiot, more so to the girls than he did to the chefs and the dishwashers." Id. at 391 (emphasis added). Plaintiff's final statement on this point -- under a leading question from her own attorney, which was objected to -- was simply whether plaintiff had complained to management that Mr. Pellechia treated women "differently" from men. Id. at 401. To this question, plaintiff replied that Mr. Pellechia "did it more to the woman, there was only one other person that he did it to, the dishwasher, on one occasion, therefore he did it every day to the waitresses and myself . . . ." Id. at 401. Plaintiff was then asked what she complained to management about, and

4

she said she told Mr. Shelton that Mr. Pellechia called "us" stupid and idiots and dumb, but "that he wasn't saying it to Chris the chef or the other chef or just . . .to us. I don't know why but." Id. at 401-02 (emphasis added).

Such testimony should not be held to meet the requirement of "concrete particulars" to support a discrimination claim. In fact, it constitutes the opposite. Even here, having been given so many chances to articulate the basis for her discrimination claim with some specificity, plaintiff continues to characterize Mr. Pellechia not only as generally nasty, but in fact "very mean and nasty" to one other male, and apparently nasty to at least one other male dishwasher in ways that plaintiff cannot describe. Plaintiff says that Mr. Pellechia was meaner to "us" by calling "us" stupid, etc. -- but she never specifically identifies the "us" in question as women. (One of the waitstaff, Robert Lord, was a male, and both plaintiff and Mr. Lord complained about Mr. Pellechia's behavior to him.) Similarly, plaintiff says that Mr. Pellechia called "us" stupid, etc. but did not say such things "to Chris the chef or the other chef . . ." Plaintiff does not deny that, or even discuss whether, or to what extent, Mr. Pellechia was mean to the male dishwashers (one of whom she has already described as a victim of Mr. Pellechia). If plaintiff can defeat summary judgment on such a basis, it essentially means that any plaintiff can obtain a trial merely by adding the word "always" or "every day" to a paragraph of a complaint stating that some supervisor treated some group badly.

Another decision that bears on the meaning of "concrete particulars" is Brown v. Henderson, 257 F.3d 246 (2d Cir. 2001), which the Court emphasized during oral argument (by questioning why Brown does not require the denial of summary judgment in this case). It is true that the Brown court said that "discrimination against one

5

employee cannot be cured, or disproven, solely by favorable, or equitable, treatment of other employees of the same race or sex." Id. at 252. The Brown court also warned that "the inquiry into whether ill treatment was actually sex-based discrimination cannot be short circuited by the mere fact that both men and women are involved." Id. at 254. However, the Brown court also stated that "in the absence of evidence suggesting that a plaintiff's sex was relevant, the fact that both male and female employees are treated similarly, if badly, does give rise to the inference that their mistreatment shared a common cause that was unrelated to their sex." Id.

The significance of Brown is really intertwined with the requirement that a plaintiff bring forward "concrete particulars" in order to avoid summary judgment. Brown means that if a plaintiff has produced meaningful evidence -- that is, concrete particulars rather than conclusory statements -- then an employer cannot obtain dismissal of the claims, and cannot "short circuit" the inquiry, simply by pointing out that people of all genders, etc. were treated badly. This proposition is unobjectionable, and if this were the state of the evidence in a case, then material questions of fact would abound.

In fact, the Brown conducted precisely the kind of analysis of the evidence that would dictate the granting of defendant's motion for summary judgment in this case, by recognizing that there was some evidence linking the bad actions to gender, but not sufficient evidence to send the case to trial. In Brown, plaintiff introduced evidence that one cartoon of a naked, obese woman masturbating and another sexually explicit drawing of plaintiff herself had been posted at the workplace and near her own male route. The court admitted that, "in some cases, this connection to plaintiff's sex has sufficed to support the inference that there was a sex-specific character to the course of conduct."

6

However, the <u>Brown</u> court evaluated the evidence presented as a whole, and decided that plaintiff had not sufficiently linked the bad behavior to her gender, so that summary judgment was appropriate.  In other words, under <u>Brown</u>, it is important to remember that plaintiff bears the burden of proof throughout the proceeding, and the burden of proving that case through concrete particulars.  If plaintiff meets that burden, then an employer could not "short circuit" the inquiry by showing that all employees were treated badly, and not just those in the protected class.  But the plaintiff must meet that burden first, and plaintiff in this case has failed to do so.

As the Second Circuit has once again reminded us:

> Summary judgment is appropriate even in discrimination cases, for . . . "the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to . . . other areas of litigation."  Just a few short years ago we went out of our way to remind district courts that the "impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable."

<u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d. Cir. 2000) (citations omitted).  As the <u>Weinstock</u> court rather inelegantly added, a motion for summary judgment means that "The time has come, . . . 'to put up or shut up'."  <u>Id</u>. (citing Fleming James, Jr. & Geoffrey C. Hazard, Jr., <u>Civil Procedure</u> 150 (2d ed. 1977)).

In this case, plaintiff continually failed to "put up" the concrete particulars that she is required to produce, in order to meet her own burden of proof that the events she complains of resulted from impermissible bias.  She should not be permitted to bring defendants to trial on the basis of the scintilla of evidence that she has produced, and defendant Doran's motion for summary judgment should therefore be granted.

II.    THE STATEMENTS OF PLAINTIFF'S CO-WORKERS ARE ADMISSIBLE
       AS ADOPTED ADMISSIONS

       The statements of plaintiff's co-workers Fred Moore, Veronica Gagne, Robert

Lord and David Goodman (Exhibits 4-7 to defendants' memorandum of law) are

admissible as adopted admissions.  Under rule 801(d)(2)(B) of the Federal Rules of

Evidence, a statement is not hearsay if it "is offered against a party and is a statement of

which he has manifested his adoption or belief in its truth."  In fact, plaintiff has

manifested both her adoption of these statements and her belief in their truth.  She has

manifested her adoption of the statements by admitting that she herself solicited them

from these co-workers.  Labonia Depo. at 161-63.  She has manifested her belief in the

truth of these statements as well.  Id. at 78, 85-89, 98-101.  (See Defendants' Statement of

Material Facts at paragraphs 14-24.)[2]  Unlike plaintiff's own testimony, these adopted

admissions provide concrete particulars -- that Dan Pellechia treated Gardenside Terrace

employees badly, regardless of their gender.

<div style="margin-left:40%">

DEFENDANTS
DORAN ASSOCIATES AND
CHRISTIAN SHELTON

_____
Andrew A. Cohen, ct 07124
Letizia, Ambrose & Falls, P.C.
One Church Street
New Haven, CT 06510
(203) 787-7000

</div>

---

[2] Moreover, the Court is free to consider a document that fails to conform to the
requirements of Rule 56 in the absence of a timely objection or motion to strike by the
other side.  E.g., Ruby v. Springfield R-12 Pub. Sch. Dist.Ruby v. Springfield R-12 Pub.
Sch. Dist., 76 F.3d 909, 912 n.8 (8th Cir. 1996).  Rule 56(e) defects are waived if a
motion to strike is not timely filed with the court.  E.g., Humane Soc'y of U.S. v. Babbitt,
46 F.3d 93, 96 n.5 (D.C. Cir. 1995).  In this case, there has been no such objection or
motion, even when the issue was raised at oral argument.

<u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was mailed postage prepaid via first

class mail on this 20th day of February 2004 to all counsel and pro se parties of record as

follows:

John R. Williams
Willams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
Phone: 562-9931
Fax: 776-9494

Christy Doyle
Willams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
Phone: 562-9931
Fax: 776-9494

Kimberly White
Bingham McCutchen LLP
One State Street
Hartford, CT 06103-3178
Phone: 860-240-2700
Fax: 860-240-2818

David Casey
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726
Phone: 617-951-8000
Fax: 617-951-8736

Andrew A. Cohen